# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Tom Hensiek and Jason Gill, on behalf of themselves individually, and on behalf of similarly situated participants and beneficiaries of the Casino Queen Employee Stock Ownership Plan, <br><br> Plaintiffs, <br><br> v. <br><br> Board of Directors of CQ Holding Company, Inc. (a/k/a Casino Queen Board of Directors), the Administrative Committee of the Casino Queen Employee Stock Ownership Plan, Charles Bidwill III, Timothy J. Rand, James G. Koman, Jeffrey Watson, Robert Barrows, and John and Jane Does 1-20, <br><br> Defendants. | Case No.: 3:20–cv–377 <br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS FILED BY DEFENDANTS BIDWILL, RAND, AND KOMAN** |

# TABLE OF CONTENTS

I.     **Introduction**................................................................................................. 1

II.    **Facts** ............................................................................................................. 2

III.   **When deciding a 12(b)(6) Motion, the Court should not Consider Extrinsic Evidence.** .................................................................................................... 3

IV.   **Plaintiffs have sufficiently stated a claim as to each count in their Complaint.**.......... 5

     **A.**    The 2012 Plan Document did not permit GreatBanc to direct the ESOP Transaction........................................................................................... 6

     **B.**    The Complaint plausibly alleges violations of 29 U.S.C. §§ 1106 and 1104............................................................................................................ 9

     **C.**    The Co-Trustees acted in their fiduciary capacity when exercising the voting rights of ESOP participants in connection with the Asset Sale. ............... 12

V.    **The Complaint Adequately Pleads "Fraud or Concealment" under 29 U.S.C. § 1113**.......................................................................................................... 13

     **A.**    The Complaint adequately alleges active concealment, as opposed to a self-concealing fraud................................................................................ 14

     **B.**    Defendants misstate the law regarding pleading fraudulent concealment........... 16

     **C.**    In any event, the Complaint satisfies Rule 9(b)'s heighted pleading standards. .......................................................................................... 18

     **D.**    While not required by law, Plaintiffs have been diligent in pursuing their claims. ............................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*188 LLC v. Trinity Indus., Inc.*,
300 F.3d 730 (7th Cir. 2002) ................................................................4

*Abbott v. Lockheed Martin Corp.*,
2009 WL 839099 (S.D. Ill. Mar. 31, 2009) ...........................................19

*Ackerman v. Nw. Mut. Life Ins. Co.*,
172 F.3d 467 (7th Cir. 1999) ...............................................................16

*Allen v. GreatBanc Tr. Co.*,
1:15–cv–03053, ECF No. 1 .....................................................................9

*Allen v. GreatBanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016) .................................................................9

*AnchorBank, FSB v. Hofer*,
649 F.3d 610 (7th Cir. 2011) .................................................................4

*Appvion, Inc. Ret. Savs. & ESOP v. Buth*,
2020 WL 4284150 (E.D. Wis. July 27, 2020) .......................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................4

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*,
377 F.3d 682 (7th Cir. 2004) ...............................................................19

*Bloyer v. St. Clair Cnty. Ill.*,
2016 WL 369715 (S.D. Ill. Jan. 28, 2016)..............................................4

*Chao v. Hall Holding Co.*,
285 F.3d 415 (6th Cir. 2002) ...............................................................10

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) .............................................................11

*Eyler v. Comm'r of Internal Revenue*,
88 F.3d 445 (7th Cir. 1996) ...........................................................10, 11

*Fulghum v. Embarq Corp.*,
785 F.3d 395 (10th Cir. 2015) .............................................................20

*Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*,
   128 F.3d 1074 (7th Cir. 1997) ..........................................................5, 8

*George v. Kraft Foods Glob. Inc.*,
   814 F.Supp.2d 832 (N.D. Ill. 2011) ....................................................17

*Grindstaff v. Green*,
   133 F.3d 416 (6th Cir. 1998) ..............................................................13

*Jordan v. Mich. Conf. of Teamsters Welfare Fund*,
   207 F.3d 854 (6th Cir. 2000) ................................................................9

*Kenseth v. Dean Health Plan, Inc.*,
   610 F.3d 452 (7th Cir. 2010) ..............................................................20

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)................................................................................9

*Luce v. Edelstein*,
   802 F.2d 49 (2d Cir. 1986)...................................................................20

*Martin v. Consultants & Adm'rs, Inc.*,
   966 F.2d 1078 (7th Cir. 1992) .........................................14, 17, 18, 20

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ..............................................................16

*Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*,
   919 F.2d 1216 (7th Cir.1990) ......................................13, 14, 17, 18

*Resnick v. Schwartz*,
   2018 WL 4191525 (N.D. Ill. Sept. 3, 2018) ......................................20

*Riddell v. Riddell Wash. Corp.*,
   866 F.2d 1480 (D.C. Cir. 1989) .........................................................15

*Scott v. Aon Hewitt Fin. Advisors, LLC*,
   2018 WL 1384300 (N.D. Ill. Mar. 19, 2018).................................4, 11

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ..............................................................19

*U.S. Commodity Futures Trading Comm'n v. Battoo*,
   2016 WL 3059856 (N.D. Ill. Jan. 11, 2016)......................................15

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
   20 F.3d 771 (7th Cir. 1994) ................................................................19

*Wasserstein v. Univ. of Chi.*,
    2018 WL 3474543 (N.D. Ill. Jul. 19, 2018)........................................................................17

*Wolin v. Smith Barney Inc.*,
    83 F.3d 847 (7th Cir. 1996) ..............................................................................................18

**STATUTES**

29 U.S.C. § 1002 ....................................................................................................7, 8, 9, 10

29 U.S.C. § 1103 ..........................................................................................................6, 7, 8

29 U.S.C. § 1104 .................................................................................................9, 10, 11, 13

29 U.S.C. § 1106 ..........................................................................................................5, 9

29 U.S.C. § 1108 ...................................................................................................5, 9, 12, 14

29 U.S.C. § 1113 ..................................................................................................13, 17, 18

**OTHER AUTHORITIES**

29 C.F.R. § 2509.2016-01 ..................................................................................................13

29 C.F.R. § 2520.103-10 ....................................................................................................16

Fed. R. Civ. P. 9 ....................................................................................................... *passim*

Fed. R. Civ. P. 12 ..............................................................................................2, 4, 10, 11

Fed. R. Evid. 201(b) .............................................................................................................5

## I.     <u>Introduction</u>

In this action, Plaintiffs challenge Defendants' violations of ERISA in connection with the formation and administration of the Casino Queen Employee Stock Ownership Plan (the "ESOP" or the "Plan"), an ERISA-protected retirement plan invested entirely in the stock of Casino Queen Holding Company, Inc. ("CQ Stock"). Defendants Rand, Koman, and Bidwill (the "Selling Shareholders")[1] were the primary owners of Casino Queen until 2012. For years, they tried unsuccessfully to find a buyer for their CQ Stock. As a result, they decided to create the ESOP, a newly formed retirement plan for their employees, which would borrow the money to buy their CQ Stock (the "ESOP Transaction"). The employees who, through their retirement accounts, were forced to purchase the Selling Shareholders' interest, were not permitted to negotiate the terms of the ESOP Transaction and had no say in the price the ESOP paid. To this day, the share price the ESOP paid for the CQ Stock has never been disclosed to the ESOP participants who own the stock. While the ESOP was technically managed by Defendants Watson and Barrows, who were named the ESOP's Co-Trustees, the Selling Shareholders set up the ESOP so that they could control the Co-Trustees' actions in connection with the ESOP Transaction. As a result, the ESOP's purchase of the Selling Shareholders' CQ Stock was not an arms-length transaction, and the ESOP paid more than fair market value for the CQ Stock purchased from the Selling Shareholders.

During and after the ESOP Transaction, Defendants misrepresented numerous facts to ESOP participants, which misled participants into thinking the ESOP underpaid (rather than overpaid) for the CQ Stock. Defendants misrepresented and failed to disclose material financial information concerning the CQ Stock in the ESOP's Department of Labor ("DOL") filings. It was not until October 2019 (after Plaintiffs' normal statute of limitations to challenge the ESOP

---

[1] "Selling Shareholders" is synonymous with "Former Shareholders," used in ECF. Nos. 48, 49.

1

Transaction had expired) that Defendants let the house of cards fall and revealed the truth—the CQ Stock in ESOP participants' retirement accounts was almost worthless. Plaintiffs and all participants lost tens of millions of dollars of their retirement savings, due to Defendants' ERISA violations.

The Selling Shareholders moved to dismiss Plaintiffs' claims under Rule 12(b)(6). ECF 48, ECF 49 (hereinafter "MTD").[2] The Motion should be denied because the Plaintiffs have adequately pled facts demonstrating that ERISA's "fraud or concealment" exception to the statute of limitations is met. Further, Plaintiffs plausibly allege that the Plan fiduciaries engaged in a prohibited transaction when they sold Casino Queen to the ESOP for more than adequate consideration, and that Defendants subsequently acted in their fiduciary capacity to approve the sale of Casino Queen's assets on unfavorable terms, both in violation of their fiduciary duties. For the reasons below, the Selling Shareholders' Motion to Dismiss should be denied in full.

## II.   <u>Facts</u>

Plaintiffs Tom Hensiek and Jason Gill were Casino Queen employees who participated in the ESOP. ECF No. 1 ("Compl.") ¶¶ 1, 26-35. The ESOP participants are current and former employees of Casino Queen whose retirement accounts are invested solely in CQ Stock (*id.* ¶ 2), which is not publicly traded (*id.* ¶ 60). ERISA requires ESOP fiduciaries to act in the best interest of the ESOP participants, but Defendants, all of whom owed fiduciary duties to the ESOP and its participants, failed to do so here. *Id.* ¶ 4. Plaintiffs allege that the Board Defendants breached their fiduciary duties and engaged in prohibited transactions when they caused the ESOP to purchase the CQ Stock for $170 million and caused Casino Queen to guarantee $170 million in loans to outside lenders and the Selling Shareholders to finance the ESOP Transaction. *Id.* ¶¶ 14, 100-102,

---

[2] The remaining Defendants did not join this motion to dismiss.

108. Casino Queen's future operations were compromised by the ESOP Transaction because Casino Queen was required to service $170 million in debt, crippling Casino Queen's cash flows. The Board Defendants further breached their fiduciary duties in 2013, when Watson and Barrows voted the majority of CQ Stock to sell all of Casino Queen's real property for $140 million and lease the property back for a total of $210 million over 15 years ("Asset Sale"). *Id.* ¶¶ 113–131. The Asset Sale was not in the best interests of the ESOP participants who owned CQ Stock but was completed to monetize Casino Queen's real assets and pay off the ESOP's huge loans owed to the Selling Shareholders. *Id.* The Selling Shareholders had a duty to monitor Defendants Watson and Barrows to ensure they fulfilled their fiduciary duties. *Id.* ¶¶ 221–23. Instead, they enabled the Asset Sale and cashed in on the debt owed to them. *Id.* ¶¶ 129–131.

As explained below, the Board Defendants misrepresented the details of the ESOP Transaction and Asset Sale to conceal their ERISA violations. Compl. ¶¶ 9, 19, 79, 85, 105, 159. For years, the Board Defendants successfully hid their ERISA violations from Plaintiffs. In October of 2019, they finally told participants that the CQ Stock was almost worthless and that its true value was just 5% of the value reported to participants the year before. *Id.* ¶¶ 132–170. Plaintiffs Hensiek and Gill left employment at Casino Queen in 2018, thinking they would begin receiving payments from their ESOP accounts at the end of 2019. Compl. ¶¶ 29, 34. But they learned in 2019 that their accounts lost 95% of their reported value and would be closed. *Id.* ¶¶ 30, 35. Together, they brought suit on behalf of all ESOP participants, alleging that the ESOP Transaction and the Asset Sale violated ERISA. *See id.* ¶¶ 182–239.

### III.   When deciding a 12(b)(6) Motion, the Court should not Consider Extrinsic Evidence.

As a preliminary matter, Defendants' Motion to Dismiss presents and relies upon an alternative set of unsupported facts with respect to the ESOP Transaction. *See, e.g.*, MTD at 2.

Defendants' presentation of alternative facts must be rejected because it contravenes the Court's standard of review under Rule 12(b)(6) and because extrinsic facts cannot be considered at this stage. When reviewing "a 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint." *Bloyer v. St. Clair Cnty. Ill.*, 2016 WL 369715, at *2 (S.D. Ill. Jan. 28, 2016); *see also AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) ("In evaluating the sufficiency of the complaint, we view it in the light most favorable to the plaintiff . . . making all possible inferences from the allegations in the plaintiff's favor."). This standard does not permit plaintiffs to pull facts from thin air; a plaintiff's claims must have "facial plausibility" and be based on "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Plaintiffs' allegations are drawn entirely from the first-hand experiences of ESOP participants, corroborated by notes and other documentation (Compl. ¶¶ 133-135, 156-167); information Defendants submitted to governmental bodies, including the DOL, the Illinois Gaming Board, and the Securities Exchange Commission (*id.* ¶¶ 70, 103, 136-155); and news articles (*id.* ¶¶ 127-128). The facts alleged in the complaint have "facial plausibility" and are based on "factual content."

Defendants do not argue that Plaintiffs' facts are wrong—rather, Defendants improperly attempt to introduce facts to undermine Plaintiffs' claims. "[I]n a Rule 12(b)(6) motion, the movant is not permitted to use facts or evidence outside of the pleadings to contravene factual allegations contained within a complaint." *Scott v. Aon Hewitt Fin. Advisors, LLC*, 2018 WL 1384300, at *4 (N.D. Ill. Mar. 19, 2018). There are two narrow exceptions to this rule. First, documents "are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to his claim." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quotation omitted). Here, the only document the Complaint refers to that is central to the claims is the Plan Document,

which Plaintiff agree is judicially noticeable. ECF No. 45-1. Second, the Court may "take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment," though it "may only take judicial notice from sources 'whose accuracy cannot reasonably be questioned.'" *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080, 1084 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)). Defendants' motion references several documents of questionable accuracy; this information is not subject to judicial notice and is discussed in Section IV(A), *infra*.

Defendants' factual assertions are not subject to either exception. They seek to introduce evidence that the ESOP paid no more than adequate consideration and that GreatBanc Trust Company ("GreatBanc"), who is not named in in the Complaint, was responsible for directing the ESOP Transaction. At the motion to dismiss stage, the Court may not take judicial notice of this set of contested facts, which must be resolved by a factfinder after the parties conduct discovery.

## IV.   <u>Plaintiffs have sufficiently stated a claim as to each count in their Complaint.</u>

ERISA prohibits retirement plans, including ESOPs, from engaging in transactions between "parties in interest" to the plan, or from dealing with plan assets "in [their] own interest," unless the fiduciaries are able to satisfy the requirements for an "exemption." *See* 29 U.S.C. §§ 1106, 1108. The Selling Shareholders do not dispute that the ESOP Transaction is a violation of § 1106. MTD at 6. Yet, they argue that Plaintiffs fail to state a claim with respect to Counts I–III, V, and VI[3] for three reasons: (1) GreatBanc, who is not a party to this lawsuit, was the fiduciary responsible for directing the ESOP's purchase of the CQ Stock (not the Board Defendants), which is an unsupported factual assertion; (2) the Complaint does not plausibly allege that the ESOP paid

---

[3] The Selling Shareholders do not move to dismiss Count IV alleging that Defendants Watson and Barrows breached their fiduciary duties when they approved the Asset Sale. Compl. ¶¶ 213-220.

more than adequate consideration to the Selling Shareholders for their CQ Stock; and (3) the Asset Sale was a corporate transaction rather than a fiduciary act and not subject to ERISA. Each of these arguments fails under settled law; the Selling Shareholders' Motion to Dismiss should be denied.

**A.**    ***The 2012 Plan Document did not permit GreatBanc to direct the ESOP Transaction.***

The Selling Shareholders assert that they are not liable for the ESOP Transaction claims because they did not have "the legal authority to direct the Co-Trustees to enter into the [ESOP] Transaction." MTD at 2. They posit that GreatBanc, a third party, was responsible for directing the Co-Trustees to approve the ESOP Transaction. *Id.* This attempt to shift the blame must fail because the 2012 Plan Document plainly gives the Board Defendants (including the Selling Shareholders) the power and responsibility to direct the Co-Trustees in the ESOP Transaction. *See* ECF No. 45-1. Further, GreatBanc could not direct the Co-Trustees because it has never been a "named fiduciary"[4] to the ESOP and ERISA requires an entity to become a "named fiduciary" in order to direct a Trustee. Indeed, the terms of the 2012 Plan Document provide absolutely no indication that GreatBanc had the power to direct the Co-Trustees to approve the ESOP Transaction.[5]

All retirement plans, including the ESOP at issue here, must be managed by a "trustee" who "shall have exclusive authority and discretion to manage and control the assets of the plan," ***unless*** the plan document "expressly provides that the trustee or trustees are subject to the direction of a ***named fiduciary***." 29 U.S.C. § 1103(a)(1) (emphasis added). This means a trustee of an ERISA-protected retirement plan must be a *discretionary* trustee, *unless* he is acting at the

---

[4] The "named fiduciary" must be expressly listed in the ESOP Plan document.

[5] If evidence is produced during discovery indicating that GreatBanc acted as a fiduciary, in contravention of the Plan documents, Plaintiffs will request leave to amend their complaint.

*direction* of a "named  fiduciary," which is a term of art that ERISA defines as "a fiduciary who *is named in the plan instrument*, or who, pursuant to a procedure specified in the plan, *is identified as a fiduciary* . . . by a person who is an employer or employee organization with respect to the plan." 29 U.S.C. § 1102(a)(2)(A) (emphasis added). Here, the 2012 Plan Document, which governs the administration of the ESOP, defines the roles and responsibilities of various plan fiduciaries and explicitly states that "[t]he fiduciaries shall have only those specified powers, duties, responsibilities, and obligations as are specifically given them under this Plan and the Trust." ECF No. 45-1 (hereinafter "2012 Plan") § 9.12.

Section 9.13 of the 2012 Plan Document states that the Co-Trustees will be "directed trustee[s] with respect to the initial purchase of Stock by the Trust" and thereafter "shall hold and manage all assets of the Trust Fund as . . . discretionary trustee[s]." 2012 Plan § 9.13. Section 9.12 states that "the Administrative Committee . . . *must* provide written instruments and directions to the Trustee." *Id.* § 9.12 (emphasis added). Likewise, Section 9.05 confirms that the Administrative Committee has the power "[t]o direct the Trustee as a directed trustee in accordance with the provisions of [29 U.S.C. § 1103(a)(1)] to the extent set forth in Article XIII and in the Trust Agreement between the Sponsor and the Trustee . . . ." *Id.* § 9.05(h). While the Selling Shareholders assert that the Administrative Committee "did not exist until *after* 2013," MTD at 18, the Plan contemplates this scenario and explains that "in the event the Board[6] fails to designate an Administrative Committee under this Article, the Sponsor shall be deemed the 'plan administrator' of the Plan and shall have all the powers, responsibilities and duties of the Administrative Committee as set forth herein." 2012 Plan § 9.02. Because the Selling Shareholders

---

[6] The Plan defines the Board as "The Board of Directors of the Sponsor." 2012 Plan § 2.05.

were all Board members of Casino Queen (the Plan Sponsor)[7] and thus controlled the Plan Sponsor, they were the only people who could have directed the Co-Trustees.

By contrast, GreatBanc is not mentioned even once in the 2012 Plan Document and thus could not have been granted the power to direct the Co-Trustees. *See generally* ECF No. 45-1 to 45-4. And while the Selling Shareholders assert that GreatBanc "in its sole discretion, direct[ed] the Co-Trustees to cause the ESOP to enter into the Transaction," (MTD at 2, 18) they fail to cite any provision of the Plan Document—or any other document—indicating that GreatBanc is a "named fiduciary" under ERISA with the power to direct the Co-Trustees.[8] Instead, they point to one line in a single article, posted on the internet.[9] MTD at 6–7.

The Selling Shareholders cannot shift liability to GreatBanc when the Plan Document clearly identifies the Board, acting for Casino Queen, as responsible for directing the Trustee in the event the Administrative Committee was not populated before the ESOP Transaction took place. *See* 2012 Plan §§ 9.02, 9.05, 9.12. Here, the Selling Shareholders were all Board members and the only people legally allowed to direct the ESOP Transaction under ERISA. 29 U.S.C. § 1103(a)(1) (providing that a directed trustee many only be directed by a "named fiduciary").

---

[7] Section 2.28 of the 2012 Plan Document defines the Sponsor as "CQ Holding Company, Inc."

[8] While § 9.12 states the Plan Sponsor "may appoint, in writing, an investment manager," this requires that the "appointment and delegation shall be evidenced by a signed written agreement, which must be retained with the other Plan documents." Further, an "investment manager" is a defined term in ERISA, which is ***not*** a named fiduciary. 29 U.S.C. § 1002(38) ("investment manager means any fiduciary (***other than a trustee or named fiduciary***...)") (emphasis added).

[9] The sole document Defendants cite for their view that "GreatBanc Trust Company acted as independent ESOP trustee during the Acquisition process" is a press release issued "by Casino Queen, Inc." which was controlled by the Selling Shareholders at that time. *See $170,000,000 Acquisition of Casino Queen by Newly Formed Employee Stock Ownership Plan*, PR Newswire, (Dec. 27, 2012, 1:11 AM), https://tinyurl.com/y423533k. Even if the press release was a "publication in a daily newspaper" (which it is not), it would still not be subject to judicial notice. *See Gen. Elec. Cap. Corp.*, 128 F.3d at 1084 ("publication in daily newspaper" is not a "source that establishes facts as indisputable" and should not be accepted as true).

Moreover, because GreatBanc is not a "named fiduciary" in the 2012 Plan Document, it could not, as a matter of law, direct the Co-Trustees during the ESOP Transaction. 29 U.S.C. § 1102(a)(1)(A).

**B.    *The Complaint plausibly alleges violations of 29 U.S.C. §§ 1106 and 1104.***

"Congress adopted [29 U.S.C. § 1106]," ERISA's rule against prohibited transactions, "to prevent employee benefit plans from engaging in transactions that would benefit parties in interest at the expense of plan participants and their beneficiaries." *Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 858 (6th Cir. 2000) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996)). While 29 U.S.C. § 1108(e) provides a narrow exemption for an ESOP's purchase of employer stock if, *inter alia*, the purchase involves no more than adequate consideration, the Seventh Circuit has held that ESOP plaintiffs are not required to plead around the "adequate consideration" exemption. *See Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 675 (7th Cir. 2016) ("A plaintiff alleging a claim arising out of a prohibited transaction involving an exchange of stock between a plan and a party in interest need not plead the absence of adequate consideration . . . .").

The Selling Shareholders attempt to side-step the controlling holding in *Allen* by arguing that "plaintiffs who affirmatively put an exemption at issue must sufficiently plead that it does not apply." MTD at 20. But this argument was already rejected, in light of *Allen's* reasoning and the underlying complaint in *Allen*.[10] 835 F.3d at 676 (explaining that "Congress saw fit in ERISA to create some bright-line rules, on which plaintiffs are entitled to rely" and finding that 29 U.S.C. § 1108 "exemptions are affirmative defenses for pleading purposes, and so the plaintiff has no

---

[10] *Allen* rejected the Defendants' view that referring to the "adequate consideration" exemption in the complaint means an ESOP plaintiff must plead sufficient facts to rebut the exemption. The *Allen* complaint alleged that the prohibited transaction "did not meet the conditional exemption requirements" set forth in 29 U.S.C. § 1108(e), but did not plead in detail why the adequate consideration exemption was not satisfied. *See Allen v. GreatBanc Tr. Co.*, 1:15–cv–03053, ECF No. 1, Complaint ¶¶ 41–42 (N.D. Ill. Apr. 7, 2015). Nevertheless, the Seventh Circuit held that ESOP plaintiffs had stated a claim sufficient to survive a 12(b)(6) motion. 835 F.3d 670.

duty to negate any or all of them."). Regardless, as discussed below, the Complaint alleges facts establishing that the ESOP paid more than adequate consideration for the CQ Stock.

ERISA defines "adequate consideration" as "the fair market value of the asset as determined in good faith by the trustee." 29 U.S.C. § 1002(18)(B). Courts have acknowledged that two elements are necessary for a defendant to establish "adequate consideration," a concept which "requires not only a determination of fair market value, but also an examination of the process that led to the determination of fair market value in light of [29 U.S.C. § 1104's] fiduciary duties." *Chao v. Hall Holding Co.*, 285 F.3d 415, 437 (6th Cir. 2002); *Eyler v. Comm'r of Internal Revenue*, 88 F.3d 445, 455 (7th Cir. 1996). The Complaint alleges the ESOP Transaction failed both inquiries.[11]

With respect to fair market value, *Eyler* held that fair market value is the "price at which the property would change hands between a willing buyer and a willing seller . . . both having reasonable knowledge of relevant facts." Eyler, 88 F.3d at 451. But here, the Complaint's allegations show that the Selling Shareholders tried but were unable to sell Casino Queen to a third-party buyer for years. Compl. ¶¶ 5, 63-65, 94 (detailing multiple failed attempts to sell Casino Queen between 2006 and 2012). Plaintiffs also allege that the Selling Shareholders should have known that the "valuation report used to justify a $170 million purchase price was based on unreliable and unrealistic financial projections of the Company's future earnings and cash flow" due to the prior failed attempts to secure an outside buyer and their intimate knowledge of Casino Queen's declining revenues and market-share. *Id.* ¶¶ 62, 95–98. They also allege that the enormous

---

[11] As Defendants concede, if the Complaint plausibly alleges that the adequate consideration exemption was not met due to Defendants' process failures, these allegations are sufficient to plausibly allege fiduciary breach claims under § 1104(a)(1)(A)-(B) in Count III. MTD at 19-20. Defendants do not separately challenge Counts V or VI (monitoring and co-fiduciary liability) as insufficiently pled and those claims are unaffected by their Rule 12(b)(6) motion. MTD at 22 n.11.

loans taken out by the ESOP to complete the Transaction (and guaranteed by the Company) were imprudent and the fiduciaries knew the excessive debt would cripple Casino Queen's ongoing operations and cash flow. *Id.* ¶¶ 100-102. These facts plausibly show that the ESOP paid more than fair market value for the CQ Stock purchased from the Selling Shareholders.

With respect to the process failures, Plaintiffs allege that the decision-making structure was deeply conflicted and flawed because the Selling Shareholders directed the Co-Trustees to act on the "buy-side" of the Transaction *even though* they were *also* the sellers in the Transaction. Compl. ¶¶ 9-14, 37, 40-46, 78-85, 103-109. The decision-making structure the Selling Shareholders set up precluded a true arms-length transaction, as required under *Eyler,* 88 F.3d at 451. The Complaint also alleges that the valuation process failed to adequately consider the effect of the huge Transaction debt and loan payments on Casino Queen's future cash flows and ongoing operations. Compl. ¶ 9. These facts are sufficient to withstand a motion to dismiss on 29 U.S.C. §§ 1104 and 1106 claims, even under Defendants' incorrect view of the law. *Scott*, 2018 WL 1384300, at *11 ("relevant question" at Rule 12 stage is not if "plaintiff ultimately will prevail on the merits of her claim but whether the complaint is sufficient to cross the federal pleading threshold.").[12]

Finally, Defendants contend that the 2013 Asset Sale shows that the ESOP did not pay more than fair market value for the CQ Stock: this contention is based on faulty math.[13] MTD at 21. To the contrary, the Complaint details the unfavorable terms approved by the Co-Trustees,

---

[12] Even if Defendants hired GreatBanc to perform due diligence, this would not absolve the Selling Shareholders of liability at the motion to dismiss stage. *See Donovan v. Cunningham*, 716 F.2d 1455, 1473–74 (5th Cir. 1983) (finding that plan fiduciaries failed to investigate whether valuation was based on up-to-date information, even though Defendants hired investment advisors).

[13] Gaming and Leisure Properties, Inc. ("GLPI") issued a $43 million loan to Casino Queen in connection with the Asset Sale. Compl. ¶¶ 114 n.3, 120. Subtracting Casino Queen's newfound debt from the $140 million GLPI paid for Casino Queen's building and land amounts to a total profit of just $97 million, rather than the $183 million profit Defendants assert. *See* MTD at 21.

which, as an objective matter, could not be in the best interest of the ESOP participants (the owners) of Casino Queen. Compl. ¶¶ 115–117 (selling GLPI real property for $140 million only to require Casino Queen to rent back its properties at $14 million per year for 15 years). Put simply, Casino Queen agreed to pay $210 million in rent for property it owned free-and-clear the day before the Asset Sale. *Id.* ¶¶ 116, 118 (describing "triple net lease" requiring payment of property expenses and rent). These draconian terms of the Asset Sale, which the Co-Trustees agreed to on behalf of the ESOP, confirm the deep conflicts underlying the ESOP decision-making structure.

In short, the Complaint pleads sufficient facts to state a prohibited transaction claim against Defendants in connection with the ESOP Transaction. Even though Plaintiffs are not required to plead around the 29 U.S.C. § 1108(e) exemption, the Complaint alleges facts that plausibly show the ESOP paid the Selling Shareholders more than adequate consideration for the CQ Stock.

### C.   *The Co-Trustees acted in their fiduciary capacity when exercising the voting rights of ESOP participants in connection with the Asset Sale.*

Defendants argue that they did not play a fiduciary role with respect to the Asset Sale because the Sale was a "corporate action" that was "not governed by ERISA." MTD at 23. However, the Complaint does not challenge the Co-Trustees' actions as corporate executives; it challenges the actions Watson and Barrows took on behalf of ESOP participants in a shareholder vote concerning whether to approve the Asset Sale.[14] Compl. ¶¶ 111-124.

The Complaint explains that all "major decisions of the Company require a shareholder vote," including "refinancing of the Company's debt or the sale of a substantial proportion of the Company's assets." Compl. ¶ 124; *see also* 2012 Plan Document § 15.13. All unallocated shares

---

[14] Similarly, Plaintiffs allege that the Selling Shareholders failed to monitor the Trustees they appointed, which are grounded in the fiduciary duty to monitor. These claims are not grounded in any action the Selling Shareholders took in their corporate capacity. Compl. ¶¶ 221–239.

of the CQ Stock are voted by the Co-Trustees, and most of the outstanding CQ Stock was unallocated in 2013; it follows that the Co-Trustees voted to approve the Asset Sale. Compl. ¶¶ 111-113. Even under Defendants' own authority, the decision to vote the stock owned by ESOP participants is plainly a fiduciary act. *Grindstaff v. Green*, 133 F.3d 416, 423 (6th Cir. 1998) ("purely business decisions by an ERISA employer are not governed by [29 U.S.C.] section 1104's fiduciary standards."). DOL regulations confirm that voting stock owned by an ERISA-protected plan is subject to ERISA's fiduciary duties. 29 C.F.R. § 2509.2016-01 (ERISA "require[s] that, in voting proxies, the responsible fiduciary consider those factors that may affect the value of the plan's investment and not subordinate the interests of the participants and beneficiaries in their retirement income to unrelated objectives," and that "[t]he named fiduciary must carry out this responsibility solely in the interest of the participants and beneficiaries and without regard to its relationship to the plan sponsor.")

Defendants do not dispute the Complaint's allegations that the terms of the Asset Sale were objectively imprudent and not in the best interest of the ESOP participants. MTD at 22-25. Thus, the ERISA violations in connection with the Asset Sale plausibly state claims for relief.

## V.   The Complaint Adequately Pleads "Fraud or Concealment" under 29 U.S.C. § 1113

ERISA's statute of limitations is the earlier of (1) "six years after the date of the last action which constituted a part of the breach or violation" or (2) three years after the date when "plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113. There is an exception in § 1113, however, for "fraud or concealment," in which case the limitations period begins "not later than six years after the date of discovery of such breach or violation." *Id.* In this Circuit, "the phrase 'fraud or concealment' in § 1113 'incorporates the fraudulent concealment doctrine,'" an equitable doctrine that tolls the applicable limitations period until the plaintiff can reasonably discover his or her claim. *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th

Cir.1990) (quotation omitted). The doctrine of "fraudulent concealment" includes both (1) self-concealing frauds, where concealment occurs in the course of the fraud; and (2) active concealment (which is not a species of fraud) where defendants subsequently act to conceal their wrongdoing. *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1095-96 (7th Cir. 1992). A plaintiff must plead different elements to allege a self-concealing fraud than she must to plead active concealment. *See id.* at 1096 n.19 (noting that tolling the limitations period based on self-concealing fraud requires "due diligence on the part of the plaintiff," but that the Seventh Circuit does not require diligence by the plaintiff for cases of active concealment).

**A.**      ***The Complaint adequately alleges active concealment, as opposed to a self-concealing fraud.***

This Circuit has repeatedly held that "an ERISA fiduciary can delay a wronged beneficiary's discovery of his claim either by misrepresenting the significance of facts that the beneficiary is aware of (fraud) or by hiding facts so that the beneficiary never becomes aware of them (concealment)." *Radiology Ctr.*, 919 F.2d at 1220; *Martin,* 966 F.2d at 1093 n.16. The second scenario is relevant here. The Complaint pleads myriad facts establishing that Defendants hid information and took steps to conceal their ERISA violations from Plaintiffs. As one participant stated, the ESOP Transaction was "a set-up and the set-up worked perfectly." Compl. ¶ 167.

When the Selling Shareholders arranged for the ESOP to purchase their CQ Stock, Plaintiffs and other employees were told that the ESOP purchased the stock at a discount, paying just $170 million for stock actually worth $174 million. Compl. ¶ 87. This statement was designed to convince employees that the ESOP had paid no more than "adequate consideration" for the CQ Stock, which is a required condition of 29 U.S.C. § 1108(e). *See* section IV(B), *supra*. But the details of the ESOP Transaction were *never* revealed to the employees who were forced to invest their retirement savings in CQ Stock. Rather, management told employees that the ESOP would

create great wealth for all employee-participants (*id.* ¶ 133); that they would be able to purchase second homes with the proceeds from the CQ Stock held in their ESOP accounts (*id.* ¶ 90); and that employees would earn the equivalent of nearly their entire salary through their accounts (*id.* ¶ 134). These statements alone establish fraudulent concealment. *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1491 (D.C. Cir. 1989) (the deception "may be as simple as a single lie") (quotation omitted).

Moreover, in the years after the ESOP Transaction, Defendants continued to mislead ESOP participants into believing that the ESOP purchased the CQ Stock at a discount, by reporting to Plaintiffs that their CQ Stock increased in value every year from 2013-2017, sometimes by as much as 50%. Compl. ¶¶ 156-162. The participants did not discover that something was awry until October 2019, when their retirement account statements indicated that the value of their CQ Stock had fallen from $109.11 per share as of December 31, 2017 to $5.75 per share as of December 31, 2018—a *95% drop in value in a single year*; conveniently, this occurred the year *after* the normal statute of limitations period expired. *Id.* ¶ 160. Company management stated the 95% drop in the stock value occurred as the result of a decrease in business, but Casino Queen's employees (including those in managerial positions) did not observe a dramatic decrease in business levels between 2016 and 2018. *Id.* ¶ 162. The abrupt loss of the CQ Stock's value indicates that Defendants' previous representations that the CQ Stock steadily increasing in value were false. *U.S. Commodity Futures Trading Comm'n v. Battoo*, 2016 WL 3059856, at *5 (N.D. Ill. Jan. 11, 2016) (describing the failure to disclose investment losses as fraudulent misrepresentations).

Moreover, Defendants' governmental filings document their efforts to conceal that the ESOP overpaid for the CQ Stock. These filings show that the value of the CQ Stock increased significantly between 2012 and 2017 (Compl. at 30 tbl.1), once by **424%** (*id.* ¶ 150). Defendants'

governmental filings also report inconsistent purchase prices for the CQ Stock. *Id.* ¶¶ 140-46. For example, disclosures from 2012 to 2016 show that the ESOP paid $4 million for CQ Stock, but the 2017 disclosures indicate that the ESOP paid $3,898,388, and the 2018 statements indicate that the ESOP paid even less—$3,885,302. *Id.* ¶¶ 142–44.

Finally, the Complaint alleges the Defendants acted to conceal ERISA violations in connection with the Asset Sale. For example, the Board Defendants told Plaintiffs and other ESOP participants that "they would get to vote on any transaction entered into by Casino Queen that was greater than three million dollars." Compl. ¶ 91. This misled ESOP participants into believing that they would have to vote to approve any major decisions affect the value of CQ stock. In reality, the Defendants did not disclose the Asset Sale to ESOP participants, and ESOP participants were "not permitted to vote" on the Asset Sale. *Id.* ¶ 92. Further, Defendants did not disclose the Asset Sale in the ESOP's governmental filings, as required. *See* 29 C.F.R. § 2520.103-10(b)(2) & (4).

### B.   *Defendants misstate the law regarding pleading fraudulent concealment.*

Defendants argue that Plaintiffs have failed to plead concealment with the particularity required by Rule 9(b) and that Plaintiffs have failed to show that they exercised diligence to discover the violations of ERISA. MTD at 11-16. Defendants gloss over Seventh Circuit authority, which applies different pleading standards to self-concealing frauds versus active concealment (which is not a type of fraud). This makes sense, given that fraud claims generally require a "heightened pleading requirement" because, among other things, "public charges of fraud can do great harm to the reputation of business firm or other enterprise (or individual)." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 439 (7th Cir. 2011). However, the same concerns do not exist with respect to active concealment claims, where plaintiffs assert only that defendants

hid information that would have allowed them to timely discover and file their claims.

Indeed, the Seventh Circuit does not require a plaintiff to demonstrate scienter when pleading "active concealment;" it is sufficient to plead "overt acts of deception," as Plaintiffs do here. *Wasserstein v. Univ. of Chi.*, 2018 WL 3474543, at \*4 (N.D. Ill. Jul. 19, 2018); *George v. Kraft Foods Glob. Inc.*, 814 F.Supp.2d 832, 848 (N.D. Ill. 2011) (for active concealment, plaintiff need only show "the steps taken by the defendant to hide the fact of the breach") (quotation omitted).[15] Defendants cite only one district court decision from within the Seventh Circuit to argue that Plaintiffs must satisfy Rule 9(b)'s heighted pleading standard, but the decision does not clearly evaluate active concealment. *See* MTD at 10–11 (citing *Appvion, Inc. Ret. Savs. & ESOP v. Buth*, 2020 WL 4284150 (E.D. Wis. July 27, 2020)). The *Appvion* court made the general comment that "[f]raudulent concealment, like all fraud claims, must be plead with particularity in accordance with Rule 9(b)," but did not cite Seventh Circuit law in support and did not clearly account for the different pleading standards that the Seventh Circuit applies to self-concealing frauds versus cases of active concealment. *See Appvion, Inc. Ret. Savs. & ESOP*, 2020 WL 4284150, at \*9. Indeed, to interpret *Appvion* in the way Defendants suggest – that the "fraudulent or concealment" in § 1113 always imposes the heighted pleading standard imposed on fraud claims – runs counter to § 1113's use of the disjunctive "fraud *or* concealment." *Cf Martin*, 966 F.2d at 1095 (ERISA's "use of the disjunctive and separate inclusion of 'fraud' would be in tension with an interpretation of fraudulent concealment that excluded concealment that occurs in the course of the fraud."). Moreover, Defendants' reading is at odds with Seventh Circuit decisions holding that fraudulent concealment occurs "either by misrepresenting the significance of facts that the

---

[15] The Seventh Circuit has rejected that pleading standards for securities fraud applies to "fraud or concealment" under § 1113. *See Radiology Ctr.*, 919 F.2d at 1222.

beneficiary is aware of (fraud) *or by* hiding facts so that the beneficiary never becomes aware of them (concealment)." *Radiology Ctr.*, 919 F.2d at 1220.

Similarly, while "courts generally require due diligence on the part of the plaintiff[] to toll the statute of limitations" with respect to self-concealing wrongs, "diligence is not required" for active concealment "separate from the underlying wrong." *Martin*, 966 F.2d at 1096 n.19; *see also Wolin v. Smith Barney Inc.*, 83 F.3d 847, 852 (7th Cir. 1996) (diligence not necessary to plead active concealment, independent of the underlying wrong). Defendants' recitation of the law fails to address the two types of fraudulent concealment that exist under 29 U.S.C. § 1113 and ignores the distinct pleading standards for these different types of fraudulent concealment.

**C.**      ***In any event, the Complaint satisfies Rule 9(b)'s heighted pleading standards.***

Even if the Court finds that Plaintiffs' concealment allegations are subject to Rule 9(b)'s pleading standard, the Complaint alleges with particularity the "steps taken by the defendant to hide the fact of the breach" consistent with Rule 9(b). For example, Plaintiffs plead that Defendants repeatedly misstated the truth about the ESOP Transaction to the DOL, reporting that the ESOP paid only $4 million for the ESOP (Compl. ¶ 142), while reporting to the Securities and Exchange Commission that the CQ Stock was sold for $175 million (*Id.* ¶ 145). As explained in Section V(A), *supra*, Defendants then reported different purchase prices for the CQ Stock in the ESOP's 2017 and 2018 filings with the DOL. *Id.* ¶ 143-44. Defendants now attempt to disavow entirely the $170-175 million purchase price, stating the "ESOP did not borrow and then pay $170 million to the [Selling] Shareholders . . . it borrowed $4 million from, and then paid $4 million to, CQH for its 100% interest." MTD at 2. They never explain what happened to the remaining $166 million.

Defendants' story simply does not add up; in many instances, their counter-narrative contradicts itself. For example, Defendants assert (again without support) that "*[a]t no time* before

the Transaction were the [Selling] Shareholders members of the CQH Board of Directors; Messrs. Barrows and Watson ('Co-Trustees') were the only CQH Board members." MTD at 2. Yet the SEC filing they attach to their motion plainly identifies each of the Selling Shareholders as "Director[s]" of CQ Holding Company, Inc. on January 8, 2013. ECF No. 48-3 at 2-3. These misrepresentations occurred in spite of each Board member's responsibility, pursuant to the 2012 Plan Document, to ensure that the disclosures in the DOL filings were complete and accurate.[16] Koman, Bidwill, Rand, Barrows and Watson, all of who were Directors of CQ Holding Company, Inc. from before 2012 until at least 2014, misrepresented critical information to Plan participants and to the government in dated disclosures, which they controlled and were responsible for ensuring were accurate under the Plan Document. Compl. ¶ 44, 138-39. Thus, the Complaint establishes the "who, what, when, where and how" of fraudulent concealment and addresses the misrepresentations in detail. Even under a Rule 9(b) standard, Plaintiffs plausibly plead concealment. *Abbott v. Lockheed Martin Corp.*, 2009 WL 839099, at *7 (S.D. Ill. Mar. 31, 2009).

The hodge-podge of cases Defendants cite are not on point. Some involve pleading requirements when the complaint alleges fraud as a cause of action, rather than as a defense to a statute of limitations. *See Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) (allegation that failed tax shelter was a fraud); *Vicom, Inc. v. Harbridge Merch. Servs., Inc*., 20 F.3d 771 (7th Cir. 1994) (RICO fraud action). The remaining cases Defendants cite are from sister circuits with different pleading standards for fraud or concealment. *See* MTD at 11-14.

Finally, if the Court finds that Plaintiffs have not plausibly pled fraud or concealment under Rule 9, they should be granted leave to amend their Complaint. *See Barry Aviation Inc. v. Land*

---

[16] *See Instructions for Form* 5500, Department of Labor (2018) at 1, 7, https://www.dol.gov/sites/dolgov/files/EBSA/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2018-instructions.pdf

*O'Lakes Mun. Airport Comm'n*, 377 F.3d 682 (7th Cir. 2004) (district court abused its discretion when it denied leave to amend to replead fraudulent concealment); *Luce v. Edelstein*, 802 F.2d 49, 56-57 (2d Cir. 1986) (similar). The "fraud or concealment" exception was added to ERISA to "ameliorat[e] what would otherwise be a harsh result in situations . . . that cannot readily be discovered by a plan participant . . ." *Fulghum v. Embarq Corp.*, 785 F.3d 395, 416 (10th Cir. 2015). Further, the Court should allow plaintiffs discovery on "the applicability of the fraud-or-concealment exception." *Resnick v. Schwartz*, 2018 WL 4191525, at *7 (N.D. Ill. Sept. 3, 2018).

> **D.** ***While not required by law, Plaintiffs have been diligent in pursuing their claims.***

Plaintiffs are not required to plead diligence when alleging that ERISA's statute of limitations was told by active concealment (as opposed to self-concealing frauds). *Martin*, 966 F.2d at 1096 n.19. Nevertheless, Plaintiffs have diligently pursued their claims. Plaintiffs reviewed the ESOP account statements issued by Defendants each year, noted that their account values were rising, and had no reason and no obligation to investigate whether their ESOP account statements were false. Compl. ¶ 165; *see Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010) ("[t]he duty to disclose material information is the core of a fiduciary's responsibility," and "includes an obligation not to mislead a plan participant . . ."). Plaintiffs also attended Company meetings about the ESOP and were engaged during these meetings. Compl. ¶¶ 133-34, 165. Plaintiffs had no reason to believe that Defendants caused the ESOP to pay too much for the CQ Stock until October 2019, when they learned the value of CQ Stock dropped 95%, from $109.11 to $5.75 per share. *Id.* ¶ 158, 160. Plaintiffs acted diligently to find counsel to assist them in investigating the ESOP transaction; counsel uncovered the majority of the facts in the Complaint. *Id.* ¶ 166. Plaintiffs have adequately pled fraudulent concealment and this case should be allowed to proceed.

Dated: October 8, 2020 **COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Michelle C. Yau*
Michelle C. Yau, *pro hac vice*
Mary J. Bortscheller, Illinois Bar: 6304457
Sarah D. Holz, *pro hac vice*
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600
myau@cohenmilstein.com
mbortscheller@cohenmilstein.com
sholz@cohenmilstein.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the following was sent to

all counsel of record via the Court's electronic filing system on this eighth day of October, 2020.

*/s/ Michelle C. Yau*
Michelle C. Yau