# EXHIBIT 2

Case 3:20-cv-00377-DWD     Document 61-3     Filed 10/22/20     Page 1 of 15     Page ID #473

# GREATBANC TRUST COMPANY

## INDEPENDENT FIDUCIARY ENGAGEMENT AGREEMENT

This Agreement is made and entered into this 20 day of July 2012, by and between GreatBanc Trust Company, an Illinois corporation ("GreatBanc" or the "Independent Fiduciary"), and Casino Queen, Inc., an Illinois corporation (the "Company"), tax identification number 26-3799825.

### RECITALS

The Company intends to establish an employee stock ownership plan (the "Plan") for the benefit of its employees. All contributions made by the Company to the Plan will be held in a trust (the "Trust"), which will be established pursuant to a written agreement (the "Trust Agreement") between the Company and Jeffrey K. Watson and Robert Barrows as the trustee(s) of the Trust (individually and collectively, the "Trustee').

The Company desires to enter into a transaction whereby the Company will concurrently (i) borrow approximately $184,000,000; (ii) redeem all of its issued and outstanding stock from current shareholders for approximately $135 million; (iii) make existing debt payments, and pay fees related to the "Transaction" (as hereinafter defined); and (iv) sell to the Trust shares from the Company's treasury pursuant to an offer of sale by the Company (the "Offer") (collectively, the "Transaction"). It is intended that, upon closing of the Transaction, the Trust will own 100% of the issued and outstanding stock of the Company. If the Trustee accepts the Offer, the Company will lend to the Trust the funds needed to finance its purchase of Company shares.

The Company desires to retain GreatBanc to serve as the Independent Fiduciary (as shall be provided in the Trust Agreement) to direct the Trustee whether to accept the Offer, and the Independent Fiduciary is willing to serve in that capacity, on the terms and subject to the conditions set forth in this Agreement.

### AGREEMENT

In consideration of the mutual covenants and agreements set forth in this Agreement, the parties agree as follows:

### APPOINTMENT AND DUTIES

1. <u>Appointment of Independent Fiduciary.</u> The Company hereby appoints the Independent Fiduciary to serve as independent fiduciary solely for the purpose of evaluating, and directing the Trustee whether to accept, the Offer, and the Independent Fiduciary hereby accepts this appointment. The Company represents and warrants to the Independent Fiduciary that such appointment has been approved and ratified by Jeffrey K. Watson, the Company's General Manager, acting on behalf of the Company pursuant to authority granted him by the Company's Board of Directors (the "Board").

1

2. <u>Continuing Service</u>. The Company hereby retains the Independent Fiduciary to serve until the Transaction closes or is abandoned, or the Independent Fiduciary resigns or is removed by the Company. The Independent Fiduciary's appointment shall cease automatically at the closing or abandonment of the Transaction.

3. <u>Duties of the Independent Fiduciary</u>. The Independent Fiduciary shall conduct such due diligence and negotiations related to the Transaction as it, in its sole discretion, deems appropriate and necessary for it to determine whether to direct the Trustee to accept the Offer.

4. <u>Due Diligence Investigation</u>. In order to enable the Independent Fiduciary to properly evaluate the Offer, the Company shall deliver to the Independent Fiduciary all information regarding the finances and operations of the Company that the Independent Fiduciary and its advisors shall reasonably request. In addition, the Company shall grant to the Independent Fiduciary and its advisors reasonable access to the officers and directors of the Company and shall provide to the Independent Fiduciary all information requested by the Independent Fiduciary and its advisors relating to the actions of the Board relating to past, present, and projected business affairs of the Company and all legal documents and other pertinent materials directly or indirectly relating to the transactions contemplated by the Offer.

5. <u>Retention of Financial Advisor</u>. The Independent Fiduciary will engage the services of a qualified independent financial advisor, who will report directly to the Independent Fiduciary and not to the Company or its shareholders. The Independent Fiduciary or the financial advisor will be entitled to timely periodic payment by the Company of all fees and expenses of the financial advisor. All fees and expenses of the financial advisor that are incurred by the Independent Fiduciary up to and including the Closing shall be paid by the Company at or before the Closing.

6. <u>Retention of Legal Counsel</u>. The Independent Fiduciary will engage its own independent legal counsel. The Independent Fiduciary and its legal counsel shall be entitled to timely periodic payment by the Company for all fees and expenses of the Independent Fiduciary's legal counsel. All legal fees and expenses which are incurred by the Independent Fiduciary up to and including the Closing shall be paid by the Company at or before the Closing.

7. <u>Confidentiality</u>. The Independent Fiduciary shall use the information disclosed to it by the Company only for the purpose of evaluating the Offer and to discharge its fiduciary duties under ERISA. The Independent Fiduciary shall restrict disclosure of the information that it obtains from the Company to those persons who require knowledge of the information in order to help the Independent Fiduciary to evaluate the Offer (including, but not limited to, officers, directors, employees, and professional advisors of the Independent Fiduciary) and shall subject such persons to requirements to keep such information confidential that are substantially the same as the requirements that apply to Independent Fiduciary pursuant to this Agreement. Neither the Independent Fiduciary

nor any of its agents or advisors shall disclose any confidential information regarding the Company to any third party, except as may be required by ERISA or other laws or as may be requested by the Department of Labor, the Internal Revenue Service, the Securities and Exchange Commission, or any other federal or state agencies; provided, however, that the Independent Fiduciary shall give the Company reasonable notice prior to such disclosure and reasonable opportunity for the Company to respond with respect thereto. Neither the Independent Fiduciary nor any of its agents or employees shall be obligated to maintain the confidentiality of any information that is publicly available or that becomes publicly available without violation by the Independent Fiduciary or any of its agents or employees of the terms of this Section 7. After completion or abandonment of the Transaction, the Independent Fiduciary shall remain subject to the confidentiality provisions of this Agreement. The language in this section shall supersede any and all other prior agreements, written or oral, between the Company and the Independent Fiduciary with respect to the confidentiality of any information provided to the Independent Fiduciary.

## COMPENSATION

8.     Transaction Responsibility Fee. The Company shall pay to the Independent Fiduciary a fee of $190,000 for the exercise by the Independent Fiduciary of its fiduciary responsibility in connection with the evaluation of the Offer. Except as provided in Section 9 below, the fee so payable to the Independent Fiduciary shall be paid in five (5) equal installments as follows (with each installment payment that is due as hereinafter described being payable in full irrespective of whether the Independent Fiduciary directs the Trustee to accept the Offer and/or the Trustee actually accepts the Offer):

(a) the first installment shall be due and payable on the signing of this Agreement (the "Execution Date');

(b) the second installment shall be due and payable on the earlier of (i) the one-month anniversary of the Execution Date, (ii) the date on which the Company asks the Independent Fiduciary to direct the Trustee with respect to the Offer (the "Direction Request Date"), or (iii) the Closing;

(c) the third installment shall be due and payable on the earlier of (i) the two-month anniversary of the Execution Date, (ii) the Direction Request Date or (iii) the Closing;

(d) the fourth installment shall be due and payable on the earlier of (i) the three-month anniversary of the Execution Date, (ii) the Direction Request Date or (iii) the Closing; and

(e) the fifth installment shall be due and payable on the earlier of (i) the four-month anniversary of the Execution Date, (ii) the Direction Request Date or (ii) the Closing.

In the event that the Offer should be structured in a manner that would require the involvement of the Independent Fiduciary to a greater extent than is contemplated as of the execution of this Agreement, the Independent Fiduciary will be entitled to an additional fee commensurate with its increased responsibilities and fiduciary liability. The dollar amount of such fee will be proposed by the Independent Fiduciary and subject to the consent of the Company, which consent will not be unreasonably withheld.

9. <u>Termination</u>. The Independent Fiduciary's services hereunder may be terminated by written notice provided by the Company to the Independent Fiduciary. In the event that such services are terminated at any time and/or for any reason prior to the earlier of (i) the Direction Request Date and (ii) the Closing, the Section 8 fee installment next due after the later of (1) the date of the written notice or (2) such termination's effective date (as provided in the notice) shall be due and payable on the date of such notice, together with any then unpaid expenses and installment(s) previously due, and no subsequent Section 8 fee installments shall be due. If the Company shall terminate the Independent Fiduciary's services on or after the Direction Request Date, all of the installments described in Section 8 above, together with all any then unpaid expenses, shall be due and payable on the date of such notice.

10. <u>Additional Fees</u> (a) <u>Fees for Extraordinary Services</u>. In addition to the fees due and payable to the Independent Fiduciary under Sections 8 and 9, the Company agrees to pay additional fees to the Independent Fiduciary e for any services performed by the Independent Fiduciary in addition to those provided for in this Agreement. Examples of additional services that may be provided by the Independent Fiduciary from time to time include (but are not limited to): providing counsel or testimony in connection with, or involvement in, litigation relating to the Plan or Trust; responding to hostile, contested, or unsolicited tender offers for shares of the Company's stock held by the Trustee; and, evaluating and responding to proposed mergers, acquisitions, divestitures, public offerings, reorganizations, or similar transactions involving the Company. The Independent Fiduciary will charge for its extraordinary services based on a negotiated fee for the particular matter in question. Fees for all other extraordinary additional services as to which a negotiated fee cannot be reached shall be charged at the Independent Fiduciary's normal hourly rates then in effect. The hourly rate of the officers and employees of the Independent Fiduciary currently in effect are as follows: senior officers, $500.00 per hour; other officers, $300.00 per hour; staff, $150.00 per hour.

11. <u>Reimbursement of Expenses</u>. The Company shall reimburse the Independent Fiduciary for all expenses incurred by the Independent Fiduciary in connection with the performance of its services pursuant to this Agreement. Expenses for which the Independent Fiduciary shall be entitled to reimbursement shall include, but are not limited to, charges for fees and expenses of the Independent Fiduciary 's financial advisors and legal counsel and out-of-pocket expenses incurred by officers or employees of the Independent Fiduciary, such as charges for copying, postage, facsimile transmissions, private express mail deliveries, and travel expenses.

12. **Reimbursement from Trust.** To the extent that the Company shall fail to pay the fees or to reimburse the Independent Fiduciary for its expenses on a timely basis, the Company agrees that the Independent Fiduciary shall be paid the amounts due to it from the Trust. If there is not sufficient cash in the Trust to pay the amounts due to the Independent Fiduciary, then, as provided in the Trust Agreement, the Trustee shall offset the amounts due to the Independent Fiduciary against the assets of the Trust, and the Trustee shall sell assets of the Trust to the extent necessary to obtain sufficient cash to pay the amounts due to the Independent Fiduciary. To the extent that the Trust is unable to pay all amounts owed to the Independent Fiduciary under this Agreement for any reason, the unpaid amounts shall become the legal obligation of the Company and shall be paid by the Company as soon as possible after its receipt of written notice from the Independent Fiduciary of the amounts due.

## TAX QUALIFICATION OF PLAN

13. **Representations and Warranties of the Company.** The Company hereby represents and warrants to the Independent Fiduciary as follows:

(a) The Plan will be qualified under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") and shall qualify as an "employee stock ownership plan" within the meaning of Section 4975 (e)(7) of the Code and Section 407 (d)(6) of ERISA;

(b) The Trust will be exempt from taxation under Section 501(a) of the Code; and

(c) The shares of the common stock of the Company will constitute "employer securities" within the meaning of Section 409(l) of the Code and "qualifying employer securities" within the meaning of Section 407(d)(5) of ERISA.

14. **Tax Ruling.** The Company shall apply to the Internal Revenue Service ("IRS") within the current remedial amendment period promulgated under Section 401(b) of the Code and the regulations interpreting that section of the Code for a letter of determination that: (a) the Plan constitutes an "employee stock ownership plan" within the meaning of Section 4975 (e) (7) of the Code; (b) the Plan is qualified under Section 401(a) of the Code; and (c) the Trust is exempt from taxation under Section 501(a) of the Code. The Company will adopt on a timely basis any amendment required by the IRS as a condition for the issuance of the letter of determination.

## INDEMNIFICATION

15. **Indemnification.** For purposes of this Agreement, the term "Indemnitees" shall mean the Independent Fiduciary and its officers, directors, employees and agents. Subject to the applicable provisions of ERISA, the Company and any subsidiaries (collectively, the "Indemnitors") shall jointly and severally release, indemnify and hold harmless the Indemnitees for any loss, cost, expense, or other damage, including (but not

limited to) attorney's fees, suffered by any of the Indemnitees resulting from, or incurred with respect to, any legal proceedings, actions, suits, arbitrations and investigations related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement and the Trust (the "Right of Indemnification"). The Right of Indemnification provided for in this Section 15 shall survive the removal or resignation of the Independent Fiduciary, and shall further extend to: (a) any action taken or not taken in good faith by any of the Indemnitees; and (b) all reasonable costs and expenses incurred by the Indemnitees in enforcing the Right of Indemnification, including, but not limited to, reasonable attorneys' fees and court costs. However, the Right of Indemnification shall not apply to the extent that any loss, cost, expense, or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the gross negligence or from the willful misconduct of one or more of the Indemnitees, specifically including a breach of fiduciary duty constituting gross negligence or willful misconduct by one or more of the Indemnitees.

16. <u>Defense of Actions</u>.

(a) <u>Notice.</u> If one or more of the Indemnitees receives notice of any legal proceeding with respect to which indemnification may be sought against the Indemnitors pursuant to Section 15 (a "Proceeding"), an Indemnitee shall notify the Company of the Proceeding in writing within 30 days of the commencement of the Proceeding. However, the failure to so notify the Company shall not relieve the Indemnitors from their Right of Indemnification obligations, except to the extent that the failure to so notify the Company shall actually have prejudiced the defense of any Proceeding. The Company will be entitled to assume the defense of the Proceeding with counsel reasonably satisfactory to the Indemnitees or to otherwise participate in the Proceeding. If the Company elects to assume the defense of the Proceeding, it then shall pay all costs of defense.

(b) <u>Reimbursement of Expenses</u>. The Indemnitors shall reimburse the Indemnitees for all reasonable costs that they incur in connection with any Proceeding, including (but not limited to) costs of investigation, of testifying in any hearing, of responding to discovery proceedings, and of consulting with the Indemnitors or the attorneys for the Indemnitors; provided, however, that the Indemnitors shall not be required to reimburse any Indemnitees for expenses incurred by such Indemnitees to which the Right of Indemnification is held not to apply, as provided under Section 15 above. The Indemnitees shall have the right to employ their own counsel in any Proceeding, and the fees and expenses of the Indemnitees' counsel shall be paid by the Indemnitors as they are incurred, if any one or more of the following conditions are satisfied:

(i) the employment by the Indemnitees of their own counsel shall be authorized by the Company;

(ii) the Indemnitees are advised by their counsel that there may be one or more legal defenses available to them which are different from

6

or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees);

(iii) the Company fails to assume the defense of the Proceeding and to employ counsel satisfactory to the Indemnitees within 14 days after being notified of the commencement of the Proceeding; or

(iv) the Indemnitees shall be informed by their counsel that a conflict exists with the counsel selected by the Company.

17. <u>Governmental Investigations</u>. The provisions of this Section 17 shall apply if any governmental or private commission or regulatory authority shall investigate any of the Indemnitees, or shall require any of the Indemnitees to testify in any hearing or in connection with any investigation, regarding the performance of services by the Indemnitees pursuant to this Agreement. Investigations covered by this Section 17 shall include, but shall not be limited to, investigations conducted by any agency of the United States or of any state, by any committee of the Congress of the United States or of the legislature of any state, or by a stock exchange or other entity having authority to investigate or regulate similar to that of a stock exchange. In the case of any investigation, the Indemnitees shall have the right to employ separate counsel to represent them, and the Indemnitors shall pay the reasonable fees and expenses of the Indemnitees' counsel as they are incurred. The Independent Fiduciary agrees that it shall reasonably cooperate with the Company in connection with any investigation.

18. <u>Limitation</u>. If a court of competent jurisdiction shall hold that any payment or award of indemnification pursuant to the terms of this Agreement shall be unavailable to any one or more of the Indemnitees from the Indemnitors for any reason other than their gross negligence or willful misconduct, specifically including a breach of fiduciary duty constituting gross negligence or willful misconduct, the Indemnitees shall nevertheless have a right of contribution against the Indemnitors, which shall accordingly reimburse the affected Indemnitees consistent with this Agreement, but taking into account the basis for the denial of full indemnification by the court.

## MISCELLANEOUS

19. <u>Successors and Assigns</u>. The provisions of this Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of the Indemnitors and of the Independent Fiduciary. Neither termination nor completion of the engagement of the Independent Fiduciary or of any of the Indemnitees shall affect the Right of Indemnification provisions of this Agreement, which shall remain operative and in full force and effect after the termination or completion of the engagement. Neither the Company (nor its subsidiary) shall sell all or substantially all of its assets to any other person, corporation, or entity prior to 2019 unless (in either such case) the other person, corporation, or entity expressly assumes the duties and obligations of the Company as set forth in this Agreement. Moreover, the Company may not be liquidated

or distribute a material portion of its assets to its shareholders unless provisions satisfactory to the Independent Fiduciary have been made to continue the duties and obligations of the Indemnitors as set forth in this Agreement.

20. <u>Notice</u>.  Any notice required or permitted to be given under this Agreement shall be in writing and shall be delivered in person or sent by certified or by private express mail, postage prepaid, and properly addressed as follows:

To the Company:

With a copy to:

To the Trustee:                    GreatBanc Trust Company
                                   801 Warrenville Road, Suite 500
                                   Lisle, Illinois 60532
                                   Attention: Fred Kaseff, Vice President

with a copy to:                    McDermott Will & Emery
                                   <u>227 West Monroe Street</u>
                                   <u>Chicago, Illinois 60606</u>
                                   <u>Attention, William Merten, Esq.</u>

21. <u>Partial Invalidity</u>.  If any portion of this Agreement shall be determined to be unenforceable, the remaining provisions shall remain in full force and effect.

22. <u>Waivers</u>.  Either the Company or the Independent Fiduciary may, by written notice to the other party: (a) extend the time for the performance of any of the obligations or other actions of the other party under this Agreement; or (b) waive or modify performance of any of the obligations of the other party under this Agreement. Except as provided in the preceding sentence, no action taken pursuant to this Agreement shall be deemed to constitute a waiver by that party of compliance with any of the obligations contained in this Agreement. The waiver by either party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

8

23. <u>Governing Law</u>.  This Agreement shall be interpreted and enforced in accordance with, and governed by, the internal laws of the State of Illinois (without regard to its conflict of laws provisions).

24. <u>Interpretation and Construction</u>.  Section captions used in this Agreement are for convenience only and shall not affect or influence the construction of this Agreement.  Each party has been represented by its own legal counsel in connection with the preparation, review, execution and delivery of this Agreement.  Accordingly, the parties agree that the fact that one party may be considered to be the primary drafter of this Agreement shall not be a factor in construing any particular provision of this Agreement against that party.

25. <u>Entire Agreement</u>.  This Agreement supersedes all prior agreements and understandings between the parties and may not be changed or terminated orally.  No attempted change, termination, or waiver of any of the provisions of this Agreement shall be binding, unless in writing and signed by the party against whom the change, termination, or waiver is sought to be enforced.

IN WITNESS WHEREOF, the Company and the Independent Fiduciary have caused this Agreement to be signed as of the day and year first written above, and hereby acknowledge delivery and receipt of GreatBanc Trust Company's Privacy Notice and USA PATRIOT Act Notice (see Appendix A & B).

GREATBANC TRUST COMPANY
By: *[signature]*
Its: President

CASINO QUEEN, INC.
By: *[signature]*
Its: General Manager

## APPENDIX "A"

## NOTICE TO CUSTOMER REGARDING USA PATRIOT ACT INFORMATION

IMPORTANT INFORMATION ABOUT PROCEDURES FOR
OPENING A NEW ACCOUNT WITH
GREATBANC TRUST COMPANY

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.

What this means for you: When you open an account, we will ask for your name, address, date of birth (in the case of an individual) taxpayer identification number, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying document in order to verify the information that you have provided to us. We are required by law to attempt to match the information provided by you against lists issued by various governmental agencies to confirm that you are not a known or suspected terrorist or in any way affiliated with a known or suspected terrorist group.

If you have any questions about this process, please discuss them with your account manager or our internal anti-money laundering program coordinator. Thank you for your cooperation with this process.

## APPENDIX "B"

## Important Information Concerning Your Privacy

### Your Right to Financial Privacy
GreatBanc Trust Company has established policies and practices that respect the financial privacy of all individuals who use our trust company. We believe it is critical to comply with the laws and regulations designed to secure your financial privacy. Your relationship with us as our client is very important to us. We want you to understand our policies and practices regarding the collection, use and protection of your personal information.

### Our Privacy Policy
Our Privacy Policy applies to our relationships with individual clients who inquire about or obtain products or services from us for personal, family and household purposes.

### Strict Security Measures
We treat the security of information very seriously. We have established security standards and procedures to prevent unauthorized access to client information. We maintain physical, electronic and procedural safeguards to guard client information.

### Limited Employee Access
We have established procedures to limit employee access to information to only those employees with a business reason for accessing such information. We educate our employees about the importance of confidentiality and client privacy. We take appropriate disciplinary measures to enforce employee responsibilities regarding client information.

### Why We Collect Information
We collect information about you to:
    accurately identify you;
    protect and administer your records, accounts and funds;
    help us design or improve our products and services;
    understand your financial needs;
    save you time when you apply for new products and services;
    offer you quality products and services; and
    comply with certain laws and regulations.

### Information We Collect
We collect and maintain your personal information so that we can provide investment management and other services to you. The types and categories of information that we collect and maintain about you include:
    information we receive from you to open an account or provide investment advice or other services to you (such as your home address, social security number, telephone number, financial information and investment objectives);
    information that we generate to service your account or from our transactions with you (such as account statements and other financial information); and,
    information on your transactions with nonaffiliated third parties.
We have established procedures to ensure that the financial information we collect is accurate, current and complete. We are committed to working with you to promptly correct any inaccurate information.

### Our Selective Sharing of Information
In order for us to provide fiduciary and/or investment management and other services to you, we disclose your personal information in very limited instances, which include:
    disclosures to nonaffiliated companies as permitted by law, including those who help us service your account (such as providing account information to brokers and custodians); and,
    other limited disclosures as permitted by law, (such as required reports to government entities).
We do not share your information with third parties for marketing purposes. We do not sell your information.

**Former Clients**
If you end your relationship with us, we will continue to adhere to the privacy policies and practices described in this notice.

## GreatBanc Trust Company Privacy Policy

### Overview

This Privacy Policy sets forth the policies of the Company, with respect to the use, safeguarding and disclosure of nonpublic personal information collected by the Company in order to assure compliance by the Company with federal and applicable state laws and regulations concerning privacy of consumer financial information. We respect the financial privacy of our clients and consumers (clients and consumers hereafter collectively called "clients"). We will comply with laws and regulations designed to secure that privacy, including all federal and applicable state privacy laws and regulations, as well as the Federal Fair Credit Reporting Act to the extent it may apply to our business practices. Each client's relationship with us is important, and we want the client to understand our policies and practices about handling nonpublic personal information. We recognize the client's right to privacy and that each client has the right to expect his or her nonpublic personal information to remain private and secure. We will maintain standards to ensure that each client's nonpublic personal information is private and secure at all times. We want each client to be aware of this Privacy Policy, which outlines how the Company safeguards nonpublic personal information.

### Scope of Policy

This Policy applies to our relationships with clients who inquire about or obtain products or services from us for personal, family and household purposes. While this Policy does not apply to trusts for which we serve as trustee, employee benefit plans for which we provide fiduciary or other services, or business accounts, our trust, employee benefit plan and business clients' information is also very important to us. We also respect the privacy of our business clients, and will also take steps necessary to protect their information. We will separately follow all of our policies and procedures to assure that we meet all fiduciary obligations with respect to the privacy of our clients' information entrusted to us.

### Strict Security Measures

We will establish security standards and procedures to prevent unauthorized access to client information.

We will maintain physical, electronic and procedural safeguards to guard client information.

### Limited Employee Access

We will establish procedures to limit employee access to information to only those employees with a business reason for accessing such information. We will educate our employees about the importance of confidentiality and client privacy. We will take appropriate disciplinary measures to enforce employee responsibilities regarding client information.

### Collection of Information

We collect information about clients to:

> Accurately identify them;
> Protect and administer their records, accounts and funds;
> Help us design or improve our products and services;
> Understand their financial needs;
> Save them time when they apply for new products and services;
> Offer quality products and services; and
> Comply with certain laws and regulations.

### Sources of Information

The types and categories of information that we will collect and maintain include:

> Information we receive from clients to open an account or provide investment advice or other services (such as the client's home address, social security number, telephone, financial information and investment objectives.)
>
> Information that we generate to service the client's account or from our transactions with the client (such as account statements and other financial information).
>
> Information on the client's transaction with nonaffiliated third parties.

We will establish procedures so that the financial information we collect is accurate, current and complete. We will be committed to promptly correct any inaccurate information.

### The Selective Sharing of Information

We may share information with any affiliated party, as well as with unaffiliated third parties external to us only in the limited circumstances that this Policy describes.

In order for us to provide investment management and other services to our clients, we will disclose our clients' personal information in very limited instances, which will include:

> Disclosures to nonaffiliated companies as permitted by law, including those who help us service client accounts (such as providing account information to brokers and custodians).
>
> Other limited disclosures as permitted by law, for example, required reports to government entities.

We will not share clients' nonpublic personal information with third parties for marketing purposes. We will not sell client information.

**<u>Former Clients</u>**

If a client ends his or her relationship with the Company, we will adhere to the information policies and practices described in this Policy.