IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOM HENSIEK and JASON GILL, | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 3:20-cv-377-DWD |
| vs. | ) ) |
| BOARD OF DIRECTORS OF CASINO QUEEN HOLDING COMPANY, INC., ADMINISTRATIVE COMMITTEE OF THE CASINO QUEEN EMPLOYEE STOCK OWNERSHIP PLAN, CHARLES BIDWELL, III, TIMOTHY J. RAND, JAMES G. KOMAN, JEFFREY WATSON, ROBERT BARROWS, and JOHN & JANE DOES 1–20 | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

     Plaintiffs Tom Hensiek and Jason Gill have brought claims for breach of fiduciary duty against Defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1104, 1105 & 1106. Defendants Timothy Rand, James Koman, and Jeffrey Watson now bring a motion to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). (Doc. 48). The motion has been fully briefed and is ripe for decision. (Docs. 49, 58 & 61). For the following reasons, the Court finds that Plaintiffs have adequately plead their claims and that Defendants' motion to dismiss is due to be denied.

## I. FACTUAL BACKGROUND

According to the complaint, Plaintiffs are former employees of Casino Queen Hotel & Casino, a riverboat gambling house that opened in 1997 and moved on land in 2007 in East St. Louis, Illinois. While initially successful, Casino Queen's revenue suffered when other casinos opened nearby, prompting the owners to sell the casino. From 2006 to 2011, the owners pitched the casino to numerous potential buyers—all without success. Then, in 2012 and 2013, the owners sold the casino and its assets through a process evidenced by essentially four particular events.

First, the owners created a holding company for Casino Queen: CQ Holding Company, Inc. (the "Holding Company"). Second, the board of directors of the Holding Company created the Casino Queen Employee Stock Ownership Plan (the "ESOP") for the sole purpose of purchasing 100% of the Holding Company's outstanding stock. The directors of the Holding Company selected two of their own (Defendants Jeffrey Watson and Robert Barrows) to be co-trustees of the ESOP. The co-trustees were instructed to take directions from a newly created Administrative Committee which consisted of directors and officers of the Holding Company. The directors retained the power to dismiss the co-trustees and members of the Administrative Committee, a power that Plaintiffs contend is the functional equivalent of control over their decision making as co-trustees. (Doc. 1 at 3). Plaintiffs believe that because of this retention of control, the directors attained a fiduciary status toward them. (Doc. 1 at 4).

Third, the ESOP purchased the Holding Company's stock (the "stock-purchase transaction"). This transaction effectively transferred ownership of Casino Queen to the

ESOP. Under the direction of the co-trustees, the ESOP purchased all of the outstanding stock for the sum of $170 million. The original shareholders of the Holding Company loaned $170 million to the ESOP to finance the sale, and the Holding Company guaranteed the loans. At the time of the stock-purchase transaction, the co-trustees were the only members of the Holding Company's board of directors who were not also shareholders in the Holding Company. According to Plaintiffs, the price paid for the stock was dramatically inflated based on financial projections of Casino Queen's future profitability, which projections the board of directors knew or should have known were unreliable, unrealistic, and inaccurate. Thus, the ESOP paid significantly more than fair market value for the stock, which was the ESOP's only asset. Casino Queen employees did not learn of the stock-purchase transaction until after it had been completed.

Fourth, the ESOP sold Casino Queen's real property (the "real property transaction"). The co-trustees had the power to vote unallocated stock, which since 2012 has been the majority of the Holding Company stock, thus enabling them to make decisions on behalf of the Holding Company without regard to how any employees would vote. The co-trustees voted their stock in favor of the sale of "virtually all of" Casino Queen's real property to make an accelerated payment on debt owed to the sellers of the Holding Company's stock. (Doc. 1 at 5). The real property sold at a price of $140 million to Gaming and Leisure Properties ("GLPI"). (Doc. 1 at 23–24). The Holding Company then agreed to enter into a "triple net lease agreement" to lease the same property back from GLPI for $210 million over 15 years. (Doc. 1 at 24). The real property had a tax-assessed value of about $12.1 million at the time it was sold to GLPI. (Doc. 1 at

3

24).

Plaintiffs contend that Defendants conducted the stock-purchase and real property transactions in violation of their fiduciary duties under ERISA. Plaintiffs also allege that Defendants actively concealed their ERISA violations by misrepresenting the terms of the stock-purchase transaction or the effects of the transactions on the value of the stock. For example, Defendants misreported the price of the stock and the amount of debt required to complete the stock-purchase transaction in the ESOP's required annual filings with the Department of Labor (Form 5500s). The Form 5500s also misreported the Casino Queen's assets and their growth. The Form 5500s filed for plan years 2012, 2013, and 2014 were signed by Defendant Barrows, and the Form 5500s filed after that were signed by William Vandersand.

And at various company meetings, the co-trustees told employees, including Plaintiffs, that the ESOP would provide significant retirement savings and wealth for participants. Employees were even told that they would be able to purchase vacation homes with the money from the ESOP. When Plaintiff Gill left Casino Queen in 2018, company management told him he was making a big mistake because the ESOP was a unique opportunity that would provide the best retirement he would ever have.

Defendants are alleged to have also misrepresented the growth of Casino Queen's value to the ESOP participants in annual reports produced by Defendants and distributed to the ESOP participants. The only exception was the annual report in October 2019, which indicated that the value of the shares had decreased by 95%. Company management explained that the drop in value was due to decreased revenue since 2017.

4

However, employees did not observe the business levels at Casino Queen dropping at a rate consistent with management's explanation.

Plaintiffs assert that they exercised due diligence by reviewing their annual account balances and attending employee meetings concerning the ESOP. These sources of information indicated that the value of the ESOP was growing rapidly. It was only because of Defendants' efforts to conceal material facts that Plaintiffs did not learn of Defendants' breaches of fiduciary duty until 2019.

## II.  MOTION TO DISMISS STANDARD

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555 and quoting Fed. R. Civ. P. 8(a)(2)). The court will accept all well-pleaded allegations as true. *Iqbal*, 556 U.S. at 678. However, the court will not accept legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 677–78). A complaint "must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Arnett*, 658 F.3d at 751–52 (internal quotations and citation omitted).

### III. ANALYSIS

Defendants make three arguments in support of their motion to dismiss. First, Defendants contend that Plaintiffs' claims are barred by ERISA's statute of limitations. Second, they argue that Plaintiffs have not plausibly alleged that the ESOP paid more than adequate consideration for the Holding Company's stock. And third, they argue that they cannot be liable under ERISA for the real property transaction. The Court will address each argument in turn.

**A.     Statute of Limitations**

Claims for breach of fiduciary duty under ERISA cannot be brought

> after the earlier of--
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. The alleged breaches of fiduciary obligations all occurred in 2012 and 2013. Thus, any legal claims regarding those breaches would normally have to be brought in 2018 or 2019 at the latest. The present action was filed in 2020. Plaintiffs are therefore forced to rely on the "fraud or concealment" exception. They argue that the "fraud or concealment" exception would restart the six-year clock in 2019, when they allegedly first

discovered the Defendants' breaches after Defendants spent years actively concealing them. However, Defendants argue that Plaintiffs cannot invoke the "fraud or concealment" provision for four reasons: (1) Plaintiffs have not plead fraud with particularity; (2) Plaintiffs failed to conduct due diligence; (3) Plaintiffs have not alleged a causal connection between the alleged concealment and their delay in filing; and (4) Plaintiff's fraud allegations regarding the real property sale are conclusory. None of these arguments hold water.

The "fraud or concealment" provision codifies the equitable doctrine of fraudulent concealment. *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 850 (7th Cir. 1996). Fraudulent concealment can manifest in two different modes: self-concealing acts and active concealment. *Id.* at 851–52. "A self-concealing act is an act committed during the course of the original fraud that has the effect of concealing the fraud from its victims. Active concealment refers to acts intended to conceal the original fraud that are distinct from that original fraud." *Id.* at 852. Both modes are forms of fraud and normally must be plead with particularity under Federal Rule of Civil Procedure 9(b). *Id.* at 854.

However, here, Plaintiffs have raised allegations of fraud to trigger an exception within the statute of limitations. The statute of limitations is an affirmative defense, and a plaintiff is not required to plead around an affirmative defense. *Resnick v. Schwartz*, No. 17 C 04944, 2018 WL 4191525, at *6 (N.D. Ill. Sept. 3, 2018) (citing *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)). Thus, it is unclear if Rule 9(b) applies to a plaintiff pleading "fraud or concealment" under ERISA's statute of limitations.

7

Even if Rule 9(b) does apply, the Court is satisfied that Plaintiffs have plead fraudulent concealment with enough particularity at this stage of the litigation. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To survive a motion to dismiss, Plaintiff must plead facts showing the "who, what, when, where, and how" of the fraud. *United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 739 (7th Cir. 2021). Allegations of fraud must be precise and substantiated, but courts should not "take an overly rigid view of the formulation." *Id.* (internal citations omitted).

Plaintiffs point to three different actions that Defendants took to actively conceal the true nature and effects of the stock-purchase and real property transactions. First, Plaintiffs allege that the co-trustees told employees at company meetings that the ESOP would generate significant retirement savings and wealth for the participants. This allegation describes specific speakers (the co-trustees Barrows and Watson), specific statements, and the specific setting in which those statements were made. However, Plaintiffs do not attribute this misrepresentation to Defendants Bidwell, Rand, or Koman, who are the only defendants bringing the present motion to dismiss. Therefore, the allegations regarding these statements are insufficient as to Bidwell, Rand, and Koman.

Second, Plaintiffs allege that Defendants actively concealed their breach of fiduciary duties by misrepresenting the value of the ESOP in the Form 5500s filed with the Department of Labor. Specifically, Plaintiffs allege that "The Board Defendants, as members of the Administrative Committee or acting for the Company as the Plan Administrator, prepared and caused to be filed with DOL the ESOP's Form 5500s." (Doc.

8

1 at 28). Earlier in the complaint, Plaintiffs identified Defendants Bidwell, Rand, and Koman as members of the board of directors included in any reference to "the Board Defendants." (Doc. 1 at 9). Thus, Plaintiffs have alleged that specific individuals made specific statements in specific documents. These allegations are sufficiently particular to satisfy Rule 9(b).

Finally, Plaintiffs allege that the board of directors misrepresented the value of the ESOP in the annual statements provided to the ESOP participants. Specifically, Plaintiffs allege that "The Board Defendants, as members of the Administrative Committee or acting for the Company as the Plan Administrator, prepared and disseminated to ESOP participants annual account balance statement misrepresenting to them that their CQ stock was increasing in value every year between 2013 and 2017." (Doc. 1 at 31). Again, having identified Defendants Bidwell, Rand, and Koman as members of the board of directors included in any reference to "the Board Defendants," Plaintiffs have alleged that specific individuals made specific statements in specific documents provided to Plaintiffs. Thus, the Court is satisfied that Plaintiffs have plead acts of "fraud or concealment" with enough particularity to pass muster under Rule 9(b) and advance to discovery on these matters.

Defendants go on to argue that Plaintiffs failed to exercise due diligence to discover the alleged breach. However, due diligence is not required when a plaintiff pleads active concealment. *See Wolin*, 83 F.3d at 852–54. Defendants also argue that Plaintiffs do not allege that the active concealment caused the delay in filing. However, making all reasonable inferences in Plaintiffs' favor, they have adequately alleged that

9

Defendants' misrepresentations in the annual reports and meetings assured them that the ESOP was growing in value and that they did not become concerned until 2019 when they learned that the ESOP had lost almost all its value. (Doc. 1 at 33).

Finally, Defendants argue that Plaintiffs never articulate with particularity how Defendants fraudulently concealed the terms of the real property transaction. This argument is a straw man, however. Plaintiffs charge Defendants with misrepresenting the real property transaction's effects, not its terms. Plaintiffs have alleged that the annual statements provided to participants fraudulently concealed Defendants' breaches by misrepresenting the value of the shares. *See Wolin*, 83 F.3d at 853 (recognizing plaintiff's claim that defendant misrepresented the value of an investment as an allegation of fraudulent concealment). If Defendants wish to argue that misrepresenting the value of the stock did not in fact conceal Defendants' breaches, they may pursue their theory in discovery. The Court is satisfied with adequacy of the allegations of fraudulent concealment as plead.

### B.     More than Adequate Consideration

Moving on to the substance of Plaintiffs' claims, Defendants first argue that they did not breach their fiduciary duties because they did not direct the co-trustees to enter into the stock-purchase transaction. They claim that GreatBanc, an independent trustee, directed the co-trustees to enter into the transaction. This is a factual assertion directly contradicted by Plaintiffs' complaint. When considering a motion to dismiss, the Court must accept Plaintiffs' claims as true. And Plaintiffs have clearly alleged that Defendants directed the co-trustees to enter into the transaction. Therefore, this argument from

10

Defendants is a nonstarter.

Second, Defendants do not contest that the transaction as described by Plaintiffs violates ERISA's rule against prohibited transactions. Rather, they argue that 29 U.S.C. § 1108(e) exempts them because the ESOP did not pay more than adequate consideration for the shares. They argue that Plaintiffs have failed to adequately plead around the exemption. However, "an ERISA plaintiff need not plead the absence of exemptions to prohibited transactions." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016). The Seventh Circuit has made clear that the exemptions in 29 U.S.C. § 1108 are affirmative defenses and that the plaintiff has no duty to negate them in the complaint. *Id.*; *see also Lysengen v. Argent Trust Co.*, 498 F. Supp. 3d 1011, 1020–21 (C.D. Ill. 2020). Defendants may raise this argument at a later stage, but it is not grounds for dismissing the complaint.

## C.     Real Property Transaction

Plaintiffs also seek to hold Defendants accountable for the real property transaction. According to Plaintiffs, the transaction was not in the best interests of the ESOP participants and thus constituted a breach of fiduciary duty by the co-trustees who voted to approve the transaction and by the other members of the board of directors who failed to prevent the co-trustees from voting for the transaction. Defendants seek to have these claims dismissed by arguing that the real property transaction was a corporate transaction that did not involve Defendants' roles as fiduciaries. Relying on *Grindstaff v. Green*, 133 F.3d 416, 424 (6th Cir. 1998), Defendants argue that ESOP stock voting rights do not constitute an ERISA plan asset that would trigger fiduciary obligations each time

the stock is voted. In *Grindstaff*, the Sixth Circuit held that a vote on a matter that is "more about corporate control than about the value of retirement funds or plan assets" may not implicate fiduciary duties under ERISA for the holders of stock voting rights. *Grindstaff*, 133 F.3d at 424.

However, the Sixth Circuit's view has been consistently rejected by district courts in the Seventh Circuit and other courts. *See, e.g.*, *Neil v. Zell*, 677 F. Supp. 2d 1010, 1029 (N.D. Ill. 2009); *Newton v. Van Otterloo*, 756 F. Supp. 1121, 1127–28 (N.D. Ind. 1991); *O'Neill v. Davis*, 721 F. Supp. 1013, 1014–16 (N.D. Ill. 1989); *Spires v. Schools*, 271 F. Supp. 3d 795, 804 (D.S.C. 2017). In *Neil*, the court relied on the dissenting opinion in *Grindstaff*:

> As the dissenting judge pointed out, though, the majority ignored ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), which defines fiduciary conduct under ERISA to include "any authority or control respecting management or disposition of" a plan's assets. *Grindstaff*, 133 F.3d at 432. Even if the right to vote a share is not a plan asset, the share itself is an asset, so voting that share must be "management" of the asset. *Newton*, 756 F. Supp. at 1128; *O'Neill*, 721 F. Supp. at 1015. Moreover, the common law of trusts applies a duty of proper care to voting decisions by trustees, *Grindstaff*, 133 F.3d at 432 (citing Restatement (Second) of Trusts § 193, cmt. a (1959)), and courts routinely look to the common law to interpret ERISA. *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109–11 (1989)). Finally, in regulations interpreting ERISA, the Department of Labor has concluded that "[t]he fiduciary act of managing plan assets that are shares of corporate stock includes the voting of proxies appurtenant to those shares of stock." 29 C.F.R. § 2509.08-2 (2009); 29 C.F.R. § 2509.94-2 (1995). For all these reasons, the court respectfully declines to adhere to the broad language of the majority opinion in *Grindstaff*. The reasoning of the dissenting judge as well as that of the courts in *Newton* and *O'Neill* is more convincing. Voting of shares held by the ESOP constitutes the "management" or "use" of plan assets.

*Neil*, 677 F. Supp. 2d at 1028–29. This Court finds the reasoning in *Neil* to be persuasive and for the same reasons finds that the voting of shares held by the ESOP triggered

Defendants' fiduciary duties under ERISA.

This reasoning also heads off Defendants' second argument. They rely on Department of Labor regulations to argue that the ESOP's investment in the Holding Company would not make the Holding Company's assets the ESOP's assets. (Doc. 49 at 24–25 (citing 29 C.F.R. § 2510.3-101)). Without commenting on this interpretation of the regulations, the Court finds Defendants' second argument moot. It is irrelevant whether the Holding Company's assets are considered separate from the ESOP's assets. Based on the reasoning in *Neil*, the Court has found that voting shares of the Holding Company held by the ESOP constitutes the management or use of plan assets and triggers fiduciary duties under ERISA. Therefore, Plaintiffs have stated a claim for breach of fiduciary duties under ERISA for Defendants' actions in relation to the real property transaction.

## IV.  CONCLUSION

For these reasons, Defendants' motion to dismiss (Doc. 48) is **DENIED**. All Defendants shall file an answer to the complaint within 14 days of the entry of this order.

**SO ORDERED.**

Dated: January 28, 2022

_____
DAVID W. DUGAN
United States District Judge