IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOM HENSIEK and<br>JASON GILL,<br><br>    Plaintiff,<br><br>vs.<br><br>BOARD OF DIRECTORS OF CASINO<br>QUEEN HOLDING COMPANY, INC.,<br>ADMINISTRATIVE COMMITTEE OF<br>THE CASINO QUEEN EMPLOYEE<br>STOCK OWNERSHIP PLAN,<br>CHARLES BIDWELL, III,<br>TIMOTHY J. RAND,<br>JAMES G. KOMAN,<br>JEFFREY WATSON,<br>ROBERT BARROWS, and<br>JOHN & JANE DOES 1–20,<br><br>    Defendants. | Case No. 3:20-cv-377-DWD |

## ORDER CONCERNING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

**DUGAN, District Judge:**

The Court hereby enters the following plan as agreed upon by the parties to govern the search and production of electronically stored information in this matter.

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

Nothing in this Order is intended to or does impose duties on any party that are

greater or more burdensome than the duties set forth in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Local Rules of the United States District Court for the Southern District of Illinois ("Local Rules").  Moreover, nothing in this agreement is intended to or does alter the scope and limitations on discovery, including discovery of electronically stored information, set forth in the Federal Rules of Civil Procedure (including, but not limited to, Rules 26, 34, and 45) and the Local Rules.

2. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

The parties agree to meet and confer in good faith regarding matters related to the production of documents not specifically set forth in this agreement, related to the interpretation of this agreement, and related to the parties' obligations hereunder.  The parties shall make reasonable efforts to comply with and resolve any differences concerning compliance with this agreement.  If a party receiving documents believes that the party producing documents has not complied with any aspect of this protocol, such requesting party shall inform the producing party in writing within a reasonable time after the document production, and the parties shall meet and confer to reach a resolution.  If the parties are unable to reach a resolution regarding a dispute concerning the interpretation of, or compliance with this agreement, such disputes may be presented for judicial resolution.

3. **PRESERVATION**

The parties dispute the applicable lookback period during which Defendants' must preserve documents. Plaintiffs seek language requiring the parties to preserve all relevant documents, ESI, and other evidence regardless of date. Defendants argue that no preservation language is necessary or alternatively that the parties should only be required to preserve documents, ESI, and other information dating back to December 26, 2010. The Court **SETS** this dispute for a hearing via Zoom videoconference on **March 16, 2022, at 10:00 a.m.** The Court will send the appropriate Zoom invitation via email. The parties shall be prepared to present their arguments regarding the preservation provision of the ESI protocol. Until the Court decides this issue, the parties shall preserve all and not permit the destruction of any relevant documents, ESI, and other evidence regardless of date.

4. **COLLECTION AND SEARCH FOR RESPONSIVE DOCUMENTS**

The parties agree that they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. These discussions will include a discussion of the proper custodians, file locations and other sources that will be searched via targeted manual searches and using search terms. In connection with that discussion, the parties will discuss the proper search terms to be applied to the agreed upon custodial and non-custodial ESI sources.

5. **PRODUCTION FORMATS**

All documents maintained originally in electronic, native format ("ESI") and

collected for this case[1] are to be produced in an "imaged" file format with a corresponding load file containing OCR or extracted text, and metadata fields, as described below. The parties agree that Excel spreadsheets and .CSV files will be provided in native format and with an "imaged" color 300 DPI text searchable PDF, one PDF file per Document, which is Bates stamped with every page of the PDF bearing a unique Bates number.  The parties will meet and confer regarding any MS Word documents produced as image files that the receiving party believes to be missing material information that would be contained in the native version of the file and the parties understand that reasonable requests for native files will not be withheld.

Other specific information regarding the production format is provided below, which also includes the types of files to be used by the Producing Party when producing Documents:

> a. <u>Native</u>: Excel files,.CSV files, other similar spreadsheet files and other files that cannot be rendered in a readable PDF imaged format shall be produced in the format that the electronically stored information was originally created, except in the event the document requires redaction, the parties will meet and confer to determine production format of the document. The parties will confer about the production format for database files such as Microsoft Access files, should there be any responsive files of this format. The following production format specifications apply to Native files:
>    i. The native document will be accompanied by a slipsheet containing a corresponding bates number and any confidentiality designations, as appropriate.[2]

---

[1] If documents were previously collected by the producing party in connection with another case and are not maintained in a format that allows the producing party to reproduce them in the format specified herein, the producing parties should work together to determine a reasonable format in which such documents may be produced and, where necessary, the producing party may produce the documents in the same format used in the previous matter.

[2] The Parties agree that native files may be printed for use as an exhibit in deposition or at trial, so long as the print-out is introduced with the Bates-stamped slip sheet attached as a cover page to the non-Bates stamped print-out.

      ii. A relative file path to the native file and the corresponding "imaged" PDF files shall be provided in the load file.
     iii. Filenames must be unique in the production, unless the content is identical. The Parties recommend naming files by the Bates number of the first page of the associated document. The filename may contain a CONFIDENTIAL designation (or a similar confidential prefix) where appropriate.
     iv. The filename must retain the file extension corresponding to the original native format; for example, an Excel 2003 spreadsheet's extension must be .xls.
      v. Each filename, including extension, shall correspond to the NativePath metadata field in its corresponding document's row in the load file.
     vi. Filenames shall be encoded in UTF-8.
    vii. Files shall be placed in the *natives/* subdirectory.

b. <u>Image Files</u>: Document images shall be generated from electronic Documents in a set of color 300 DPI text searchable PDFs, one PDF file per Document, that reflects the full and complete information. The specifications regarding images are:
      i. all images shall be produced as a set of 300 DPI text searchable PDFs, one PDF file per Document;
     ii. track changes and comments in Word documents and PowerPoint notes shall also be imaged so that all such content is viewable on the images;
     iii. Bates numbers and confidentiality designations shall be branded to the imaged files (every page should have a unique bates number);
     iv. PDFs shall include searchable text embedded in the document;
      v. the original document orientation shall be retained; and
     vi. File Naming Convention: Filenames should be of the form: <Bates num>.pdf, where <Bates num> is the BATES number of the first page of the document.
    vii. No other information should be provided in image filenames, including confidentiality status.
   viii. Filenames must be encoded in UTF-8.
     ix. Files shall be placed in the *images/* subdirectory.

c. <u>OCR or Extracted Text File</u>: An OCR or Extracted text file which corresponds to each produced document shall be provided as follows:
      i. Document level OCR text for redacted documents or Extracted text for ESI not containing redaction are to be located in the same directory as its image file;
     ii. Filenames should be of the form: <Bates num>.txt, where <Bates

        num> is the Bates number of the first page of the document.
  iii. An OCR or Extracted text file containing the produced document's content will be provided for all documents whether it is produced as an image file or natively.
  iv. Text and filenames must be encoded in UTF-8.
  v. Files should be placed in the *text/* subdirectory.

d. <u>Load File</u>: A load file shall be provided in a ".dat" file format that contains metadata fields in a delimited text load file.
  i. Where it is reasonably possible to provide such metadata fields and where doing so would not cause undue burden or expense, the fielded data should include all the below metadata fields listed in Table 1 below for each document produced.
  ii. The first line of the ".dat" load file should contain the field headers indicating the contents of each field, and each subsequent line (row) should contain the fielded data for each document, where such fielded data is reasonably available.
     1. However, in all events, the BEGINBATES, ENDBATES, CUSTODIAN, ALLCUSTODIAN, and EXTRACTEDTEXT fields must be populated accurately.
  iii. Each column of each row contains one metadata value, with values encapsulated by a special "quote" character and columns separated by a special "separator" character throughout.
  iv. The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (i.e., ABC001.0PT).
  v. The volume names should be consecutive (i.e., ABC001, ABC002).
  vi. There should be one row in the load file per Document.
  vii. Every image in the delivery volume should be contained in the image load file.
  viii. The image key should be named the same as Bates number of the page.
  ix. Text must be encoded in either ASCII, UTF-8, or UTF-16.
  x. Load File should be placed in the Data folder of the production in the root directory.
  xi. Load files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.). A separate volume should be created for each piece of media delivered.
  xii. The Opticon OPT image load file (.OPT) configuration shall be a page level comma-delimited file containing seven fields per line: PageiD, VolumeLabel, ImageFilePath, DocumentBreak,FolderBreak, BoxBreak, PageCount, PageiD as follows:
     1. **PageiD:** Page iD of the item being loaded. This field must be

        identical to the image name (less the file extension).
2. **VolumeLabel:** This field should match the Volume Name assigned in the corresponding metadata load file.
3. **ImageFilePath:** The path to the image from the root of the delivery media.
4. **DocumentBreak:** The letter "Y" denotes the first page of a Document. If this field is blank, the page is not the first page of a Document.
5. **FolderBreak**: Leave empty.
6. **BoxBreak**: Leave empty.
7. **PageCount**: Optional.

xiii. Example Opticon Delimited File:
MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,3
MSC000002,MSCOO 1 ,D:\IMAGES\00 1 \MSC000002. TIF, Y,,
MSC000003,MSCOO 1 ,D:\IMAGES\00 1 \MSC000003 .TIF, Y ,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,Y,,

xiv. Concordance Delimited Files:
þBegDocþþEndDocþþBegAttachþþEndAttachþþCustodianþ

xv. The data load file should use standard Concordance delimiters:
1. Comma-- ¶ (ASCII 20)
2. Quote—þ (ASCII 254)
3. Newline—® (carriage-return line-feed to indicate the start of the next record)

xvi. The first record should contain the field names in the order of the data;

xvii. All date fields should be produced in mm/dd/yyyy format;

xviii. Use carriage-return line-feed to indicate the start of the next record;

xix. The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC00l.DAT);

xx. The volume names should be consecutive (i.e., ABC00l, ABC002, etc.)

| Table 1 | | |
|---|---|---|
| **FIELD NAME** | **FIELD DESCRIPTION** | **APPLICABLE FILE TYPE(S)** |
| BEGBATES | Beginning production number for a given file/document | All |

| | | |
|---|---|---|
| ENDBATES | Ending production number for a given file/document | All |
| ATTACHCOUNT | Number of attached files | E-doc |
| ATTACHNAME | The file name(s) of the attached items delimited with a semicolon | E-doc |
| PARENTBATES | Beginning bates number for the parent item of a family.[3] | E-doc |
| ATTACHBATES | Beginning bates number of each "child" attachment.[4] | E-doc |
| BEGATTACH | Beginning Bates number of the first Document in a Document family range. Documents that are part of Document families, i.e. containing parents or attachments should receive a value. | All |
| ENDATTACH | Ending Bates number of the last Document in attachment range a Document family range. Documents that are part of Document families, i.e. containing parents or attachments, should receive a value. | All |
| PAGECOUNT | Page count | All |
| CUSTODIAN | Person or other source from whom/which files were collected (last name, first name format) | All |
| ALLCUSTODIAN[5] | The names of the Custodian (listed above) and all other custodians, including BCCs, that the producing party agreed to produce and who had the file but where the file was eliminated through de-duplication | E-Doc |

---

[3] This field will be populated in each document/record that is an attachment, i.e., "child"; but the field would not be populated for documents/records that are not part of a family.
[4] This field can have more than one Bates number listed depending on the number of attachments. It should be populated in each document/record that represents a "parent" document.
[5] The parties have conferred and believe they will likely make rolling productions. As such, the Producing Party will ensure that the CUSTODIAN and ALLCUSTODIAN field are populated to

| | | |
|---|---|---|
| | (last name, first name format) | |
| FILEEXT | File extension | All |
| HASH | MD5 or SHA-1 hash value of the file generated at the Document family level | E-mail and E-Doc |
| SUBJECT | Subject | E-mail |
| FROM | Sender | E-mail |
| TO | Recipient(s) | E-mail |
| CC | Copyee(s) | E-mail |
| BCC | Blind Copyee(s) | E-mail |
| DATESENT | Date Sent & Time (MM/DD/YYYY HH:MM) | E-mail |
| DATERECEIVED | Date Received & Time (MM/DD/YYYY HH:MM) | E-mail |
| AUTHOR | Original Author | E-Doc |
| LAST AUTHOR | Last Person to Modify the Document | E-Doc |
| DATECREATED | Date & Time that a file was created (MM/DD/YYYY HH:MM) | E-Doc |
| DATELASTMOD | Date modified & Time (MM/DD/YYYY HH:MM) | E-Doc |
| TIMEZONE | Time zone used for displaying dates and times on the associated PDF image | E-Doc |
| FILENAME | Filename of the original source ESI as stored by the custodian | E-Doc |
| FILEPATH | Full path of the original source ESI as stored by the custodian | E-Doc |

---

reflect complete and accurate TO, FROM, CC and BCC information that reflects all custodians, including those for whom an email was not produced due to de-duplication.

| NATIVEPATH | Path to native file as produced if native files provided | Documents produced in Native format |
|---|---|---|
| TEXTPATH | Path to OCR or extracted text file | All |
| PRODVOLUME | Identifies the production in which the document was included | ALL |
| EXTRACTEDTEXT | File path to Extracted Text/OCR File | ALL |
| REDACTION | Identifies whether the file was redacted | All |
| CONFIDENTIAL | Identifies whether the file is designated confidential | E-doc |

    f. <u>Format for Hard-Copy (i.e., non-ESI) Productions and Static Images</u>. The following applies to documents that exist only in hard-copy format or in static image file format and are therefore unavailable in native electronically stored information ("ESI") format (e.g., documents scanned from hard copy, or documents maintained in static image format, like PDF). This format also applies to documents that may have been previously collected in other cases that pre-date this case and where the fielded data identified above for native file collections is unavailable.
        a. All such documents should be produced in the same format specified in the subparagraphs above, *except* that the only metadata fields provided will be BegBates, EndBates, BegAttach, EndAttach, Custodian and TextPath. OCR or extracted text will also be provided.
        b. Produce OCR text for any paper Document.
        c. Produce OCR text for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where extracted text cannot be provided, using industry standard OCR technology (Redacted text will not be produced).
        d. Production format: Single text file for each Document, not one text file per page
        e. File Naming Convention: Match BEGBATES Number

    g. <u>Missing or Incorrect Metadata</u>: If the receiving party discovers that some or all of the following metadata fields are missing or populated incorrectly, and the receiving party brings this to the attention of the producing party, the producing party will determine whether there is

  any missing or incorrectly populated metadata and, if so, the reason for the missing or incomplete metadata fields and will, where it is not unduly burdensome to do so, supplement its production with a load file that will populate missing metadata fields and/or overwrite or correct the incorrect metadata previously produced. Notwithstanding the foregoing, when it is not reasonably possible for a party to provide all of the metadata fields listed above for a particular document or document production, the producing party may omit those metadata fields. Likewise, when it is reasonably possible to provide some of the metadata fields listed above, but not other fields, for a particular document or document production, the producing party may choose to provide whichever metadata fields are reasonably possible to provide. However, the party must disclose to the receiving parties, on specific request and where not unduly burdensome to do so, what metadata fields were not populated because it was not reasonably possible for the producing party to provide it.

 h. <u>Documents from Structured Data/Databases</u>: The producing party will produce data exported from databases in a reasonably useable format, such as Excel, or in a pdf report format if reasonably useable or in another reasonably useable format. If data from databases or other structured data sources cannot be produced in a reasonably useable format, the parties will meet and confer to discuss the issue. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

6. **DEDUPLICATION AND THREADING**

The Parties must de-duplicate ESI across custodial and non-custodial data sources (i.e., global deduplication using MD5 or SHA-1 Hash value matching) and provide correct AllCustodian information showing all custodians who had the document, including, all BCC recipients whose names would have been included in the BCC metadata field prior to de-duplication.

7. **NONRESPONSIVE ATTACHMENTS**

The parties agree that the producing party will produce all attachments and the

cover email from document families that contain at least one responsive document. If a cover e-mail transmitting a responsive attachment or another document in the family is entirely withheld as privileged, the withheld document will be replaced with a slip sheet stating that "Document Withheld as Privileged."

8. **LIMITATIONS AND NON-WAIVER**

This protocol provides a general framework for the production of ESI. The parties and their attorneys do not intend by this protocol to waive their rights to assert the attorney-client privilege, work-product privilege, or any other privilege or protection.

9. **PRIVILEGE AND RELATED ISSUES**

The producing party will provide a privilege log within twenty-one (21) days from the date of production of documents or ESI or where the producing party has determined to withhold any document based on an assertion of privilege. For example, the log will be provided within twenty-one (21) days of the production of documents containing redactions for privilege. Or, if a document is entirely withheld as privileged, and the log entries for that document will be provided within twenty-one (21) days of the production of placeholder slip-sheet as set forth below.[6] However, the parties may alter the 21-day timeframe for the production of privilege log entries by agreement and without a motion to extend this timeframe. To the extent the Parties produce documents post-dating the filing of the Complaint (Dkt. 1), privileged documents that include the Parties and their

---

[6] If redacted documents or slip-sheets for documents entirely withheld as privileged are successfully challenged, the Receiving Party reserves the right to file a motion seeking to reopen the deposition, for the limited purpose of examining issues related the re-produced document, to question any of the individuals who were custodians of the document(s) after their re-production.

trial counsel need not be placed on a privilege log.

If a document that is responsive to a document request is entirely withheld as privileged, the document shall be replaced by a slip sheet in the production that states "Document Withheld as Privileged." The parties will meet and confer concerning when metadata shall be produced for documents entirely withheld as privileged. Generally speaking, the producing party may not withhold responsive documents on relevance grounds and may not redact responsive documents on relevance grounds, but the Parties may meet and confer to permit exceptions to this general approach.

10.     MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**SO ORDERED.**

Dated: March 2, 2022

_____
DAVID W. DUGAN
United States District Judge