## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| TOM HENSIEK JASON GILL, and LILLIAN WROBEL, ON BEHALF OF THEMSELVES INDIVIDUALLY, and ON BEHALF OF SIMILARLY SITUATED PARTICIPANTS AND BENEFICIARIES OF THE CASINO QUEEN EMPLOYEE STOCK OWNERSHIP PLAN, |  |
| Plaintiffs, |  |
| v. |  |
| BOARD OF DIRECTORS OF CQ HOLDING COMPANY, INC. (A/K/A CQH BOARD OF DIRECTORS), *et al.*, |  |
| Defendants. | Case No. 3:20-cv-0377-DWD |
| CHARLES BIDWILL and TIMOTHY RAND, |  |
| Defendants/Counterclaimants/ Cross-Claimants/Third-Party Claimants, |  |
| v. |  |
| TOM HENSIEK JASON GILL, and LILLIAN WROBEL, ON BEHALF OF THEMSELVES INDIVIDUALLY, and ON BEHALF OF SIMILARLY SITUATED PARTICIPANTS AND BENEFICIARIES OF THE CASINO QUEEN EMPLOYEE STOCK OWNERSHIP PLAN, |  |
| Plaintiffs/Counterclaim Defendants, |  |

BOARD OF DIRECTORS OF CQ
HOLDING COMPANY, INC. (A/K/A CQH
BOARD OF DIRECTORS),
THE ADMINISTRATIVE COMMITTEE OF
THE CASINO QUEEN EMPLOYEE
STOCK OWNERSHIP PLAN, JEFFREY
WATSON, And ROBERT BARROWS,

        Defendants/Cross-Claim
        Defendants,

JAMES G. KOMAN,

        Defendant/Cross-Claim
        Defendant,

CASINO QUEEN, INC., CQ HOLDING
COMPANY, INC., and GREATBANC
TRUST COMPANY,

        Third-Party Defendants,

and,

MICHAEL GAUGHAN and PHILIP
KENNY.

        Third-Party Defendants.

---

**DEFENDANTS CHARLES BIDWILL III'S AND TIMOTHY J. RAND'S
ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
TO PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND
COUNTERCLAIM/CROSS-CLAIMS/THIRD PARTY CLAIMS FOR
<u>DECLARATORY RELIEF AND DAMAGES</u>**

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs

Charles Bidwill III and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively,

"Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their 1)

Answer and Affirmative and Additional Defenses to the First Amended Class Action Complaint

("Amended Complaint"), 2) Counterclaims for declaratory relief directed to Plaintiffs Tom

Hensiek, Jason Gill, and Lillian Wrobel ("Plaintiffs"), individually and against any putative class (collectively referred to as "Plaintiffs"), 3) Cross-Claims for declaratory relief and/or damages against co-defendants Board of Directors of CQ Holding Company ("CQ Board"), the Administrative Committee of the Casino Queen Employees Stock Option Plan ("CQ ESOP"), Jeffrey Watson, and Robert Barrows, 4) Cross-Claim for declaratory relief and/or damages against James G. Koman 5) Third-Party claims for declaratory relief and/or damages against Casino Queen, Inc., CQ Holding Company, Inc., and GreatBanc Trust  Company; and 6) Third-Party claims for declaratory relief and/or damages against Michael Gaughan ("Gaughan") and Philip Kenny ("Kenny"), state as follows:

## DEFENDANTS'/THIRD-PARTY CLAIMANTS' ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT

### I.    INTRODUCTION[1]

1.      Defendants/Third-Party Claimants admit that Plaintiffs purport to bring this case as a putative class action under ERISA.  Defendants/Third-Party Claimants deny that Plaintiffs are entitled to the relief requested or that this case can or that this case should proceed as a class action; rather, it should be dismissed for lack of subject matter jurisdiction because it is barred the ERISA's six-year statute repose.  To the extent any remaining allegations in Paragraph 1 could be construed as to require a further response, Defendants/Third-Party Claimants deny all remaining allegations in Paragraph 1.

2.      Defendants/Third-Party Claimants admit the Casino Queen Employee Stock Ownership Plan ("ESOP") is an ERISA-protected retirement plan.  Defendants further admit that

---

[1]  Defendants/Third-Party Claimants restate the headings from Plaintiffs' Amended Complaint for clarity only.  Defendants/Third-Party Claimants deny any allegations that could be inferred from the headings in Plaintiffs' Amended Complaint.

Casino Queen, Inc. ("CQI") is an Illinois corporation owned by CQ Holding Company, Inc. ("CQH").  Defendants further admit that CQI was founded by Bidwill, Rand, Koman, Patrick Kenny, and Michael Gaughan and that others became shareholders of CQI.  Defendants/Third-Party Claimants further admit that these five individuals had shareholder ownership interests along with others. Defendants/Third-Party Claimants each had a seat on the CQI Board of Directors, along with others.  Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2 and, therefore, Defendants/Third-Party Claimants deny all remaining allegations in Paragraph 2.

3.      Defendants/Third-Party Claimants deny each and every allegation in Paragraph 3.

4.      The allegations in Paragraph 4 are legal conclusions to which no response is required.  To the extent any remaining allegations could be construed as to require a further response, Defendants/Third-Party Claimants deny said allegations.  Responding further, ERISA § 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), and ERISA § 406(a) and (b), 29 U.S.C. § 1106(a) and (b) speak for themselves, are the best evidence of their contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 4 that are inconsistent therewith.

5.      Defendants/Third-Party Claimants admit CQI opened the Casino Queen Hotel & Casino, a riverboat gambling house, in  East St. Louis, Illinois ,which moved on land in 2007. Defendants/Third-Party Claimants admit that various proposals to buy their respective shareholder interests in CQI were submitted and considered to varying degrees by Defendants/Third-Party Claimants and other CQI shareholders. Defendants/Third-Party Claimants deny all remaining allegations in Paragraph 5.

6.      Defendants/Third-Party Claimants admit that the ESOP was established and that the ESOP ultimately purchased CQH shares of stock from CQH after CQH exchanged and redeemed CQI shares.   Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 6.[2]

7.      Defendants admit only that James Koman, Bidwill, and Rand became CQH "Note Holder Directors," with very limited authority, and that Jeffrey Watson and Robert Barrows became the Co-Trustees of the ESOP after it was formed.  Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 7.

8.      The allegations in Paragraph 8 are legal conclusions to which no response is required.  To the extent any remaining allegations could be construed as to require a further response, Defendants/Third-Party Claimants deny said allegations.  Responding further, the Plan Document speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 8 that are inconsistent therewith.

9.      The allegations in Paragraph 9 include legal conclusions to which no response is required.  To the extent a response is required, Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 9.

10.      Defendants/Third-Party Claimants deny each and every allegation in Paragraph 10.

11.      The allegations in Paragraph 11 include legal conclusions to which no response is required.  Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 11.

---

[2] Defendants/Third-Party Claimants deny any allegations that could be inferred from Footnote 1 in Plaintiffs' Amended Complaint.

12.     Defendants/Third-Party Claimants admit that Jeffrey Watson and Robert Barrows had stock appreciation rights.  Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 12.

13.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13, and, therefore, deny the same.

14.     The allegations in Paragraph 14 are legal conclusions to which no response is required.  To the extent any allegations in Paragraph 14 could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.

15.     Defendants/Third-Party Claimants admit only that Casino Queen sold certain property in 2013.  Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 15.

16.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 16.

17.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 17.

18.     Defendants/Third-Party Claimants admit that ESOP participants were given ESOP account statements.  Further, the governmental filings speak for themselves, are the best evidence of their contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 18 that are inconsistent therewith.   Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18 concerning what ESOP participants were told by individuals other than Defendants/Third-Party Claimants, who made no such statements, and, therefore, deny the same.  Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 18.

19.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19 concerning what Plaintiffs

learned, from whom they learned it, and when they learned it, and, therefore, deny the same. Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 19.

20.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 20.

21.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 21.

22.     Defendants/Third-Party Claimants admit that Plaintiffs purport to bring this lawsuit on behalf of themselves and other ESOP participants under ERISA.  Defendants/Third-Party Claimants deny that Plaintiffs are entitled to the relief requested or that this case can or should proceed as a class action rather, it should be dismissed for lack of subject matter jurisdiction because it is barred the ERISA's six-year statute repose.  To the extent any remaining allegations in Paragraph 22 could be construed as to require a further response, Defendants/Third-Party Claimants deny all remaining allegations in Paragraph 22.

## II.     JURISDICTION AND VENUE

23.     The allegations contained in Paragraph 23 are legal conclusions to which no response is required.  To the extent the allegations in Paragraph 23 could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.

24.     The allegations contained in Paragraph 24 are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 24 could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.

25.     Defendants/Third-Party Claimants admit only that the Casino Queen is located in East St. Louis, Illinois.  Responding further, the allegations in Paragraph 25 include legal conclusions to which no response is required.  Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 25, and, therefore, deny the same.

## III.   **PARTIES**

**A.    Plaintiffs**

**(1)    Tom Hensiek**

26.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26, and, therefore, deny the same.

27.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27, and, therefore, deny the same.

28.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28, and, therefore, deny the same.

29.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29, and, therefore, deny the same.

30.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30, and, therefore, deny the same.

31.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31, and, therefore, deny the same.

**(2)    Jason Gill**

32.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32, and, therefore, deny the same.

33.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33, and, therefore, deny the same.

34.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34, and, therefore, deny the same.

35.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35, and, therefore, deny the same.

**(3)     Lillian Wrobel**

36.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36, and, therefore, deny the same.

37.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37, and, therefore, deny the same.

38.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38, and, therefore, deny the same.

39.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39, and, therefore, deny the same.

**B.     Defendants**

**(1)     The CQH Board Defendants**

40.     Defendants/Third-Party Claimants admit only that CQH was created in 2012. Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 40.

41.     Defendants/Third-Party Claimants admit that James Koman, Bidwill, Defendant Rand, Jeffrey Watson, and Robert Barrows were members of the Casino Queen Board of Directors during 2012 and prior to 2012 and that Bidwill and Rand were designated as "Note Holder Directors" on the CQH Board with limited authority for a limited period after 2012. Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 40.

42.     Defendants/Third-Party Claimants admit that Plaintiffs have alleged that the CQH Board of Directors, and the individual members thereof, are collectively referred to as the "CQH Board of Defendants" but deny that the generic reference to "CQH Board of Defendants"

accurately describes either Bidwill's or Rand's role in CQ Holding Company or the duration of their limited "Note Holder Director" role or involvement in CQ Holding Company.

43.     The allegations in Paragraph 43 are legal conclusions to which no response is required.  To the extent any allegations could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.

44.     Defendants/Third-Party Claimants deny that any Board Bidwill and Rand served on had "sole authority" to take any action relative to the ESOP.  Responding further, the allegations in Paragraph 44 include legal conclusions to which no response is required.  To the extent a response is required, Defendants/Third-Party Claimants deny each and every remaining allegation contained in Paragraph 44.

45.     Defendants/Third-Party Claimants admit Jeffrey Watson and Robert Barrows were appointed Co-Trustees of the ESOP by CQH and both accepted that appointment in writing. Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 45, and, therefore, deny the same.

46.     The Plan Document speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 46 that are inconsistent therewith.  Responding further, the allegations in Paragraph 46 include legal conclusions to which no response is required.  To the extent a response is required, Defendants/Third-Party Claimants deny each and every allegation contained in Paragraph 46.

47.     The Plan Document speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny each and every allegation in Paragraph 47.

48.     The Plan Document speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny each and every allegation in Paragraph 48 that is

inconsistent therewith.    Responding further, the allegations in Paragraph 48 include legal conclusions to which no response is required.  To the extent any allegations in Paragraph 48 could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.

49.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 49.

50.    Defendants/Third-Party Claimants admit that Watson and Barrows served as CQH Board members, and that Bidwill and Rand served as "Note Holder" directors with very limited authority.    Defendants/Third-Party Claimants deny each and every remaining allegation in of Paragraph 50.

### (a)    Charles Bidwill, III

51.    Defendants/Third-Party Claimants admit that Bidwill has invested in sports and gambling entities, and was one of the founders of CQI.  Defendants admit that Bidwill has served as President of CQI during some period of time, and, for a limited period of time, a "Note Holding" member of the CQH Board with very limited authority.  Defendants deny each and every remaining allegation in Paragraph 51.

### (b)    Timothy J. Rand

52.    Defendants/Third-Party Claimants admit that Rand is an entrepreneur and business owner, and was one of the founders of CQI.  Defendants/Third-Party Claimants admit Rand was a member of the CQI Board during some period of time, and, for a limited period of time, a "Note Holder" member of the CQH Board with very limited authority.    Defendants/Third-Party Claimants deny each and every remaining allegation in Paragraph 52.

### (c)    James G. Koman

53.    Defendants/Third-Party Claimants admit James G. Koman was a member of the CQI Board for a period of time and was a president of CQI for a period of time.  Defendants/Third-Party Claimants admit that his father was one of the founding members of CQI.  Defendants/Third-

Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53 concerning Mr. Koman's current employment, and, therefore, deny the same. Defendants/Third-Party Claimants deny each and every remaining allegation in Paragraph 53.

>    **(d)   Jeffrey Watson**

54.     Defendants/Third-Party Claimants admit Jeffrey Watson was a member of the CQI Board and at some point served as General Manager and General Counsel. Defendants/Third-Party Claimants admit that Watson served on the CQH Board and at some point may have served as President of CQH. Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 54, and, therefore, deny the same.

55.     Defendants/Third-Party Claimants admit Robert Barrows and Jeffrey Watson served as Co-Trustees of the ESOP and served as directed trustees as it related to the sale of stock to the ESOP, which directions came solely from Independent Trustee GreatBanc Trust. Responding further, the remaining allegations in Paragraph 55 are legal conclusions to which no response is required. To the extent any of the remaining allegations could be construed as to require a further response, Defendants deny the same. Responding further, the Plan Document speaks for itself, is the best evidence of its contents, and Defendants deny any allegations in Paragraph 55 that are inconsistent therewith.

56.     Defendants/Third-Party Claimants admit that it was their understanding that Jeffrey Watson had stock appreciation rights. Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 56, and, therefore, deny the same.

(e)    **Robert Barrows**

57.    Defendants/Third-Party Claimants admit Robert Barrows was a member of the CQH Board for a period of time and that at some point served in various capacities. Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 57, and, therefore, deny the same.

58.    Defendants/Third-Party Claimants admit Robert Barrows and Jeffrey Watson served as Co-Trustees of the ESOP and served as directed trustees as it related to the sale of stock to the ESOP, which directions came solely from Independent Trustee GreatBanc Trust. Responding further, the remaining allegations in Paragraph 58 are legal conclusions to which no response is required.  To the extent any of the remaining allegations could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.  Responding further, the Plan Document speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 58 that are inconsistent therewith.

59.    Defendants/Third-Party Claimants admit that it was their understanding that Robert Barrows had stock appreciation rights.  Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 59, and, therefore, deny the same.

(2)    **The Co-Trustees**

60.    Defendants/Third-Party Claimants admit that the Co-Trustees of the ESOP were Jeffrey Watson and Robert Barrows.

61.    Defendants/Third-Party Claimants admit Robert Barrows and Jeffrey Watson served as Co-Trustees of the ESOP and served as directed trustees as it related to the sale of stock to the ESOP, which directions came solely from Independent Trustee GreatBanc Trust.  The remaining allegations in Paragraph 61 are legal conclusions to which no response is required.  To

the extent the remaining allegations could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.

62.     The allegations in Paragraph 62 are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 62 could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.

63.     The allegations in Paragraph 63 are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 63 could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.

**(3)     The Party-in-Interest Defendants**

64.     Defendants/Third-Party Claimants admit that the following parties at some point in time held shares of CQI: (1) members of the Kenny family; (2) members of the Koman family; (3) Michael Gaughan and Frank Toti; (4) Bidwill and members of his family; and (5) Rand. Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 64.

65.     The allegations in Paragraph 65 include legal conclusions, to which no response is required.  Defendants/Third-Party Claimants admit that Rand held a 20% ownership interest in CQI.  Defendant Bidwill admits he held an 8% ownership interest in CQI.  Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 65, and, therefore, deny the same.[3]

66.     The allegations in Paragraph 66 include legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants admit that individuals related to

---

[3] Defendants/Third-Party Claimants deny any allegations that could be inferred from Footnote 3 in Plaintiffs' Amended Complaint.

him sold shares of CQI.  Defendants/Third-Party Claimants deny each and every remaining allegation in Paragraph 66.

    **(4)**    **Administrative Committee**

67.    The allegations in Paragraph 67 include legal conclusions to which no response is required.  To the extent any allegations could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.  Responding further, the Plan Document speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 67 that are inconsistent therewith.

68.    The allegations in Paragraph 68 include legal conclusions to which no response is required.  To the extent any remaining allegations could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.  Responding further, the Plan Document speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 68 that are inconsistent therewith.

69.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 69.

## IV.   FACTS

**A.**    **Casino Queen**

70.    Defendants/Third-Party Claimants admit that CQI is formerly known as Arch Paddle Boat Company and that CQI opened the Casino Queen Hotel and Casino in 1993. Defendants/Third-Party Claimants admit that CQI has been a private corporation and its stock has not traded on any public market or exchange.  Defendants/Third-Party Claimants deny each and every remaining allegation in Paragraph 70.

71.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 71, and, therefore, deny the same.

72.     Defendants/Third-Party Claimants admit that Casino Queen was the first casino in East St. Louis and that other casinos opened in Illinois and Missouri.  Defendants/Third-Party Claimants deny all remaining allegations in Paragraph 72.

73.     Defendants/Third-Party Claimants admit that the following parties at some point in time owned shares of CQI: (1) members of the Kenny family; (2) members of the Koman family; (3) Michael Gaughan and Frank Toti; (4) Bidwill and some of his family members, and (5) Rand. Rand and Bidwill further admit that they were CQI Board Members for a period of time. Defendants/Third-Party Claimants are without knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 73, and, therefore, deny the same.

74.     Defendants/Third-Party Claimants admit that at some point in time, CQI shareholders received and entertained various proposals to sell their respective interests in CQI to third-party investors who expressed an interest.  Defendants/Third-Party Claimants deny each and every remaining allegation in Paragraph 74.

75.     Defendants admit that CQI and its shareholders had a tentative agreement to sell CQI shared to Columbia Sussex in 2006 for $200,000,000, which sale was not consummated. Defendants/Third-Party Claimants deny all remaining allegations in Paragraph 75.

76.     Defendants/Third-Party Claimants admit that at various points in time, CQI shareholders received various proposals and expressions of interest to sell their respective CQI shares to third-party investors, which proposals, for various reasons, did not result in a sale of shares. Defendants/Third-Party Claimants deny all remaining allegations in Paragraph 76.

77.     Defendants/Third-Party Claimants admit only that the ESOP was established in 2012.  Defendants/Third-Party Claimants deny each and every remaining allegation in Paragraph 77.

78.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78, and, therefore, deny the same.

79.     Defendants/Third-Party Claimants admit that CQH was established in 2012, that Rand and Bidwill exchanged and had redeemed their CQI shares and CQH shares, and that ultimately, other CQI shareholders exchanged their CQI shares for CQH shares, which shares were then redeemed by CQH shortly thereafter.  Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 79.

80.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80, and, therefore, deny the same.

81.     Defendants/Third-Party Claimants admit only that the ESOP was established in 2012.  Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 81 concerning the amounts the ESOP borrowed, and, therefore, deny the same.  Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 81.

82.     Defendants/Third-Party Claimants admit only that a stock appreciation rights plan was established around 2012 by individuals other than Defendants/Third-Party Claimants.  Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations concerning when Jeffrey Watson's and Robert Barrow's stock appreciation rights were fully vested, and, therefore, deny the same.  Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 82.

83.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83, and, therefore, deny the same.

17

84.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84, and, therefore, deny the same.

**B.     The Casino Queen ESOP**

85.     The allegations in Paragraph 85 are legal conclusions to which no response is required.  To the extent any allegations in Paragraph 85 could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.

86.     Defendants/Third-Party Claimants admit the original Casino Queen ESOP covered certain eligible employees of Casino Queen Hotel & Casino in East St. Louis, Illinois, and long after Bidwill and Rand sold their shareholder interest, covered Casino Queen employees in Marquette in Iowa.  Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 86, and, therefore, Defendants/Third-Party Claimants deny the same.

87.     The allegations in Paragraph 87 are legal conclusions to which no response is required.  To the extent any allegations in Paragraph 87 could be construed as to require a response, Defendants/Third-Party Claimants deny the same.

88.     The allegations in Paragraph 88 are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 88 could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.  Responding further, ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2) speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 88 that are inconsistent therewith.

89.     The Plan Document speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 89 that are inconsistent therewith.  Responding further, the allegations in Paragraph 89 include legal conclusions to which

no response is required.  Responding further, ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(1) speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 89 that are inconsistent therewith.

90.     The allegations in Paragraph 90 are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 90 could be construed as to require a further response, Defendants/Third-Party Claimants deny the same.

**C.     The 2012 Transaction**

91.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 91.

92.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 92.

93.     Defendants/Third-Party Claimants admit only that Jeffrey Watson and Robert Barrows were Co-Trustees of the ESOP.  Defendants deny the remaining allegations in Paragraph 93.

94.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 94.

95.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 95. Responding further, the allegations in Paragraph 95 include legal conclusions to which no response is required.

96.     The Plan Document speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny each and every allegation in Paragraph 96.

97.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 97. Responding further, the allegations in Paragraph 97 include legal conclusions to which no response is required.

98.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 98.

99.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 99.

100.    Defendants/Third-Party Claimants admit that Jeffrey Watson and Robert Barrows held various roles at Casino Queen for a period of time.

101.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101, and, therefore, deny the same.

102.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102, and, therefore, deny the same.

103.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103, and, therefore, deny the same.

104.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104, and, therefore, deny the same.

105.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105, and, therefore, deny the same.

106.    Defendants/Third-Party Claimants admit only that CQI sold certain real property in 2013 and that CQI also acquired the Casino Queen Marquette after Defendants/Third-Party Claimants were no longer involved with CQI or CQH.  Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 106, and, therefore, deny the same.

107.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107 concerning what the company publicly reported, and, therefore, deny the same.  Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 107.

108.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 108.

20

109.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 109.

110.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 109.

111.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 111.

112.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 112.[4]

113.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 113.

114.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 114.

115.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115 concerning what the governmental filings stated, and, therefore, deny the same.  Responding further, the governmental filings speak for themselves, are the best evidence of their contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 115 that are inconsistent therewith.  Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 115.

116.     Defendants/Third-Party Claimants admit that CQI was a guarantor of certain debt obligations.  Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 116.

---

[4] Defendants/Third-Party Claimants deny any allegations that could be inferred from Footnote 4 in Plaintiffs' Amended Complaint.

117.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 117.

118.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 118.

119.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 119.

120.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 120.

121.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 121.

122.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 122.

123.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 123.

124.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 124.

**D.     Following the 2012 Transaction, the CQH Board Members and Co-Trustees Violated ERISA by Approving a Deal that was Imprudent and Disloyal.**

125.     The Plan Document speaks for itself, is the best evidence of its contents, and, therefore, Defendants/Third-Party Claimants deny the allegations in Paragraph 125.

126.     Defendants/Third-Party Claimants admit the Co-Trustees were members of the CQH Board.  Defendants/Third-Party Claimants deny all remaining allegations in Paragraph 126.

127.    Defendants/Third-Party Claimants admit that in 2013, CQI sold property to GLP Capital, L.P., under certain terms as spelled out in the closing documents for this transaction. Defendants/Third-Party Claimants deny all remaining allegations in Paragraph 127.

128.    Defendants/Third-Party Claimants admit that in 2013, CQI sold real property to GLP Capital, L.P., under certain terms as spelled out in the closing documents for this transaction. Defendants/Third-Party Claimants deny each and every remaining allegation in Paragraph 128.[5]

129.    Defendants/Third-Party Claimants admit that in 2013, CQI sold property to GLP Capital, L.P., under certain terms as spelled out in the closing documents for this transaction. Defendants/Third-Party Claimants deny each and every remaining allegation in Paragraph 129.

130.    Defendants/Third-Party Claimants admit that CQI agreed to lease the sold property from GLP Midwest Properties I, LLC, under certain terms as spelled out in the lease agreement. Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 130, and, therefore, deny the same.

131.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 131, and, therefore, deny the same.

132.    The lease agreement speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 132 that are inconsistent therewith.

133.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 133, and, therefore, deny the same.

---

[5] Defendants/Third-Party Claimants deny any allegations that could be inferred from Footnote 5 of Plaintiffs' Amended Complaint.

23

134.    Defendants/Third-Party Claimants admit GLP Financing I, LLC, agreed to provide Casino Queen Inc. with a multimillion term loan.  Defendants/Third-Party Claimants deny the remaining allegations in Paragraph 134.

135.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 135.

136.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 136, and, therefore, deny the same.

137.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 137.

138.    The Plan Document speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny the allegations in Paragraph 138.

139.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 139.

140.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 140.

141.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 141.

142.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 142.

143.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 143 concerning when the stock appreciation rights fully vested, and, therefore, deny the same.  Defendants/Third-Party Claimants deny each and every remaining allegation in Paragraph 143.

144.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 144.

145.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 145.

146.     Defendants/Third-Party Claimants admit that they ceased being "Note Holder" Board Members of CQH effective in January, 2014.  Defendants/Third-Party Claimants deny all remaining allegations in Paragraph 146.

**E.**     **ESOP Fiduciaries Concealed the Violations of ERISA by Inaccurately Reporting the Price the ESOP Paid for the Company and Misrepresenting the Stock Value as Increasing from 2012-2019.**

147.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 147.

**(1)     Statements to Employee Participants During Mandatory Employee Meetings About the ESOP**

148.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 148, and, therefore, deny the same.

149.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 149, and, therefore, deny the same.

150.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 150, and, therefore, deny the same.

151.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 151.

**(2)     Annual Form 5500s Filed with the Department of Labor**

152.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 152.

25

153.    Defendants/Third-Party Claimants admit that CQH as the sponsor of the ESOP, was required to file certain financial reports disclosing information regarding the ESOP's financial condition, including its assets, liabilities, and income on an annual basis.  Defendants/Third-Party Claimants deny all remaining allegations in Paragraph 153.

154.    Defendants/Third-Party Claimants admit that Form 5500s were filed. Responding further, the Form 5500s speak for themselves, are the best evidence of their contents, and Defendants/Third-Party Claimants deny each and every remaining allegation in Paragraph 154.

155.    The Form 5500s speak for themselves, are the best evidence of their contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 155 that are inconsistent therewith.

156.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 156.

157.    The ESOP's 2012 Form 5500 speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 157 that are inconsistent therewith.

158.    The Form 5500s speak for themselves, are the best evidence of their contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 158 that are inconsistent therewith.

159.    The 2017 Form 5500 speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 159.

160.    The 2018 Form 5500 speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 160.

161.    The Form D speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 161 that are inconsistent therewith.

162.    The ESOP's governmental filings speak for themselves, are the best evidence of their contents, and Defendants/Third-Party Claimants deny any allegations in Paragraph 162.

163.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 163, and, therefore, deny the same.

164.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 164, and, therefore, deny the same.

165.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 165, and, therefore, deny the same.

166.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 166.

167.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 167.

168.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 168.

169.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 169.  Responding further, the DOL filing dated October 15, 2019 speaks for itself and is the best evidence of its contents.

170.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 170.  Responding further, the 2018 Form 5500 speaks for itself and is the best evidence of its contents.

### (3)    Annual Participant Statements

171.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 171.

172.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 172.

173.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 173.

174.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 174, and, therefore, deny the same.

175.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 175, and, therefore, deny the same.

176.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 176, and, therefore, deny the same.

177.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 177, and, therefore, deny the same.

178.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 178, and, therefore, deny the same.

179.    Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 179, and, therefore, deny the same.

180.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 180.

181.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 181.

182.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 182, and, therefore, deny the same.

183.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 183, and, therefore, deny the same.

184.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 184.  Responding further, the allegations in Paragraph 184 include legal conclusions to which no response is required.

185.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 185.

186.     The allegations in Paragraph 186 are legal conclusions, to which no response is required.  To the extent any remaining allegations in Paragraph 186 could be construed as to require a response, Defendants/Third-Party Claimants deny the same.

## V.     CLASS ALLEGATIONS

187.     Defendants/Third-Party Claimants admit that Plaintiffs purport to bring these alleged claims as a class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure, and purport to bring these claims on behalf of the alleged class identified in Paragraph 171.  To the extent any remaining allegations in Paragraph 171 could be construed as to require a response, Defendants/Third-Party Claimants deny the same.[6]

188.     The allegations in Paragraph 188 are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 188 could be construed as to require a response, Defendants/Third-Party Claimants deny the same.

---

[6] Defendants/Third-Party Claimants deny any allegation that could be inferred from Footnote 6 in Plaintiffs' Amended Complaint.

189.    The allegations in Paragraph 189, including each subpart thereof, are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 189 could be construed as to require a response, Defendants/Third-Party Claimants deny the same.

190.    The allegations in Paragraph 190, including each subpart thereof, are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 190 could be construed as to require a response, Defendants/Third-Party Claimants deny the same.

191.    The allegations in Paragraph 191 are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 191 could be construed as to require a response, Defendants/Third-Party Claimants deny the same.

192.    The allegations in Paragraph 192 are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 192 could be construed as to require a response, Defendants/Third-Party Claimants deny the same.

193.    The allegations in Paragraph 193 are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 193 could be construed as to require a response, Defendants/Third-Party Claimants deny the same.

194.    The allegations in Paragraph 194 are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 194 could be construed as to require a response, Defendants deny the same.

195.    The allegations in Paragraph 195 are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 195 could be construed as to require a response, Defendants/Third-Party Claimants deny the same.

196.     The allegations in Paragraph 196 are legal conclusions to which no response is required.  To the extent any remaining allegations in Paragraph 196 could be construed as to require a response, Defendants/Third-Party Claimants deny the same.

197.     Defendants/Third-Party Claimants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 197, and, therefore, deny the same.

## VI.     CAUSES OF ACTION

### Count I
### Prohibited Transactions in Violation of ERISA § 406(a), 29 U.S.C. § 1106(a)
### (Against all Defendants in Connection With the 2012 Transaction)

198.     Defendants/Third-Party Claimants restate and incorporate by reference their foregoing responses as if set forth fully herein.

199.     ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny all allegations in Paragraph 199.

200.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B) speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny all allegations in Paragraph 200.

201.     ERISA § 3(14), 29 U.S.C. § 1002(14) speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny all allegations in Paragraph 201.

202.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 202.

203.     The allegations in Paragraph 203 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 203.

204.     The allegations in Paragraph 204 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 204.

205.     The allegations in Paragraph 205 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 205.

206.     The allegations in Paragraph 206 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 206.

207.     The allegations in Paragraph 207 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 207.

208.     The allegations in Paragraph 208 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 208.

209.     The allegations in Paragraph 209 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 209.

210.     The allegations in Paragraph 210 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 210.

211.    The allegations in Paragraph 211 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 211.

212.    The allegations in Paragraph 212 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 212.

**Count II**
**Self-Dealing in Violation of ERISA § 406(b), 29 U.S.C. § 1106(b)**
**(Against James G. Koman, Charles Bidwill III and Timothy Rand in Connection with the 2012 Transaction)**

213.    Defendants/Third-Party Claimants restate and incorporate by reference their foregoing responses as if set forth fully herein.

214.    The allegations in Paragraph 214 are legal conclusions to which no response is required.  Responding further, Defendants /Third-Party Claimants deny each and every allegation in Paragraph 214.

215.    ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1) speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny all allegations in Paragraph 215.

216.    The allegations in Paragraph 216 include legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 216.

217.    The allegations in Paragraph 217 include legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 217.

218.    The allegations in Paragraph 218 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 218.

### Count III
### Breach of Fiduciary Duties Under ERISA § 404(a)(1)(A) and (B),
### 29 U.S.C. § 1104(a)(1)(A) and (B)
### (Against the Fiduciary Defendants in Connection With the 2012 Transaction)

219.    Defendants/Third-Party Claimants restate and incorporate by reference their foregoing responses as if set forth fully herein.

220.    The allegations in Paragraph 220 include legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 220.

221.    The allegations in Paragraph 221 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 221.

222.    The allegations in Paragraph 222 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 222.

223.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1002(18) and ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) speak for themselves, are the best evidence of their contents, and Defendants/Third-Party Claimants deny each and every allegation in Paragraph 223.

224.    The allegations in Paragraph 224 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 224.

225.    The allegations in Paragraph 225 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 225.

226.    The allegations in Paragraph 226 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 226.

227.    The allegations in Paragraph 227 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 227.

228.    The allegations in Paragraph 228 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 228.

229.    The allegations in Paragraph 229 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 229.

230.    The allegations in Paragraph 230 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 230.

**Count IV**
**Breach of Fiduciary Duties and Prohibited Transactions**
**Under ERISA § 404(a)(1) and 406(a)(1)(A), 29 U.S.C. § 1104(a)(1) and 1106(a)**
**(Against the CQH Board Defendants and Co-Trustees Watson and Barrows in Connection with Events after the 2012 Transaction Including the Asset Sale)**

231.    Defendants/Third-Party Claimants restate and incorporate by reference their foregoing responses as if set forth fully herein.

35

232.    The allegations in Paragraph 232 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 232.

233.    The allegations in Paragraph 233 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 233.

234.    The allegations in Paragraph 234 include legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 234.

235.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 235.

236.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 236.

237.    The allegations in Paragraph 237 include legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 237.

238.    The allegations in Paragraph 238 include legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 238.

239.    The allegations in Paragraph 239 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 239.

**Count V**
**Failure to Monitor Appointed Fiduciaries**
**Under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B)**
**(Against CQH Board Defendants in Connection With the 2012 Transaction & Asset Sale)**

240.    Defendants/Third-Party Claimants restate and incorporate by reference their foregoing responses as if set forth fully herein.

241.    The allegations in Paragraph 241 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 241.

242.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 242.

243.    The allegations in Paragraph 243 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 243.

244.    Defendants/Third-Party Claimants deny each and every allegation in Paragraph 244.

245.    The allegations in Paragraph 245 are legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 245.

**Alternatively, Count VI**
**Co-Fiduciary Liability Under ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1)**
**(Against CQH Board Defendants for 2012 Transaction & Asset Sale)**

246.    Defendants/Third-Party Claimants restate and incorporate by reference their foregoing responses as if set forth fully herein.

247.     ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1) speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny each and every allegation in Paragraph 247.

248.     ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2) speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny each and every allegation in Paragraph 248.

249.     ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3) speaks for itself, is the best evidence of its contents, and Defendants/Third-Party Claimants deny each and every allegation in Paragraph 249.

250.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 250.

251.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 251.

252.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 252.

253.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 253.

254.     The allegations in Paragraph 254 include legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 254.

255.     The allegations in Paragraph 255 include legal conclusions to which no response is required.  Responding further, Defendants/Third-Party Claimants deny each and every allegation in Paragraph 255.

256.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 256.

257.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 257.

258.     Defendants/Third-Party Claimants deny each and every allegation in Paragraph 258.

## VII.   PRAYER FOR RELIEF

Defendants/Third-Party Claimants deny that Plaintiffs are entitled to any of the relief requested in the Prayer for Relief Section and each subpart thereof following Paragraph 258. Responding further, Defendants/Third-Party Claimants deny that Plaintiffs are entitled to have any class certified in this case or that Plaintiffs are entitled to any relief whatsoever, particularly as it relates to Defendants.  Responding further, Defendants/Third-Party Claimants deny each alleged violation of law and deny each and every allegation that is not specifically answered otherwise.

## STATEMENT OF AFFIRMATIVE AND ADDITIONAL DEFENSES

While continuing to deny the material allegations of the Amended Complaint, Defendants/Third-Party Claimants assert the following affirmative and additional defenses and, without assuming the burden of proof with regard to these defenses where such burden properly belongs to Plaintiffs, state as follows:

## RESERVATION

Defendants reserve the right to assert additional affirmative and other defenses that become known during the course of discovery.

## FIRST DEFENSE

As to Bidwill and Rand, this case should be dismissed pursuant to Rule 12(b)(1) because the applicable statutes of response have been triggered which have extinguished any ERISA causes

of action against Bidwill and Rand and/or Plaintiffs and any putative class members lack standing, as a result, the Court lacks subject matter jurisdiction over such claims.

## SECOND DEFENSE

Plaintiffs' Claims against Defendants/Third-Party Claimants fail in whole or in part for failure to state a claim pursuant to Rule 12(b)(6).

## THIRD DEFENSE

Plaintiffs' claims against Defendants/Third-Party Claimants are barred by contributory negligence, contribution, and/or potential breaches by other parties or non-parties for which Defendants/Third-Party Claimants are not responsible.

## FOURTH DEFENSE

Plaintiffs' claims against Defendants/Third-Party Claimants are barred because the Court lacks subject matter jurisdiction over the claims given the binding and valid arbitration provisions and class action waiver provisions in the Plan Document.

## FIFTH DEFENSE

Plaintiffs' claim are barred as to Defendants/Third-Party Claimants because neither of them qualify as "fiduciaries" within the meaning of ERISA, and the fact that actual fiduciaries were created, who were totally independent of Bidwill and Rand and whose obligations were to make sure the transactions at issue were fully compliant with ERISA, preclude any recovery against Bidwill and Rand.

## SIXTH DEFENSE

The Complaint is barred because the ESOP suffered no losses attributable to either of the disputed transactions, as required by ERISA § 409, 29 U.S.C. § 1109, or otherwise, particularly as it relates to the conduct of Bidwill and Rand.

## SEVENTH DEFENSE

Plaintiffs' claims against Defendants are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or laches, including, but not limited to, Plaintiffs' and putative class members' failure to exercise due diligence as it relates to the transactions at issue and failure to timely pursue claims against Defendants.

## EIGHTH DEFENSE

Plaintiffs' claims under ERISA § 406(a), 29 U.S.C. § 1106(a) (Count I) fail because Defendants/Third-Party Claimants did not engage in a prohibited transaction.

## NINTH DEFENSE

Plaintiffs' claims under ERISA § 406(b), 29 U.S.C. § 1106(b) (Count II) fail because Defendants/Third-Party Claimants did not engage in a prohibited transaction.

## TENTH DEFENSE

Plaintiffs' claims under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B) (Count III) fail because Defendants/Third-Party Claimants, to the extent they are deemed to qualify as ERISA fiduciaries, fulfilled their duties of loyalty and prudence by undertaking steps, including, but not limited to, not interfering with the fiduciaries' exercise of their independent fiduciary obligations to make sure the ESOP and its participants paid no more than fair market value for the shares of CQH stock.

## ELEVENTH DEFENSE

Plaintiffs' claims under ERISA §§ 404(a)(1) and 406(a)(1)(A), 29 U.S.C. §§ 1104(a)(1) and 1106(a) (Count IV) fail because Defendants/Third-Party Claimants, to the extent they could be deemed ERISA fiduciaries, and CQH, appropriately monitored and/or relied upon information provided by any and all appointed ESOP fiduciaries at the levels required by ERISA and, therefore, did not breach any duty owed to the ESOP.

## TWELFTH DEFENSE

Plaintiffs' claims under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B) (Count V) fail because Defendants/Third-Party Claimants, to the extent they could be deemed ERISA fiduciaries, and CQH appropriately monitored and/or relied upon information provided by any and all appointed ESOP fiduciaries at the levels required by ERISA and, therefore, did not breach any duty owed to the ESOP.

## THIRTEENTH DEFENSE

Plaintiffs' claims under ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1) (Count VI) fail because Defendants/Third-Party Claimants did not participate knowingly in, or knowingly undertake to conceal, any act or omission of any other ESOP fiduciary, nor did it conceal any information regarding either of the disputed transactions.

## FOURTEENTH DEFENSE

Plaintiffs' claims under ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1) (Count VI) fail because Defendants/Third-Party Claimants did not have knowledge of any breach by any other ESOP fiduciary, and, to their knowledge, the valuations provided by the independent fiduciary and its agents were fair and reasonable and reflected the correct fair market value for the shares.

## FIFTEENTH DEFENSE

Plaintiffs' claims under ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1) (Count VI) fail because Defendants/Third-Party Claimants did not know of or have any reason to know of any breach of fiduciary duty by any ESOP fiduciary.

## SIXTEENTH DEFENSE

Plaintiffs' claims are barred by ERISA's three-year and six-year limitations periods set forth in ERISA § 413, 29 U.S.C. § 1113 and other limitations periods set forth in ERISA or other applicable law.

**SEVENTEENTH DEFENSE**

Plaintiffs' claims under ERISA §§ 406(a), 406(b), 404(a)(1)(A) and (B), 405(a)(1), 404(a)(1) and 406(a)(1)(A), 29 U.S.C. §§ 1106(a), 1106(b), 1104(a)(1)(A) and (B), 1105(a)(1), 1104(a)(1) and 1106(a) (Counts I-VI) fail because the 2012 Transaction did not occur for more than "adequate consideration" in that the stock and assets at issue were bought and sold for fair market value.

**EIGHTEENTH DEFENSE**

Plaintiffs' claims under ERISA §§ 404(a)(1)(A) and (B), 405(a)(1), 29 U.S.C. §§ 1104(a)(1)(A) and (B), 1105(a)(1) (Counts V and VI) fail because corporate actions, including corporate transactions like the 2013 real property sale, are not governed by ERISA and such corporate actions cannot serve as a basis for any ERISA fiduciary liability claims against Defendants Rand and Bidwill.

**NINETEENTH DEFENSE**

Any claims Plaintiffs purport to assert against Bidwill and Rand based on transactions arising after they sold their shares of Casino Queen Inc. are precluded because they were not requested to approve and did not approve the sale of any Casino Queen Inc. assets or approve any leaseback transaction and had no control over those who did approve the sale of Casino Queen Inc. assets or the leaseback transaction.

WHEREFORE, having fully answered Plaintiffs' Complaint, Defendants Bidwill and Rand pray that this Court dismiss the First Amended Complaint in its entirety, with prejudice, or alternatively, enter judgment in favor of Defendants, award Defendants their reasonable attorneys' fees and costs incurred herein, and for such other and further relief as this Court deems just and proper under the circumstances.

**COUNTERCLAIMS, CROSS-CLAIMS AND THIRD-PARTY CLAIMS FOR
DECLARATORY RELIEF AND/OR DAMAGES DIRECTED TO PLAINTIFFS TOM
HENSIEK, JASON GILL, AND LILLIAN WROBEL, INDIVIDUALLY AND AGAINST
ANY PUTATIVE CLASS, CO-DEFENDANTS BOARD OF DIRECTORS OF CQ
HOLDING COMPANY, THE ADMINISTRATIVE COMMITTEE OF THE CASINO
QUEEN EMPLOYEES STOCK OPTION PLAN, JEFFREY WATSON AND ROBERT
BARROWS, JAMES G. KOMAN, AND THIRD-PARTY DEFENDANTS CASINO
QUEEN, INC., CQ HOLDING, INC., GREATBANC TRUST COMPANY,
MICHAEL GAUGHAN, AND PHILIP KENNY**

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs

Charles Bidwill III and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively,

"Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their 1)

Counterclaims for declaratory relief directed to Plaintiffs Tom Hensiek, Jason Gill, and Lillian

Wrobel (referred to herein after as "Plaintiffs/Counterclaim Defendants"), individually and against

any putative class (collectively referred to as "Plaintiffs"), 2) Cross-claims for declaratory relief

and/or damages against co-defendants Board of Directors of CQ Holding Company ("CQ Board"),

the Administrative Committee of the Casino Queen Employees Stock Option Plan ("CQ ESOP

Administrative Committee"), Jeffrey Watson, and Robert Barrows (collectively referred to

hereinafter as the "Casino Queen Defendants"), 3) Cross-claims for declaratory relief and/or

damages against co-defendant James G. Koman, 4) Third-Party claims for declaratory relief and/or

damages against Casino Queen, Inc. and CQ Holding Company, Inc., and GreatBanc Trust

Company, and 5) Third-Party claims for declaratory relief and/or damages against Michael

Gaughan and Philip Kenny state as follows:

## INTRODUCTORY ALLEGATIONS

1.      Defendants/Third-Party Claimants Charles Bidwill and Timothy Rand are

individuals and residents of the State of Illinois who, during certain periods of time prior to

December, 2012, served as Board Members of Casino Queen, Inc. (referred to hereinafter as "CQI,") and also were, prior to December, 2012, shareholders of CQI.

2.      Plaintiffs Tom Hensiek, Jason Gill, and Lillian Wrobel (referred to herein after as "Plaintiffs/Counterclaim Defendants") are individuals who, through their counsel, have filed a purported ERISA class action lawsuit individually and on behalf of a purported putative class (collectively referred to as "Plaintiffs") against Defendants/Third-Party Claimants and others purporting to assert assorted claims directed to Defendants/Third-Party Claimants for breach of fiduciary duty, and allegedly engaging in claimed "Prohibited Transactions," "Self-Dealing," and failure to monitor.

3.      To the extent this Court has jurisdiction to entertain Plaintiffs' action as to Defendants/Third-Party Claimants (which jurisdiction is challenged by Defendants/Third-Party Claimants), this Court has jurisdiction over Defendants/Third-Party Claimants counterclaims, cross-claims and third-party claims for declaratory relief under 28 U.S.C.A. Section 1331 and 28 U.S.C.A. Section 2201.  To the same extent, this Court would have supplemental jurisdiction over any state law claims pursuant to 28 U.S.C.A. Section 1367(a).

4.      In their First Amended Class Action Complaint, despite the fact that prior to filing, counsel for Plaintiffs were provided with documentation from the Casino Queen Defendants and from Defendants/Third-Party Claimants clearly spelling out the mechanics of the creation of the stock sale and real property sale that are the subject of Plaintiffs' First Amended Class Action Complaint, Plaintiffs nonetheless make various false allegations regarding a) the creation of the Casino Queen Employee Stock Ownership Plan ("CQ ESOP"), b) the identities of CQ ESOP Trustees, c) the nature of the 2012 CQI stock sale, d) the nature of the CQ ESOP purchase of CQH shares and the amount paid by the CQ ESOP for that purchase; e) the nature of 2013 CQI real

property/asset sale (particularly as it relates to Defendants'/Third-Party Claimants' purported involvement in this sale), e) Defendants'/Third Party Claimants' purported control over the CQ ESOP and ESOP trustees, and f) purported fraudulent concealment by Defendants/Third-Party Claimants, which false allegations include, but are not limited to, the following:

a.   That Defendants/Third-Party Claimants had "power" and/or "control" over the CQ ESOP and the CQ ESOP trustees and had the power to remove those trustees (when the documents clearly establish that Defendants/Third-Party Claimants had no such "power" or "control");

b.   That Defendants/Third-Party Claimants were on the CQ ESOP Administrative Committee (when the documents show that no CQ ESOP Administrative Committee was created until long after Defendants/Third-Party Claimants had disassociated themselves from the Casino Queen);

c.   That Defendants/Third-Party Claimants "retained the power to dismiss Co-Trustees (who continued serving on the CQH Board despite being charged with approving the 2012 Transaction) and Administrative Committee members, and thus controlled their decision-making" and that the CQ ESOP purchased CQH shares for $170 million and assumed $170 million in debt (when the documents clearly demonstrate that Independent Fiduciary GreatBanc Trust Company ("GreatBanc Trust") approved the 2012 stock purchase and directed the named CQ ESOP fiduciaries Watson and Barrows to complete the CQ ESOP share purchase for $4 million [which resulted in the CQ ESOP incurring $4 million in debt] and that Defendants/Third-Party Claimants had no power or control over any CQ ESOP trustees);

d.   That Watson and Barrows somehow caused the approval of the sale of Defendants'/Third-Party Claimants' stock (and that of other CQI shareholders) to the CQ ESOP (when the documents clearly show that Watson and Barrows acted solely as directed trustees with respect to the CQH stock sale transaction with the CQ ESOP);

e.   That someone other than the selected and documented Independent Fiduciary GreatBanc Trust independently approved and directed the CQ ESOP's purchase of CQH's stock following CQH's "purchase" (through a stock exchange and redemption) of Defendants'/Third-Party Claimants' CQI stock (and that of other CQI shareholders) (when the documentation clearly indicates that those directives came from GreatBanc Trust as Independent Trustee);

f.   That Defendants/Third-Party Claimants "had fiduciary authority with respect to the 2012 Transaction pursuant to the terms of a written document

(the "Plan Document") that governed the ESOP" (when those Plan Documents clearly indicate that Defendants/Third-Party Claimants had no such "fiduciary authority");

g.   That someone other than the selected and documented Independent Fiduciary GreatBanc Trust (following its due diligence and in reliance on independent valuators and independent advisors) independently approved and directed the CQ ESOP to purchase CQH shares;

h.   That the CQ ESOP purchased CQH shares for $170,000,000 (when the documentation clearly demonstrates that the CQ ESOP only paid $4 million for those shares, only incurred a $4 million debt for that share purchase, and that the documented intent was to sell shares to the CQ ESOP for the "residual value" – the value of CQH stock after CQH "purchased" CQI shares as part of the leveraged stock purchase transaction that took into account any borrowing required by CQH to obtain CQI stock from CQI shareholders);

i.   That the sale of stock to the CQ ESOP was overvalued by 95 percent (when the documents show that Independent Trustee GreatBanc Trust's independent valuators valued CQH stock purchased by the CQ ESOP at $4 million and show that the $4 million purchase by the ESOP was for adequate consideration);

j.   That Defendants/Third-Party Claimants acted as fiduciaries for the CQ ESOP in connection with the CQH stock purchase (when the documentation establishes that Watson and Barrows served as directed trustees for the CQ ESOP stock purchase, that GreatBanc Trust served as Independent Trustee, and that Defendants/Third-Party Claimants were never designated as CQ ESOP Trustees);

k.   That after the 2012 stock sale, Defendants/Third-Party Claimants served as "Board" members of CQH and, in that capacity, they "knowingly participated in" and approved the sale of CQI's real property in 2013 (when the documentation clearly demonstrates that Defendants/Third-Party Claimants only served for a limited period of time as "Noteholder Directors" with extremely limited Board voting authority and that they did not vote to approve any CQI/CQH asset sale and had no right to approve any CQI/CQH asset sale); and

l.   That the valuations prepared by independent valuators selected solely by Independent Fiduciary GreatBanc Trust were inflated and failed to take into account the leveraged nature of CQH's "purchase" of the CQI stock from Defendants/Third-Party Claimants and other CQI shareholders (when the documentation demonstrates that the valuations were thoroughly performed, using sound and established valuation methodologies and fully

took into account the leveraged nature of the stock sale transaction, as reflected in the $4 million CQH stock sale to the CQ ESOP).

5.      In addition to a series of false allegations that are belied by the written documentation, Plaintiffs have also asserted in prior briefings before this Court that independent trustee GreatBanc Trust could not have served as a fiduciary because it was purportedly improperly designated as such. *See* Pltfs.' Resp. in Opp'n to the Mot. to Dismiss Filed by Defs. Bidwill Rand, and Koman, ECF No. 58, at 6-8.   While Defendants/Third-Party Claimants disagreed with Plaintiffs' position in this regard, if the Court determines that Plaintiffs can prove up which, as demonstrated below, are false allegations, then any claims brought herein against GreatBanc Trust for damages would not be governed by ERISA (which does not mean that such state law claims would be governed or be preempted by ERISA).

6.      As set forth more fully below, because proper declarations by the Court interpreting the documentation that formed the basis for CQH's purchase of Defendants'/Third-Party Claimants' CQI shares and the CQ ESOP's purchase of CQH stock will not only demonstrate the false nature of the allegations made by Plaintiffs' counsel, and establish the fully legitimate nature of the CQ ESOP's purchase of CQH stock, but will also demonstrate that judgment should be entered in Defendants'/Third-Party Claimants' favor as to all counts of Plaintiffs' First Amended Complaint.

### GENERAL ALLEGATIONS

### DESCRIPTION OF THE PARTIES

7.      The Casino Queen is a premier locals-oriented casino, hotel, and entertainment complex headquartered in East St. Louis, Illinois.  The Casino Queen offers slot machines, table games, hotels, restaurants, meeting space, and a recreational vehicle park to its customers.  Since

its founding in 1993, the Casino Queen has created thousands of jobs, and contributed more than $200 million to revitalize the East St. Louis riverfront.

8.      Prior to December, 2012, the Casino Queen was incorporated as Casino Queen, Inc. ("CQI").  Defendants/Third-Party Claimants were shareholders of CQI who ultimately transferred their CQI stock to CQ Holding Company, Inc. ("CQH") in December, 2012, which ended up being the 100 percent owner of CQI.  In December, 2012, the Casino Queen Employee Stock Ownership Plan ("CQ ESOP") ultimately became the owner of CQH.

9.      Prior to the transfers of their CQI ownership interests to CQH in December, 2012, Bidwill and Rand were shareholders of CQI and also served as CQI Board members and officers.

10.     Prior to the transfer of his CQI ownership interest to CQH in December, 2012, James G. Koman ("Koman") was a shareholder of CQI and also served as a CQI Board member.

11.     Prior to the transfer of his CQI ownership interest to CQH in December, 2012, Philip Kenny ("Kenny") was a shareholder of CQI and also served as a CQI Board member.

12.      Prior to the transfer of his CQI ownership interest in December, 2012, Michael Gaughan ("Gaughan") was a shareholder of CQI.  Gaughan's interest was represented on the CQI Board of Directors through Michael Kravolec, whose actions and voting was fully controlled by Gaughan and whose knowledge regarding any of the activities of the CQI Board would be imputed to Gaughan.

13.     As Board Members of CQI, Defendants/Third-Party Claimants, along with other CQI Board members, owed fiduciary duties to CQI shareholders.

**GENESIS OF ESOP TRANSACTION**

14.     At the urging of senior management of CQI, Defendants/Third-Party Claimants, acting solely in their capacities as shareholders of CQI, decided to entertain the suggestion that CQI create an employee stock ownership plan.

15.     Recognizing that "the best place to put the future of the company is in the hands of its very talented employees who have made it a success," and in consultation with its legal and financial advisors, CQI began the process of creating CQH as a holding company, which holding company ultimately created the CQ ESOP in 2012.

16.     In 2012, the newly-established CQ ESOP entered into a stock purchase transaction in which it ultimately acquired a 100 percent interest in Casino Queen Holdings, Inc. ("CQH") ("CQ ESOP Purchase Transaction"). As part of the two-step deal recommended by professionals, following a stock exchange, CQH redeemed its shares for $135 million in cash and notes before selling the shares to the ESOP for the "residual value" of $4 million, and it also refinanced CQI's approximately $38 million in existing debt.

17.     In voting as board members to consider the possibility of having an employee stock ownership plan created and having that employee stock ownership plan ultimately acquire 100% of the outstanding shares of the holding company created in the form of CQH, Defendants/Third-Party Claimants wanted to make sure that any potential conflicts of interest that might arise from their dual positions as CQI Board Members and selling CQI shareholders would be resolved by making sure that any directives to go forward with any potential sale to any employee stock ownership plan would be facilitated through an independent trustee and in accordance with independent stock valuations.

**INDEPENDENT TRUSTEE GREATBANC AND ROLE OF CHARTWELL**

18.    To remove any conflicts of interest that existed because of certain shareholders' dual roles as CQI Board Members and potentially selling shareholders of CQI, on July 20, 2012, CQI entered into an "Independent Fiduciary Engagement Agreement" with GreatBanc Trust to serve as independent trustee on behalf of the CQ ESOP (hereinafter referred to as "GreatBanc IF Agreement").  A true and accurate copy of the GreatBanc IF Agreement is attached hereto as Exhibit 1, CQ-001984-001997.

19.    GreatBanc Trust is a nationally-recognized institutional trustee that has represented hundreds of ESOPs in transactions related to the creation of ESOPs, the valuation of ESOP transactions, and the sale of company stock to ESOPs.

20.    In addition to utilizing GreatBanc Trust to serve as Independent Trustee, CQI, CQH and Defendants/Third-Party Claimants employed various professionals in the form of attorneys and advisors to provide guidance to them as to how best to structure the steps for the ultimate $4 million sale of CQH stock to the CQ ESOP (after CQH acquired CQI share ownership) and, as to CQI and CQH only, how CQI and/or CQH should report this transaction to the Internal Revenue Service ("IRS"), the Securities Exchange Commission ("SEC"), and the Department of Labor ("DOL") which regulates ESOP plans.

21.    As structured, once GreatBanc Trust was engaged by CQI to serve as independent trustee, various preliminary transactional steps were employed, the end result of which was to have the CQI shares that would be acquired by CQH to be subsequently sold to the CQ ESOP for the "residual value," which residual value would and did ultimately reflect any loans undertaken by CQH to purchase 100% ownership of CQI.

22.    In the GreatBanc IF Agreement, CQI agreed "to retain GreatBanc to serve as the Independent Fiduciary (as shall be provided in the Trust Agreement) to direct the Trustee whether

to accept the Offer, and the Independent Fiduciary is willing to serve in that capacity, on the terms and subject to the conditions set forth in this Agreement". Exhibit 1, CQ-001984.

23.     Section 1 of the GreatBanc IF Agreement provided that "[CQI] hereby appoints the Independent Fiduciary to serve as independent fiduciary ***solely for the purpose of evaluating, and directing the Trustee whether to accept, the offer***, and the Independent Fiduciary hereby accepts this appointment." Exhibit 1, CQ-001984.  (Emphasis added).

24.     Section 3 of the GreatBanc IF Agreement provided that "The Independent Fiduciary ***shall conduct such due diligence*** in negotiations related to the Transaction as it, ***in its sole discretion***, deems appropriate and necessary for it to determine whether to direct the Trustee to accept the Offer."  Exhibit 1, CQ-001985.  (Emphasis added).

25.     Sections 5 and 6 of the GreatBanc IF Agreement provides that "[t]he Independent Fiduciary will engage the services of a qualified independent financial advisor, ***who will report directly*** to the Independent Fiduciary and ***not to [CQI] or its shareholders***" and that "[t]he Independent Fiduciary will engage its own independent legal counsel." Exhibit 1, CQ-001985. (Emphasis added).

26.     On July 13, 2012, GreatBanc Trust, acting solely as independent fiduciary of the CQ ESOP, Chartwell Solutions, and CQI entered into an engagement agreement whereby Chartwell provided to GreatBanc Trust as independent trustee "financial advisory services related to the proposed transaction (the 'Transaction') in which the trustee will become owner of 100% of the [CQI] outstanding common stock."  (A true and accurate copy of that Chartwell agreement is attached hereto and incorporated by reference as Exhibit 2, CQ-001998-002001and is referred to hereinafter as the "July 13 Chartwell Engagement").

27.     Chartwell is and was a nationally recognized, highly respected valuation firm that specializes in ESOP valuation services, with relationships with hundreds of ESOP clients across the country.

28.     In the July 13 Chartwell Engagement, Chartwell also agreed that it would provide to GreatBanc as independent fiduciary, a written opinion that:

> "a.     The consideration to be paid by the ESOP for its shares of [CQI] stock pursuant to the terms of the Transaction is not greater than the fair market value of such shares;
>
> b.     The interest rate on the loan from [CQI] to the ESOP is not in excess of a reasonable rate;
>
> c.     The terms of such loan are at least favorable to the ESOP as would be the terms of a comparable loan resulting from arm's-length negotiations between independent parties; and
>
> d.     The terms and conditions of the Transaction are fair to the ESOP from a financial point of view."

Exhibit 2, CQ-001998.

29.     In the July 13 Chartwell Engagement, Chartwell also agreed that it would provide an appraisal report meeting the requirements of the Standards Rule 10-2(a) of the Uniform Standards of Professional Appraisal Practice and the requirements of ERISA and the Internal Revenue Code related to independent appraisals for ESOP purposes.  The Chartwell agreement also provided that its valuation approaches would be explored as outlined in the "*Business Valuation Standards*" of the American Society of Appraisers.  Exhibit 2, CQ-001998-001999.

30.     On July 16, 2012, Chartwell entered into a second agreement with GreatBanc Trust and CQI wherein it agreed that in conjunction with the ultimate sale of 100% of the CQI stock "through a leveraged, integrated transaction", Chartwell would also render a solvency opinion wherein it would "value [CQI] and [CQI's] assets on a going concern basis (including goodwill), and on a pro forma basis immediately after and ***giving effect to the Transaction and the associated***

*indebtedness.*" A true and accurate copy of this July 16, 2012, Chartwell engagement is attached hereto and incorporated by reference as Exhibit 3, CQ-002002-002007 (referred to hereinafter as the "July 16 Chartwell Engagement").

31.     On November 20, 2012, Chartwell entered into a supplemental engagement with GreatBanc Trust and CQ Holding Company, Inc.—in recognition of the fact that CQH had been created and was contemplating becoming the 100% owner of CQI—to render a solvency opinion as to CQI prior to CQH's sale of CQH shares to the CQ ESOP. A true and accurate copy of that engagement is attached hereto and incorporated by reference as Exhibit 4, CQ-002008-002014 (hereinafter referred to as the "Supplemental Chartwell Agreement.").

## CREATION OF CQ HOLDING, THE CQ ESOP, AND THE AUTHORIZED CQH DIRECTORS AND CQ ESOP TRUSTEES

32.     On October 2, 2012, CQH was formed as a Delaware Holding Company. A true and accurate copy of the CQH articles of incorporation are attached hereto as Exhibit 5, CQ-002024-002026.

33.     Pursuant to the CQH Bylaws dated November 29, 2012, it provided that the "Number of Directors of Corporation shall be two (2)." A true and accurate copy of those CQH Bylaws are attached hereto and incorporated by reference as Exhibit 6, CQ-001891-001901.

34.     Watson was designated to serve as President of CQH and Barrows was designated to serve as Secretary Treasurer and Vice President of CQH.  Watson and Barrows were appointed as the sole board members of CQH.

35.     On December 1, 2012, a trust agreement for the CQ ESOP was entered into between CQH as sponsor and Jeffrey Watson and Robert Barrows as trustees in connection with the December 1, 2012 establishment of the CQ ESOP, which agreement was signed on December 26, 2012 (hereinafter referred to as the "CQ ESOP Trust."). A true and accurate copy of the CQ ESOP

Trust document effective as of December 1, 2012, is attached hereto as Exhibit 7, CQ-002848-002860.

36.     Under Article XII of the CQ Trust Agreement, Watson and Barrows could only be removed as CQ ESOP Trustees if CQH, as Plan Sponsor, terminated them as trustees by providing 60 days notification.  As evidenced by the CQ Trust Agreement, neither Bidwill nor Rand had any power to remove either Watson or Barrows as CQ ESOP Trustees.

37.     One purpose of the CQ ESOP Trust was to appoint Watson and Barrows as trustees of the CQ ESOP plan assets. The CQ ESOP Plan was adopted by Watson and Barrows and is attached hereto as Exhibit 8, CQ-002786-002847.

38.     On December 26 2012, CQH adopted amended bylaws wherein the total number of directors was increased from two to five directors. Those amended CQH Bylaws also permitted the designation of certain "Note Holder Directors" who would only be allowed to vote to approve certain "Special Matters" limited to the sale, exchange, or disposition of substantially all of the assets of the corporation not resulting in payment in full of the notes held by the Note Holding Directors or the sale or disposition of all of the assets of CQI not resulting in full payment of notes held by the Note Holding Directors, certain refinancing of the debt of CQH not resulting in the payment in full of the Seller Note (hereinafter referred to as "CQH Special Matters.").  More specifically, those CQH Bylaws expressly state Article Six, Section 3(b):  "The Note Holder Directors *shall have no voting power with respect to any matters other than Special Matters*. . .." A true and accurate copy of those amended CQH Bylaws are attached hereto and incorporated by reference as Exhibit 9, CQ-002936-002944.

39.     On December 26, 2012, based on the appointment of Watson and Barrows as ESOP Directors and Defendants/Third-Party Claimants as "Note Holder Directors," Rand resigned his

Case 3:20-cv-00377-DWD   Document 154   Filed 05/19/22   Page 56 of 85   Page ID #1542

position as President of CQI, Bidwill resigned his position as CQI Vice-President, and both Rand and Bidwill resigned their positions as Directors of CQI. A true and accurate copy of those resignations are attached hereto as Exhibit 10, CQ-002987, CQ-002989.

40.     On that same day, by way of unanimous written consent of Watson and Barrows serving as the sole Directors of CQI, CQI appointed Watson as President and General Manager and Barrows as Chief Financial Officer, Treasurer, Secretary, and Vice President of CQI. A true and accurate copy of this unanimous consent is attached hereto and incorporated by reference as Exhibit 11, CQ-003020-003021.

41.     On December 26, 2012, Watson and Barrows, as sole Directors of CQH, adopted by unanimous written consent the following: (a) a resolution authorizing the creation of the CQ ESOP and the CQ ESOP Trust, designating Watson and Barrows as co-Trustees of the Trust and the ESOP; (b) and indicating that Watson and Barrows, as the Board of CQH, believed it was "in the best interests of [CQH] to sell ninety-nine (99) shares of common stock of [CQH] from shares held in treasury (the "ESOP Shares") to Jeffrey Watson and Bob Barrows in their capacity as Co-Trustees of the Trust Agreement, to be held for and on behalf of the ESOP, in consideration for an aggregate sale price of four million dollars based on the residual value of [CQH] (taking into account the one percent (1%) of the CQ Holding Shares then outstanding) (the "ESOP Purchase")"; (c) that the $4 million purchase price for the sale of shares to the ESOP would be facilitated by the ESOP agreeing to enter into a promissory note executed by Watson and Barrows as co-Trustees evidencing the residual value sale of $4 million. A true and accurate copy of that unanimous written consent is attached hereto and incorporated by reference as Exhibit 12, CQ-002685-002688.

42.     On December 26, 2012, Watson and Barrows agreed to serve as Co-Trustees of the CQ ESOP as provided for under this CQ Trust Agreement effective as of December 26, 2012. True and accurate copies of those appointments by CQH and acceptances by Watson and Barrows are attached hereto as Exhibit 13, CQ-002861-002862, and Exhibit 14, CQ-002863-002864.  Neither Bidwill nor Rand ever agreed to serve as CQ ESOP Trustees.

### CQ ESOP $4 MILLION CQH STOCK PURCHASE AND VALUATIONS

43.     On December 26, 2012, Watson and Barrows, as the sole Directors of CQH, executed a unanimous written consent of the CQH Board of Directors wherein they authorized CQH to enter into the following transactions wherein:  a) CQH authorized the exchange of shares between CQH and the shareholders of CQI as the "first steps" in the ultimate 100% acquisition by the CQ ESOP of full ownership of CQH; b) CQH authorized the share exchange between CQI shareholders and CQH shares on a one-to-one basis; 3) CQH authorized the repurchase of 99% of CQH shares from CQH shareholders following the shareholder exchange in the aggregate sum of $110,000,000.00 and the issuance of subordinated notes in the amount of $25,000,000 for a total purchase price of $135,000,000. A true and accurate copy of that unanimous written consent is attached hereto and incorporated by reference as Exhibit 15, CQ-002070-002075.

44.     On December 26, 2012, Chartwell prepared two Reports:  An appraisal valuing the CQI shares of stock that would be exchanged and ultimately redeemed by CQH ("CQI Stock Valuation") and a solvency opinion ("Chartwell Solvency Opinion") relating to the pre-exchange, pre-redemption valuation.   The Chartwell CQI Stock Valuation was for a range of $134 million to $162 million.  A true and accurate copy of that Chartwell CQI Stock Valuation is attached hereto and incorporated by reference as Exhibit 16, CQ 000001-000100.

45.     On December 26, 2012, Chartwell provided to GreatBanc Trust its solvency opinion wherein it concluded that (1) the fair value in present fair sellable value of CQH's assets will not exceed CQH's stated liabilities, "including identified contingent liabilities and liabilities assumed as part of the Transaction," and that CQI would be able to pay its debts as they became absolute and mature.  It also provided that "[t]his valuation recognized that as Steps 4 and 5, the ESOP would purchase 99 shares of common stock of CQH (representing 99% ownership) in the aggregate amount of four million dollars, with a note provided by CQH for the purchase bearing an interest rate of 2.40% to be paid in annual installments of $254,171 commencing on December 31, 2013."  A true and accurate copy of that Chartwell Solvency Opinion is attached hereto and incorporated by reference as Exhibit 17, CQ-001977-001983.

46.     Under the Chartwell Solvency Opinion, Chartwell indicated that the holders of any Tranche B Note (which holders included Defendants/Third-Party Claimants) "are granted permission to rely on this letter solely in connection with matters related to this Transaction." Exhibit 17, CQ-001983.

47.     On December 26, 2012, GreatBanc Trust as independent Trustee executed and delivered to CQH a document entitled "DIRECTION OF GREATBANC TRUST COMPANY AS INDEPENDENT TRUSTEE" wherein it provides (a) that GreatBanc Trust was providing directions to Watson and Barrows as directed CQ ESOP Trustees to purchase of 100% of CQH, noting that it had been appointed as independent fiduciary "to direct the Directed Trustee ***with respect to all matters involving the terms of any decision to enter into the 'Transaction'*** as that term is defined in the opinion letter of Chartwell Financial Solutions addressed to the Undersigned and dated December 26, 2012 regarding, among other matters, the fairness of the terms and conditions of the Transaction to the ESOP from a financial point of view" (emphasis added);

(b) that GreatBanc Trust, as independent fiduciary, was "solely responsible with determining the prudence of the terms of, and the decision to enter into, the Transaction" and the agreements, documents, instruments and certificates required to implement the "Transaction"; (c) GreatBanc Trust "certified" to Watson and Barrows as Directed Trustees that GreatBanc Trust had "received, reviewed and evaluated the attached opinions from its financial advisor, has determined that reliance on those opinions would be consistent with the Undersigned's fiduciary duties under ERISA, has consulted with its financial advisor and its legal counsel and has determined that (i) the price to be paid by the ESOP does not exceed 'fair market value' as such term is defined for purposes of ERISA, (ii) the interest rate set forth in ESOP note referenced below does not exceed a fair market interest rate, (iii) all of the requirements necessary for the Transaction directed to be taken pursuant to this Direction either (x) to qualify for an exemption from constituting, or (y) not constituting, prohibited transactions under ERISA or the Internal Revenue Code of 1986 are met, and (iv) issuance of these directions does not constitute a breach of the Undersigned's fiduciary duties under ERISA"; and (d) GreatBanc Trust directed Watson and Barrows as Trustees to execute certain documents, including a Stock Repurchase Agreement, an ESOP Loan and Pledge Agreement, and ESOP Note reflecting the purchase of shares by the ESOP for $4 million dollars. A true and accurate copy of that Direction of GreatBanc Trust is attached hereto and incorporated by reference as Exhibit 18, CQ-002869-CQ-002871.

48.    On December 26, 2012, Watson and Barrows as Trustees of the CQ ESOP, and Watson as President of CQH, entered into a stock purchase agreement with the CQ ESOP noting that because of the Direction provided by GreatBanc Trust, the ESOP would be purchasing 99 shares of stock of CQH for a total purchase price of $4 million dollars, which purchase would be financed by CQH by way of a promissory note executed by the CQ ESOP in the amount of $4

million.  A true and accurate copy of that Stock Purchase Agreement and the ESOP Loan and Pledge agreement for $4 million dollars are attached hereto and incorporated by reference as Exhibit 19, CQ-002916-002923, and Exhibit 20, CQ-002924-002930.

49.     In conjunction with the exchange of CQI shares with CQH shares, and CQH's ultimate redemption of those shares from Rand and Bidwill. CQH executed "Tranche B Notes" in favor of Rand, Bidwill and other CQI selling shareholders in the amount of $25 million, which represented the additional monies owed by CQH to Rand, Bidwill and other selling shareholder for the transfer of their ownership interests in CQI.  As holders of Tranche B Notes, both Bidwill and Rand served solely as "Note Holder Directors" with the very limited authority as set forth above in Paragraph 38.  A true and accurate copy of those Tranche B Notes are attached hereto as Exhibit 21, CQ-001826-001882.

50.     After Defendants'/Third-Party Claimants' resignations as officers and board members of CQI and ultimate designation as Note Holder Directors of CQH, Defendants'/Third-Party Claimants' only had very limited voting rights as to certain limited "CQH Special Matters" per the CQH Bylaws Exhibit 9, CQ-002940-002942.

51.     After the December 26, 2012 transactions and approvals of those transactions, Chartwell prepared a valuation report with a valuation effective date of December 31, 2012 wherein it concluded that the fair market value of the CQH shares owned by the ESOP was between $5.399 million and $5.4 million.  A true and accurate copy of that valuation is attached hereto and incorporated by reference as Exhibit 22, CQ-007555-007658.

52.     The Illinois Gaming Board ("IGB")—which vigorously regulates the casino industry in the State of Illinois—approved the transactions that resulted in the transfer of

Defendants/Third-Party Claimants transfer of shares to CQH and CQH's transfer of ownership to the CQ ESOP.

## 2013 CQI/CQH SALE/LEASE BACK TRANSACTION

53.     Sometime prior to December 6, 2013, CQI and CQH, through its officers and directors in the form of Watson and Barrows (who also served as the only two CQ ESOP Trustees), agreed that it would be in the best interests of CQI, CQH and the CQ ESOP to sell the CQI real property and lease back that real property for the purposes of continuing the Casino Queen operations.  Since CQI was the owner of the real property, CQH was the sole shareholder of CQI, and the CQ ESOP was the sole shareholder of CQH, the approval of all three entities was required to facilitate the sale of the CQI real estate.

54.     On December 6, 2013, Watson and Barrows, "**BEING ALL OF THE DIRECTORS**" of CQI, by unanimous written consent, voted to enter into the sale of CQI real estate and other assets and lease back of that real estate and assets ("Sale/Lease Back Transaction"). Neither Rand nor Bidwill were permitted to vote nor voted in favor of that Sale/Lease Back Transaction. A true and accurate copy of that unanimous written consent is attached hereto and incorporated by reference as Exhibit 23, CQ-004356-004361.

55.     On December 6, 2013, CQH, as the sole shareholder of CQI, voted to approve the sale and lease back of CQI's real property and lease back of that real property. Neither Rand nor Bidwill were permitted to or voted to approve this Sale/Lease Back Transaction in any capacity. A true and accurate copy of that "Written Consent of the Sole Stockholder of Casino Queen, Inc." is attached hereto and incorporated by reference as Exhibit  24, CQ-004399-004401.

56.     On December 6, 2013, Watson and Barrows as "**ESOP DIRECTORS**" and who were denominated in the executed document as "**BEING ALL OF THE ESOP DIRECTORS**

**AS THE ONLY DIRECTORS ENTITLED TO CONSIDER AND APPROVE THE FOREGOING RESOLUTIONS**", voted by way of a unanimous written consent of the CQH ESOP Directors to approve the Sale/Lease Back Transaction. As noted in that unanimous written consent, neither Rand nor Bidwill were permitted to or voted to approve this Sale/Lease Back Transaction. See Exhibit 24, CQ-004395-004398.

57. On January 23, 2014, Bidwill and Rand, upon the repayment of the Tranche B Notes by CQH, resigned as Directors of CQH effective as of January 23, 2014. A true and accurate copy of those resignations are attached hereto as Exhibit 25, CQ-008094 and Exhibit 26, CQ-008095.

58. After Defendants/Third-party Claimants resigned as Note Holder Directors of CQH, neither Bidwill nor Rand had any further involvement in the Casino Queen or any of its corporate entities. Bidwill and Rand never had any involvement in the CQ ESOP after it was created.

59. To the extent that Plaintiffs' allegations regarding undervaluation could be proven (which allegations Defendants/Third-Party Claimants vehemently deny), neither of the Defendants/Third-Party Claimants was aware of any such undervaluation, nor would they have had any reason to be aware of the fact that there were claimed flaws in any such valuation. On the contrary, Defendants/Third-Party Claimants relied upon the fact that independent professionals would be employed to make sure that the transactions were above-board and were for fair market value.

60. To the best of Defendants'/Third-Party Claimants' knowledge, information and belief, the independent valuations and solvency opinion obtained by GreatBanc Trust were true and accurate and based upon sound methodology, and were relied upon by Defendants/Third-Party

Claimants in making their decision to exchange and have redeemed their ownership interests in CQI/CQH. To the extent that there were problems with any valuations and solvency opinion (which Defendants/Third-Party Claimants deny), Defendants/Third-Party Claimants would not have been aware of any such problems nor would have had any reason to know of such problems.

## CLASS ACTION ALLEGATIONS

61.    Defendants/Third-Party Claimants maintain that the putative class identified in Plaintiffs' Amended Complaint should not, and cannot, be certified as a class.

62.    Without waiving Defendants'/Third-Party Claimants' ability to challenge certification of the putative class identified in Plaintiffs' Amended Complaint, to the extent the Court certifies the putative class identified in Plaintiffs' Amended Complaint, such certification must bind the individuals in the putative claims with respect to each Counterclaim, Cross-claim, and/or Third-Party Claims hereinafter set forth by Defendants/Third-Party Claimants Bidwill and Rand.

## COUNT I—DECLARATION THAT GREATBANC TRUST, AS INDEPENDENT FIDUCIARY, AND NOT DEFENDANTS/THIRD PARTY CLAIMANTS, DIRECTED WATSON AND BARROWS AS CQ ESOP TRUSTEES TO PURCHASE CQH SHARES FOR $4 MILLION AND THE CQ ESOP PURCHASED CQH SHARES AT THAT PRICE

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs Charles Bidwill III and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively, "Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their claim for Declaratory relief in Count I of their Counterclaim directed to Plaintiffs Tom Hensiek, Jason Gill, and Lillian Wrobel (referred to herein after as "Plaintiffs/Counterclaim Defendants"), individually and against any putative class (collectively referred to as "Plaintiffs"), Cross-claim directed to the Board of Directors of CQ Holding, Inc., the Board of Directors of CQ Holding Company ("CQ Board"), the Administrative Committee of the Casino Queen Employees Stock Option Plan ("CQ

ESOP Administrative Committee"), Jeffrey Watson and Robert Barrows, Cross-claim directed to James G. Koman, Third-Party Claim directed to Casino Queen, Inc., CQ Holding, Inc., and GreatBanc Trust Company, and Third-Party Claim Directed to Michael Gaughan and Philip Kenny, state as follows:

63.     Defendants/Third-Party Claimants re-allege and incorporate by reference herein Paragraphs 1 through 62 of their allegations set forth above.

64.     Per the GreatBanc Trust IF Agreement and the Direction provided by GreatBanc Trust to Watson and Barrows as Trustees of the CQ ESOP, GreatBanc Trust, rather than Defendants/Third-Party Claimants, had the sole authority to direct and in fact did direct Watson and Barrows as CQ ESOP Trustees to proceed with the purchase by the CQ ESOP of the CQH shares for $4 million. The CQ ESOP purchased those CQH shares for $4 million and provided a Note to CQH memorializing the CQH loan to the CQ ESOP for that $4 million purchase, which purchase price was consistent with the Chartwell December 31, 2012 Valuation.

WHEREFORE, Defendants/Third-Party Claimants pray for a declaration from this Court that:  a) Per the GreatBanc Trust IF Agreement (Exhibit 1) and the Direction provided by GreatBanc Trust to Watson and Barrows as Trustees of the CQ ESOP (Exhibit 18), GreatBanc Trust, rather than Defendants/Third-Party Claimants, had the sole authority to direct and in fact did direct Watson and Barrows to proceed with the purchase of all of shares of CQH; b) per the Direction provided by GreatBanc and the CQ ESOP loan documentations (Exhibits 18, 19 and 20), the CQ ESOP only paid $4 million for the CQH shares, which purchase price was consistent with the Chartwell December 31, 2012 Valuation (Exhibit 22); and c) as documented by the GreatBanc Trust IF Agreement and the Direction provided by GreatBanc Trust to Watson and Barrows as

Trustees of the CQ ESOP (Exhibits 1 and 18), along with the ESOP Plan document and the ESOP Trust (Exhibits 7 and 8), neither Rand nor Bidwill qualified as Trustees of the CQ ESOP.

### COUNT II—DECLARATION THAT UNDER THE CQH CORPORATE DOCUMENTS, DEFENDANTS/THIRD-PARTY CLAIMANTS HAD NO POWER TO CONTROL OR REMOVE WATSON AND BARROWS AS TRUSTEES OF THE CQ ESOP

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs Charles Bidwill III and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively, "Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their claim for Declaratory relief in Count II of their Counterclaim directed to Plaintiffs Tom Hensiek, Jason Gill, and Lillian Wrobel (referred to herein after as "Plaintiffs/Counterclaim Defendants"), individually and against any putative class (collectively referred to as "Plaintiffs"), Cross-claim directed to the Board of Directors of CQ Holding, Inc., the Board of Directors of CQ Holding Company ("CQ Board"), the Administrative Committee of the Casino Queen Employees Stock Option Plan ("CQ ESOP Administrative Committee"), Jeffrey Watson and Robert Barrows, Cross-claim directed to James G. Koman, Third-Party Claim directed to Casino Queen, Inc., CQ Holding, Inc., and GreatBanc Trust  Company, and Third-Party Claim directed to Michael Gaughan and Philip Kenny, state as follows:

65.     Defendants/Third-Party Claimants re-allege and incorporate by reference herein Paragraphs 1 through 64 of their allegations set forth above.

66.     Per the December 26, 2012 Unanimous Written Consent (Exhibit 12), the CQH Bylaws (Exhibits 6 and 9), the CQ Trust document (Exhibits 7), and CQ ESOP Plan Document (Exhibit 8), neither Rand nor Bidwill had any power to remove Watson or Barrows as CQ ESOP Trustees since those documents provided that only CQH as sponsor had the right to remove Watson

or Barrows as CQ ESOP Trustees, and Bidwill and Rand, as Note Holder Directors, had no such power under those documents or under the CQH Bylaws (Exhibit 9).

WHEREFORE, Defendants/Third-Party Claimants pray for a declaration from this Court that:  a) Per the CQH Bylaws (Exhibits 6 and 9), the CQ Trust document (Exhibit 7), and the CQ ESOP Plan document (Exhibit 8), neither Rand nor Bidwill had any power to remove Watson or Barrows as CQ ESOP Trustees; b) those CQ ESOP Plan and trust documents provided that only CQH as sponsor had the right to remove Watson or Barrows as CQ ESOP Trustees, and Bidwill and Rand, as Note Holder Directors, had no such power under those documents or under the CQH Bylaws.

## COUNT III—DECLARATION THAT DEFENDANTS/THIRD PARTY CLAIMANTS ARE NOT ERISA FIDUCIARIES UNDER THE CQ ESOP

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs Charles Bidwill III and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively, "Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their claim for Declaratory relief in Count III of their Counterclaim directed to Plaintiffs Tom Hensiek, Jason Gill, and Lillian Wrobel (referred to herein after as "Plaintiffs/Counterclaim Defendants"), individually and against any putative class (collectively referred to as "Plaintiffs"), Cross-claim directed to the Board of Directors of CQ Holding, Inc., the Board of Directors of CQ Holding Company ("CQ Board"), the Administrative Committee of the Casino Queen Employees Stock Option Plan ("CQ ESOP Administrative Committee"), Jeffrey Watson and Robert Barrows, Cross-claim directed to James G. Koman, Third-Party Claim directed to Casino Queen, Inc., CQ Holding, Inc., and GreatBanc Trust  Company, and Third-Party Claim directed to Michael Gaughan and Philip Kenny, state as follows:

67.     Defendants/Third-Party Claimants re-allege and incorporate by reference herein Paragraphs 1 through 66 of their allegations set forth above.

68.     Per the CQH Bylaws (Exhibits 6 and 9), the CQ Trust document (Exhibits 7), and the CQ ESOP Plan document (Exhibits 8), neither Rand nor Bidwill are designated as trustees for the CQ ESOP.   Rather, those documents clearly provided that Watson and Barrows were designated as CQ ESOP trustees, and pursuant to those documents, GreatBanc Trust was designated as Independent Fiduciary as it related to the CQ ESOP's acquisition of CQH stock.

69.     Nor did Bidwill or Rand have any control over Watson or Barrows as directors or officers of CQH under the CQH corporate bylaws.

WHEREFORE, Defendants/Third-Party Claimants pray for a declaration from this Court that:  a) Per the CQH Bylaws (Exhibits 6 and 9), the CQ Trust document (Exhibit 7), the CQ ESOP Plan document (Exhibit 8),  neither Bidwill nor Rand were designated as CQ ESOP Trustees and had no control over Watson or Barrows in any capacity; and b) those CQ ESOP Plan and trust documents designated Watson and Barrows as CQ ESOP Trustees and, as permitted under those documents, GreatBanc Trust was selected to serve as Independent Trustee.

**COUNT IV—DECLARATION THAT DEFENDANTS/THIRD PARTY CLAIMANTS DID NOT AND COULD NOT VOTE TO APPROVE THE CQH SALE/LEASE BACK TRANSACTION**

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs Charles Bidwill IV and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively, "Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their claim for Declaratory relief in Count IV of their Counterclaim directed to Plaintiffs Tom Hensiek, Jason Gill, and Lillian Wrobel (referred to herein after as "Plaintiffs/Counterclaim Defendants"), individually and against any putative class (collectively referred to as "Plaintiffs"), Cross-claim

directed to the Board of Directors of CQ Holding, Inc., the Board of Directors of CQ Holding Company ("CQ Board"), the Administrative Committee of the Casino Queen Employees Stock Option Plan ("CQ ESOP Administrative Committee"), Jeffrey Watson and Robert Barrows, Cross-claim directed to James G. Koman, Third-Party Claim directed to Casino Queen, Inc., CQ Holding, Inc., and GreatBanc Trust  Company, and Third-Party Claim directed to Michael Gaughan and Philip Kenny, state as follows:

70.     Defendants/Third-Party Claimants re-allege and incorporate by reference herein Paragraphs 1 through 69 of their allegations set forth above.

71.     Per the CQH Bylaws (Exhibits 6 and 9) and the CQH Board unanimous consents (Exhibits 23 and 24), neither Bidwill nor Rand voted to approve nor had the right to vote on or approve the Sale/Lease Back Transaction, nor did the CQH Bylaws permit them, as Note Holder Directors, to vote of the Sale/Lease Back Transaction.

72.     On the contrary, those documents provided that Rand and Bidwill would only have a right to vote on such transactions if they were not paid the money owed to them under the Tranche B Notes.  Since the notes that permitted Bidwill and Rand to serve as Note Holder Directors were to be paid off as a result of the Sale/Lease Back Transaction real estate sale transaction, Bidwill and Rand did not and could not vote on the Sale/Lease Back Transactions.

WHEREFORE, Defendants/Third-Party Claimants pray for a declaration from this Court that neither Bidwill nor Rand had any right to, nor did they, vote to approve the Sale/Lease Back Transactions.

**COUNT V—ALTERNATIVE DECLARATION THAT DEFENDANTS/THIRD PARTY
CLAIMANTS, TO THE EXTENT THEY ARE DEEMED ERISA FIDUCIARIES OR
ARE OTHERWISE FOUND LIABLE TO PLAINTIFFS, THEN THE COURT SHOULD
DECLARE THAT ANY ACTUAL FIDUCIARIES OR THIRD-PARTIES WITH
KNOWLEDGE ARE LIABLE TO THEM FOR CONTRIBUTION AND/OR
INDEMNITY AND/OR THE COURT SHOULD
APPORTION LIABILITY ACCORDINGLY**

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs Charles Bidwill III and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively, "Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their alternative claim for Declaratory relief in Count V of their Cross-claim directed to Jeffrey Watson and Robert Barrows, and Third-Party Claim against GreatBanc Trust  Company state as follows:

73.     Defendants/Third-Party Claimants re-allege and incorporate by reference herein Paragraphs 1 through 72 of their allegations set forth above.

74.     Throughout this filing, as supported by Defendants'/Third-Party Claimants' Answer, Counterclaims, Cross-claims and Third-Party Claims set forth above, and the attached exhibits, neither Bidwill nor Rand have any liability to Plaintiffs, putative class members or any other party to these proceedings under any viable legal theory.  Moreover, any claims against them are barred by the applicable statute of limitations or statute of repose.  As a consequence, Plaintiffs' claims against Defendants/Third-Party Claimants should be dismissed in their entirety, individually and as to any putative class.

75.     However, to the extent that Defendants/Third-Party Claimants are found liable to the Plaintiffs and any putative class, Defendants/Third-Party Claimants are entitled to a declaration from this Court that they are entitled to indemnification or contribution from Watson and Barrows, who served as the actual CQ ESOP Trustees and fiduciaries, and/or GreatBanc Trust, which served as the Independent Trustee of the CQ ESOP, and, as to GreatBanc Trust, would have had superior

knowledge of any claimed improprieties and/or more culpability than Defendants/Third-Party Claimants based on its role as the Independent Trustee and its breaches of fiduciary duty.

76.     In addition, and in the alternative, as to Watson, Barrows and GreatBanc Trust, Defendants/Third-Party Claimants would be entitled to a declaration that there should be an apportionment of liability as between those parties and Watson, Barrows and GreatBanc Trust if Defendants/Third-Party Claimants are found liable to Plaintiffs or any putative class.

WHEREFORE, Bidwill and Rand pray for a declaration from this Court that:  a) to the extent that Bidwill and Rand are found liable to the Plaintiffs and any putative class, Bidwill and Rand are entitled to a declaration from this Court that they are entitled to indemnification or contribution against Watson, Barrows and GreatBanc Trust; and b) in that event, there should be an apportionment of liability as between those parties and Watson, Barrows and GreatBanc Trust.

### COUNT VI—ALTERNATIVE JUDGMENT FOR CONTRIBUTION AND/OR INDEMNITY AND/OR APPORTIONMENT OF LIABILITY AS TO WATSON, BARROWS AND GREATBANC TRUST

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs Charles Bidwill III and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively, "Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their alternative claim for Declaratory relief in Count V of their Cross-claim directed to Jeffrey Watson and Robert Barrows, and Third-Party Claim against GreatBanc Trust  Company state as follows:

77.     Defendants/Third-Party Claimants re-allege and incorporate by reference herein Paragraphs 1 through 76 of their allegations set forth above.

78.     Throughout this filing, as supported by Defendants'/Third-Party Claimants' Answer, Counterclaims, Cross-claims and Third-Party Claims set forth above, and the attached exhibits, neither Bidwill nor Rand have any liability to Plaintiffs or any other party to these

proceedings under any viable legal theory.  Moreover, any claims against them are barred by the applicable statute of limitations or statute of repose.  As a consequence,  Plaintiffs' claims against Defendants/Third-Party Claimants should be dismissed in their entirety, individually and as to any putative class.

79.     However, to the extent that Defendants/Third-Party Claimants are found liable to the Plaintiffs and any putative class, Defendants/Third-Party Claimants are entitled to judgment from this Court that they are entitled to indemnification or contribution from Watson and Barrows, who served as the actual CQ ESOP Trustees and fiduciaries, or GreatBanc Trust, which served as the Independent Trustee of the CQ ESOP, and, as to GreatBanc Trust, would have had more superior knowledge of any claim improprieties and/or culpability based on its role as the Independent Trustee and its breaches of fiduciary duties.

80.     In addition, and in the alternative, as to Watson, Barrows and GreatBanc Trust, Defendants/Third-Party Claimants would be entitled to a judgment of apportionment of liability as between those parties and Watson, Barrows and GreatBanc Trust if Defendants/Third-Party Claimants are found liable to Plaintiffs or any putative class.

WHEREFORE, Defendants/Third-Party Claimants pray for judgment from this Court that: a) to the extent that Defendants/Third-Party Claimants are found liable to the Plaintiffs and any putative class, Defendants/Third-Party Claimants are entitled to a judgment from this Court for indemnification or contribution against Watson, Barrows and GreatBanc Trust; and b) in that event, there should be an apportionment of liability as between those parties and Watson, Barrows and GreatBanc Trust.

**COUNT VII—ALTERNATIVE CLAIM FOR NEGLIGENT MISREPRESENTATION AGAINST GREATBANC TRUST**

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs Charles Bidwill III and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively, "Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their alternative claim for negligent misrepresentation against GreatBanc Trust  Company state as follows:

81.     Defendants/Third-Party Claimants re-allege and incorporate by reference herein Paragraphs 1 through 80 of their allegations set forth above.

82.     Throughout this filing, as supported by Defendants'/Third-Party Claimants' Answer, Counterclaims, Cross-claims and Third-Party Claims set forth above, and the attached exhibits, neither Bidwill nor Rand have any liability to Plaintiffs or any other party to these proceedings under any viable legal theory.  Moreover, any claims against them are barred by the applicable statute of limitations or statute of repose.  As a consequence,  Plaintiffs' claims against Defendants/Third-Party Claimants should be dismissed in their entirety, individually and as to any putative class.

83.     However, to the extent that Plaintiffs are able to prove their allegations that 1) certain selling shareholders "caused" or "directed" the CQ ESOP to enter into the transaction (rather than GreatBanc Trust), 2) caused the CQ ESOP to pay more than fair market value, and 3) the valuation report" was based on unreliable and unrealistic financial projections," and Defendants/Third-Party Claimants are found liable to the Plaintiffs and any putative class, Defendants/Third-Party Claimants are entitled to judgment from this Court against GreatBanc Trust for negligent misrepresentation, particularly if, as suggested by Plaintiffs, GreatBanc Trust does not qualify as a fiduciary for the CQ ESOP.

84. Under the Independent Fiduciary Engagement Agreement, GreatBanc Trust was appointed "for the purpose of evaluating, and directing the Trustee whether to accept, the Offer", which such appointment was accepted by GreatBanc Trust. Exhibit 1, § 1, CQ-001984.

85. Additionally, GreatBanc Trust represented it would "engage the services of a qualified independent financial advisor, who will report directly to [GreatBanc Trust] and ***not to the Company or its shareholders***." Exhibit 1, § 5, CQ-001985. (Emphasis added).

86. Pursuant to its role as independent fiduciary, GreatBanc Trust issued a "**Direction of GreatBanc Trust Company as Independent Fiduciary**" that directed co-trustees of the ESOP Jeffrey Watson and Robert Barrows to go through with the 2012 Transaction. Exhibit 18.  The Direction provided that "[t]his direction of GreatBanc Trust Company as Independent Fiduciary to Jeffrey Watson and Robert Barrows pursuant to the Trust Agreement for the Casino Queen Employee Stock Ownership Plan, is provided to ***and shall be acted and relied upon*** by the Directed Trustee [Jeffrey Watson and Robert Barrows,] in connection with the execution and delivery of the agreements, documents and resolutions listed below." Exhibit 18, CQ-002869. (Emphasis added).

87. Specifically, the Direction provided that GreatBanc Trust "certifies to Directed Trustee that it has received, reviewed and evaluated the attached opinions from its financial advisor, has determined that reliance upon those opinions would be consistent with Undersigned's fiduciary duties under ERISA, has consulted with its financial advisor and its legal counsel and has determined that (i) the price to be paid by the ESOP does not exceed 'fair market value' as such term is defined for purposes of ERISA, (ii) the interest rate set forth in ESOP Note referenced below does not exceed a fair market interest rate; (iii) all of the requirements necessary for the transactions directed to be taken pursuant to this Direction either (x) to qualify as an exemption

from constituting, or (y) not constituting, prohibited transactions under ERISA or the Internal Revenue Code of 1986 are met, and (iv) issuance of these Directions does not constitute a breach of Undersigned's fiduciary duties under ERISA." Exhibit 18, CQ-002869.

88.     Section 3 of the Great Banc IF Agreement provides that "The Independent Fiduciary **shall conduct such due diligence** in negotiations related to the Transaction as it, **in its sole discretion**, deems appropriate and necessary for it to determine whether to direct the Trustee to accept the Offer." Exhibit 1, § 3, CQ-001985.  To the extent that Plaintiffs' allegations are true (which allegations have been denied by Defendants/Third-Party Claimants), then GreatBanc Trust's representations that it would conduct due diligence in its sole discretion were materially false representations of material fact.

89.     Thus, to the extent that Plaintiffs' allegations are proven to be true, then GreatBanc falsely represented that it would act as "Independent Trustee," and that it alone would provide the directions as to whether CQH should enter into the CQH stock sale transaction with the CQ ESOP.

90.     In the July 13 Chartwell Engagement, Chartwell also agreed that it would provide an appraisal report meeting the requirements of the Standards Rule 10-2(a) of the Uniform Standards of Professional Appraisal Practice and the requirements of ERISA and the Internal Revenue Code related to independent appraisals for ESOP purposes.  The Chartwell agreement also provided that its valuation approaches would be explored as outlined in the "*Business Valuation Standards*" of the American Society of Appraisers.

91.     To the extent that Plaintiffs' allegations that the CQH shares purchased by the CQ ESOP were undervalued in the amounts alleged by Plaintiffs, then the suggestion that the valuations were prepared in accordance with the requirements of the Standards Rule 10-2(a) of the Uniform Standards of Professional Appraisal Practice, the "*Business Valuation Standards*" of the

American Society of Appraisers the requirements of ERISA, and the requirements of the Internal Revenue Code related to independent appraisals for ESOP purposes were materially false representations.

92.     To the extent that Plaintiffs' allegations regarding undervaluation are proven, neither of the Defendants/Third-Party Claimants was aware of any undervaluation, nor would they have had any reason to be aware of the fact that there were claimed flaws in any such valuation.

93.     As stated above, GreatBanc Trust is a nationally-recognized institutional trustee that has represented hundreds of ESOPs in transactions related to the creation of ESOPs, the valuation of ESOP transactions, and the sale of company stock to ESOPs.

94.     GreatBanc Trust is in the business of supplying information for guidance of others in their business dealings, specifically, GreatBanc is in the business of supplying information to entities considering establishing employee stock ownership plans.

95.     Aside from the representations set forth above, GreatBanc Trust also specifically stated in the direction that "the price to be paid by the ESOP d[id] not exceed 'fair market value' as such term is defined for purposes of ERISA." Exhibit 18, CQ-002869.  To the extent the price to be paid is determined to have exceeded fair market value, this statement was a materially false statement.

96.     GreatBanc Trust also stated that "all of the requirements necessary for the transactions directed to be taken pursuant to th[e] Direction either (x) qualif[ied] as an exemption from constituting, or (y) [did] not constitut[e], prohibited transactions under ERISA . . . ." Exhibit 18, CQ-002869.  To the extent Defendants/Third-Party Claimants are found to have engaged in prohibited transactions, this statement was a materially false statement.

97.     GreatBanc Trust provided this Direction after relying on valuations provided by financial advisors that it sought out and retained pursuant to the Independent Fiduciary Engagement Agreement.  To the extent, as alleged by Plaintiffs, these valuations did not accurately and properly value the stock, GreatBanc Trust's reliance on these valuations in providing the Direction, and/or failure to conduct proper due diligence as it related to those valuations and/or misrepresentations, constituted negligence and/or carelessness.

98.     Not only did the Direction intend to induce co-trustees Jeffrey Watson and Robert Barrows to go through with the 2012 Transaction, it mandated that any co-trustees (if, as alleged by Plaintiffs, Defendants/Third-Party Claimants qualified as such) go through with the 2012 Transaction pursuant to the express language in the Direction.

99.     The co-trustees (if, as alleged by Plaintiffs, Defendants/Third-Party Claimants qualified as such) were obligated to follow GreatBanc Trust's Direction, and would have acted on that Direction by going through with the 2012 Transaction.

100.    As a result of GreatBanc Trust's actions, and to the extent Plaintiffs allegations are proven true,  Defendants/Third-Party Claimants have been damaged.

WHEREFORE, Defendants/Third-Party Claimants pray for judgment from this Court for negligent misrepresentation against GreatBanc Trust.

**COUNT VIII—ALTERNATIVE DECLARATION THAT DEFENDANTS/THIRD PARTY CLAIMANTS, TO THE EXTENT THEY ARE DEEMED ERISA FIDUCIARIES OR ARE OTHERWISE FOUND LIABLE TO PLAINTIFFS, THEN THE COURT SHOULD DECLARE THAT MICHAEL GAUGHAN AND PHILIP KENNY ARE LIABLE TO THEM FOR CONTRIBUTION AND/OR INDEMNITY AND/OR THE COURT SHOULD APPORTION LIABILITY ACCORDINGLY**

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs Charles Bidwill III and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively, "Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their

alternative claim Third-Party Claim for declaratory relief directed to Michael Gaughan and Philip Kenny, state as follows:

101.    Defendants/Third Party Claimants re-allege and incorporate by reference herein Paragraphs 1 through 100 of their allegations set forth above.

102.    Throughout this filing, as supported by Defendants'/Third-Party Claimants' Answer, Counterclaims, Cross-claims and Third-Party Claims set forth above, and the attached exhibits, neither Bidwill nor Rand have any liability to Plaintiffs or any other party to these proceedings under any viable legal theory.  Moreover, any claims against them are barred by the applicable statute of limitations or statute of repose.  As a consequence,  Plaintiffs' claims against Defendants/Third-Party Claimants should be dismissed in their entirety, individually and as to any putative class.

103.    However, to the extent that Defendants/Third-Party Claimants are found liable to the Plaintiffs and any putative class, Defendants/Third-Party Claimants are entitled to a declaration from this Court that they are entitled to indemnification or contribution against Michael Gaughan ("Gaughan) and Philip Kenny ("Kenny"), as Kenny is also a CQI Board member who also served as a CQI Board Member, and Gaughan's CQI shareholder interest was represented on the CQI Board by Michael Kravolec, whose actions as a CQI Board member were controlled fully by Gaughan, and whose knowledge regarding any claimed improprieties and claimed control over Watson and Barrows would have been the same as that alleged by Plaintiffs as to Defendants/Third-Party Claimants in their roles as CQI Board members and such would thereby be imputed to Gaughan.

104.    Thus, to the extent Defendants/Third-Party Claimants are found to be fiduciaries to the CQ ESOP, Gaughan and Kenny should likewise be deemed co-fiduciaries, or non-fiduciaries

who assisted in a breach of fiduciary duty and would liable for contribution and/or indemnity to Defendants/Third-Party Claimants as co-fiduciaries.

105.    Specifically, to the extent Defendants/Third-Party Claimants are deemed fiduciaries with knowledge of a breach of fiduciary duty by another fiduciary, Gaughan and Kenny are likewise liable to Defendants Rand and Bidwill as fiduciaries with knowledge of a breach of fiduciary duty by another fiduciary based on their similarly situated positions as CQI Board member, participation on Board meetings relating to the creation of the CQ ESOP, and based on their knowledge of any breaches of fiduciary duty and the fact that they also exchanged their CQI shares for CQH shares and were paid for those shares.

106.    To the extent Defendants/Third-Party Claimants are found to be liable based on involvement and participation in financial projections, Gaughan and Kenny are likewise liable to Defendants/Third-Party Claimants for their involvement and participation in financial projections to the extent plaintiffs could prove that those financial projections were inaccurate or that the CQI Board members knew they were inaccurate.

107.    To the extend Defendants/Third-Party Claimants are found liable based on a responsibility to monitor company management, Gaughan and Kenny are likewise liable to Defendants/Third-Party Claimants based their responsibility to monitor company management as a CQI Board member or, in the case of Gaughan, his control over a CQI Board member.

108.    To the extent Defendants/Third-Party Claimants are found liable based on a knowledge that the financial information relied upon to value CQI stock was inaccurate or that the valuations overvalued CQI stock, Gaughan and Kenny are likewise liable to Defendants/Third-Party Claimants based on similar knowledge that the financial information relied upon to value CQI stock was inaccurate or that the valuations overvalued CQI stock and/or based on their

knowing participation in any breaches of fiduciary duty as CQI Board members or CQ ESOP trustees.

109.    In addition, as to Gaughan and Kenny, Defendants/Third-Party Claimants are entitled to a declaration regarding apportionment of liability as between those parties and Gaughan and Kenny to the extent they are found liable to Plaintiffs.

WHEREFORE Defendants/Third-Party Claimants pray for judgment from this Court that: a) to the extent that Defendants/Third-Party Claimants are found liable to the Plaintiffs and any putative class, Defendants/Third-Party Claimants are entitled to a judgment from this Court for indemnification or contribution against Gaughan and Kenny; and b) in that event, there should be an apportionment of liability as between those parties and Gaughan and Kenny.

### COUNT IX-ALTERNATIVE JUDGMENT FOR CONTRIBUTION AND/OR INDEMNITY AND/OR APPORTIONMENT OF LIABILITY AGAINST GAUGHAN AND KENNY

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs Charles Bidwill III and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively, "Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their alternative claim Third-Party Claim for judgment against Michael Gaughan and Philip Kenny state as follows:

110.    Defendants/Third-Party Claimants re-allege and incorporate by reference herein Paragraphs 1 through 109 of their allegations set forth above.

111.    Throughout this filing, as supported by Defendants'/Third-Party Claimants' Answer, Counterclaims, Cross-claims and Third-Party Claims set forth above, and the attached exhibits, neither Bidwill nor Rand have any liability to Plaintiffs or any other party to these proceedings under any viable legal theory.  Moreover, any claims against them are barred by the

applicable statute of limitations or statute of repose.  As a consequence,  Plaintiffs' claims against Defendants/Third-Party Claimants should be dismissed in their entirety, individually and as to any putative class.

112.    However, to the extent that Defendants/Third-Party Claimants are found liable to the Plaintiffs and any putative class, Defendants/Third-Party Claimants are entitled to a declaration from this Court that they are entitled to indemnification or contribution against Michael Gaughan ("Gaughan") and Philip Kenny ("Kenny"), as Kenny is also a CQI Board member who also served as a CQI Board Member, and Gaughan's CQI shareholder interest was represented on the CQI Board by Michael Kravolec, whose actions as a CQI Board member were controlled fully by Gaughan, and whose knowledge regarding any claimed improprieties and claimed control over Watson and Barrows would have been the same as that alleged by Plaintiffs as to Defendants/Third-Party Claimants in their roles as CQI Board members and such knowledge would thereby be imputed to Gaughan.

113.    Thus, to the extent Defendants/Third-Party Claimants are found to be fiduciaries to the CQ ESOP, Gaughan and Kenny should likewise be deemed co-fiduciaries, or non-fiduciaries who assisted in a breach of fiduciary duty and would liable for contribution and/or indemnity to Defendants/Third-Party Claimants as co-fiduciaries.

114.    Specifically,  to  the  extent  Defendants/Third-Party  Claimants  are  deemed fiduciaries with knowledge of a breach of fiduciary duty by another fiduciary, Gaughan and Kenny are likewise liable to Defendants Rand and Bidwill as fiduciaries with knowledge of a breach of fiduciary duty by another fiduciary based on their similarly situated positions as CQI Board member, participation on Board meetings relating to the creation of the CQ ESOP, and based on

their knowledge of any breaches of fiduciary duty and the fact that they also exchanged their CQI shares for CQH shares and were paid for those shares.

115.    To the extent Defendants/Third-Party Claimants are found to be liable based on involvement and participation in financial projections, Gaughan and Kenny are likewise liable to Defendants/Third-Party Claimants for their involvement and participation in financial projections to the extent plaintiffs could prove that those financial projections were inaccurate or that the CQI Board members knew they were inaccurate.

116.    To the extend Defendants/Third-Party Claimants are found liable based on a responsibility to monitor company management, Gaughan and Kenny are likewise liable to Defendants/Third-Party Claimants based their responsibility to monitor company management as a CQI Board member or, in the case of Gaughan, his control over a CQI Board member.

117.    To the extent Defendants/Third-Party Claimants are found liable based on a knowledge that the financial information relied upon to value CQI stock was inaccurate or that the valuations overvalued CQI stock, Gaughan and Kenny are likewise liable to Defendants/Third-Party Claimants based on similar knowledge that the financial information relied upon to value CQI stock was inaccurate or that the valuations overvalued CQI stock and/or based on their knowing participation in any breaches of fiduciary duty as CQI Board members or CQ ESOP trustees.

118.    In addition, as to Gaughan and Kenny, Defendants/Third-Party Claimants are entitled to a judgment regarding apportionment of liability as between those parties and Gaughan and Kenny to the extent they are found liable to Plaintiffs.

WHEREFORE, Defendants/Third-Party Claimants pray for judgment from this Court that: a) to the extent that Defendants/Third-Party Claimants are found liable to the Plaintiffs and any

putative class, Defendants/Third-Party Claimants are entitled to a judgment from this Court for indemnification or contribution against Gaughan and Kenny; and b) in that event, there should be an apportionment of liability as between those parties and Gaughan and Kenny.

**COUNT X - ALTERNATIVE DECLARATION THAT DEFENDANTS/CROSS CLAIMANTS, TO THE EXTENT THEY ARE DEEMED ERISA FIDUCIARIES OR ARE OTHERWISE FOUND LIABLE TO PLAINTIFFS, THEN THE COURT SHOULD DECLARE THAT JAMES G. KOMAN IS LIABLE TO THEM FOR CONTRIBUTION AND/OR INDEMNITY AND/OR THE COURT SHOULD APPORTION LIABILITY**

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs Charles Bidwill III and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively, "Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their alternative claim for Declaratory relief directed to James G. Koman state as follows:

119.    Defendants/Third-Party Claimants re-allege and incorporate by reference herein Paragraphs 1 through 118 of their allegations set forth above.

120.    Throughout this filing, as supported by Defendants'/Third-Party Claimants' Answer, Counterclaims, Cross-Claims and Third-Party Claims set forth above, and the attached exhibits, neither Bidwill nor Rand have any liability to Plaintiffs or any other party to these proceedings under any viable legal theory.  Moreover, any claims against them are barred by the applicable statute of limitations or statute of repose.  As a consequence, Plaintiffs' claims against Defendants/Third-Party Claimants should be dismissed in their entirety, individually and as to any putative class.

121.    However, to the extent that Defendants/Third-Party Claimants are found liable to the Plaintiffs and any putative class, Defendants/Third-Party Claimants are entitled to a declaration from this Court that they are entitled to indemnification or contribution from Koman.

122.     In addition, and in the alternative, as to Koman, Defendants/Third-Party Claimants are entitled to a declaration that there should be an apportionment of liability as between those parties and Koman.

WHEREFORE, Defendants/Cross Claimants pray for a declaration from this Court that: a) to the extent that Defendants/Cross Claimants are found liable to the Plaintiffs and any putative class, Bidwill and Koman are entitled to a declaration from this Court that they are entitled to indemnification or contribution against Koman; and b) in that event, there should be an apportionment of liability as between those parties and Koman.

### COUNT XI - ALTERNATIVE JUDGMENT FOR CONTRIBUTION AND/OR INDEMNITY AND/OR APPORTIONMENT OF LIABILITY AGAINST JAMES G. KOMAN

COME NOW Defendants/Counterclaim Plaintiffs/Cross-Claimants/Third-Party Plaintiffs Charles Bidwill III and Timothy J. Rand (individually, "Bidwill" and "Rand", collectively, "Defendants/Third-Party Claimants"), by and through undersigned counsel, and for their alternative claim for judgment directed to James G. Koman state as follows:

123.     Defendants/Third-Party Claimants re-allege and incorporate by reference herein Paragraphs 1 through 122 of their allegations set forth above.

124.     Throughout this filing, as supported by Defendants'/Third-Party Claimants' Answer, Counterclaims, Cross-Claims and Third-Party Claims set forth above, and the attached exhibits, neither Bidwill nor Rand have any liability to Plaintiffs or any other party to these proceedings under any viable legal theory.  Moreover, any claims against them are barred by the applicable statute of limitations or statute of repose.  As a consequence,  Plaintiffs' claims against Defendants/Third-Party Claimants should be dismissed in their entirety, individually and as to any putative class.

125.     However to the extent that Defendants/Third-Party Claimants are found liable to the Plaintiffs and any putative class, Defendants/Third-Party Claimants are entitled to judgment from this Court that they are entitled to indemnification or contribution from Koman.

126.     In addition, and in the alternative, as to Koman, Defendants/Third-Party Claimants are entitled to a judgment of apportionment of liability as between those parties and Koman.

WHEREFORE, Bidwill and Rand pray for judgment from this Court that:  a) to the extent that Defendants/Cross Claimants are found liable to the Plaintiffs and any putative class, Bidwill and Rand are entitled to a judgment from this Court for indemnification or contribution against Koman; and b) there should be an apportionment of liability as between those parties and Koman.

Dated: May 19, 2022                                      **LEWIS RICE LLC**

                                                    By:  */s/  Ronald A. Norwood*
                                                         Ronald A. Norwood, #06197900
                                                         Apollo Carey, #06291448
                                                         600 Washington Avenue
                                                         Suite 2500
                                                         St. Louis, Missouri  63101
                                                         (314) 444-7759 (Telephone)
                                                         (314) 612-7759 (Facsimile)
                                                         rnorwood@lewisrice.com
                                                         acarey@lewisrice.com

                                                         *Attorneys for Defendants/Counterclaim Plaintiffs/*
                                                         *Cross-Claimants/Third-Party Claimants*
                                                         *Charles Bidwill III and Timothy J. Rand*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was filed via the Court's Electronic Filing System on this 19th day of May, 2022.

*/s/ Ronald A. Norwood*