IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOM HENSIEK, *et al.*,<br>    Plaintiffs,<br>vs.<br><br>BD. OF DIRECTORS OF CASINO QUEEN<br>HOLDING CO., INC., *et. al.*,<br>    Defendants.<br>_____<br>BD. OF DIRECTORS OF CASINO QUEEN<br>HOLDING CO., INC., *et. al.*,<br>    Crossclaim/Third-Party Plaintiffs,<br>vs.<br><br>CHARLES BIDWILL, III, *et al.*,<br>    Crossclaim/Third-Party Defendants.<br>_____<br>CHARLES BIDWILL, III,<br>TIMOTHY J RAND,<br>    Defendants/Counterclaimants,<br>    Crossclaim/Third Party Plaintiffs,<br>vs.<br><br>TOM HENSIEK, *et. al.*,<br>    Counterclaim/Crossclaim/Third-Party<br>    Defendants.<br>_____<br>JAMES G. KOMAN,<br>    Crossclaim Plaintiff,<br>vs.<br><br>BD. OF DIRECTORS OF CASINO QUEEN<br>HOLDING CO., INC., *et al.*<br>    Crossclaim Defendants.<br>_____ | Case No. 20-cv-377-DWD |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

    Now before the Court are Defendants Charles Bidwill III and Timothy J. Rand's

1

Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. 155) and Defendant James G. Koman's Motion for Judgment on the Pleadings (Doc. 159).

## Background

Plaintiffs Tom Hensiek, Jason Gill, and Lillian Wrobel bring this action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"), on behalf of a proposed class of participants and beneficiaries in the Casino Queen Employee Stock Ownership Plan ("ESOP"), an ERISA-protected retirement plan. Plaintiffs are former employees of Casino Queen Hotel & Casino, and participants and beneficiaries of the ESOP. Plaintiffs filed this putative class action in 2020 on behalf of themselves and all other participants in the ESOP. In January 2022, the Court denied Defendants' motion to dismiss for failure to state a claim. (Doc. 118). In April 2022, Plaintiffs filed an amended complaint, adding several new defendants whom Plaintiffs claim were former shareholders of CQI and "parties in interest" under 29 U.S.C. § 1002(14) (Doc. 144, ¶¶ 64-66). Bidwill and Rand now move to dismiss the Amended Complaint for a lack of subject-matter jurisdiction, arguing that ERISA's statute of repose, 29 U.S.C. § 1113, bars Plaintiffs' lawsuit as untimely. Koman, however, moves for judgment on the pleadings.

## The Amended Complaint

For the purposes of this motion, the following facts as alleged in the Amended Complaint are taken as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). In 1993, Casino Queen, Inc., f/k/a Arch Paddle Boat Company opened the Casino Queen Hotel & Casino, a riverboat gambling house, in the East St. Louis, Illinois area. Casino Queen

2

moved on land in 2007.  Defendants Bidwill, Rand, and Koman are alleged founders and board members of Casino Queen, Inc. ("CQI") and its subsequent holding company, Casino Queen Holding Company, Inc. ("CQH") (Doc. 144, ¶¶ 2, 41-42, 49, 72, 73).  In addition to Bidwill, Rand, and Koman, CQI was founded by two other family groups, the Kenny Family, and the Gaughan/Toti group (Doc. 144, ¶ 2).  Prior to the transactions at issue in this case, each of the five groups owned an equal portion of CQI (20%) and controlled one of the five seats on the CQI Board of Directors (Doc. 144, ¶¶ 2, 72). Plaintiffs refer to these five family groups collectively as the "Selling Shareholders" (Doc. 144, ¶ 2).  Prior to 2012, the CQI Board Members consisted of Koman, Bidwill, Rand, Patrick and Phillip Kenny (who served at different times) and Michael Gaughan and Michael Kravolex (who served at different times) (Doc. 144, ¶ 73).

While initially successful, Casino Queen's revenue suffered when other casinos opened nearby, prompting the owners to sell the casino.  From 2005 to 2011, the Selling Shareholders attempted to sell Casino Queen to various third parties but were not successful.  Then, in 2012 and 2013, the owners sold Casino Queen and its assets in four general steps:

*First*, in October 2012, the Selling Shareholders created Casino Queen Holding Company, Inc. ("CQH"), a holding company for CQI (Doc. 144, ¶ 79).  The Selling Shareholders exchanged their CQI stock for CQH stock and placed three former CQI Board Members on the newly formed CQH Board (*Id.*).  Around this time, Defendants Koman, Bidwill, Rand, Watson, and Barrows served as members of the CQH Board (Doc. 144, ¶¶ 41-42).

3

*Second*, in December 2012, the CQH Board of Directors, acting for CQH as the plan sponsor, and in coordination with the Selling Shareholders, established the Casino Queen Employee Stock Ownership Plan (the "ESOP") to purchase 100% of the then-outstanding CQH stock from the Selling Shareholders (Doc. 144, ¶ 81). The CQH Board continued to exercise power and control over the ESOP by retaining the sole authority to appoint and remove members of the ESOP's leadership, including the ESOP's Co-Trustees and members of the Administrative Committee (Doc. 144, ¶¶ 45-49). Specifically, the CQH Board appointed two of their own board members, Watson and Barrows, to be the Co-Trustees of the ESOP (Doc. 144, ¶ 45). This permitted the Board to direct the Co-Trustees to vote unallocated shares of CQH Stock (Doc. 144, ¶ 125). Further, the Board did not appoint any members to the ESOP's Administrative Committee, ensuring that the Board Members were vested with the powers of the Administrative Committee (Doc. 144, ¶¶ 47-49). These powers included administrating all aspects of the Plan, preparing, and distributing account statements to the ESOP participants and filing reports with the Department of Labor (Doc. 144, ¶ 48).

*Third*, on December 26, 2012, and under the direction of the Co-Trustees, the ESOP purchased all outstanding CQH stock from the Selling Shareholders for a sum of $170 million[1] (Doc. 144, ¶ 81). To facilitate the stock purchase, the ESOP borrowed $130 million in secured debt from Wells Fargo, $15 million from a third party, and $25 million from the Selling Shareholders through CQH and CQI (*Id.*). CQH guaranteed the debt

---

[1] Plaintiffs allege that they were told that Casino Queen had been sold for $170 million but that it was actually worth $174 million. (Doc. 144 at ¶ 101).

(Doc. 144, ¶¶ 115-116). Prior to the stock purchase, CQH had outstanding debt of approximately $35 million (Doc. 144, ¶ 80).

*Fourth*, in 2013, the ESOP sold "substantially all of" Casino Queen's real property to a third-party, Gaming and Leisure Properties, Inc. ("GLPI") for $140 million (the "2013 Real Property Transaction") (Doc. 144, ¶¶ 125-129). CQH then agreed to lease the same property back from GLPI for $210 million, to be paid over 15 years (Doc. 144 at ¶ 130), despite the real property only having a tax-assessed value of about $12.1 million (Doc. 144, ¶¶ 131, 133). This transaction was made on behalf of the Board of Directors and CQH without regard to how any of the employees would vote because at that time, the majority of CHQ's stock (which was now owned by the ESOP) was unallocated and thus voted on by the Co-Trustees who had the power to vote unallocated shares under the Plan (Doc. 144, ¶¶ 125-127). The asset sale provided CQH and the ESOP with cash to pay off the ESOP's outstanding loans from the 2012 stock purchase, including the loans owed to the Selling Shareholders (Doc. 144, ¶¶ 134-135).

Plaintiffs allege that the 2012 Stock Purchase and 2013 Asset Sale were conducted in violation of the Defendant's fiduciary duties under ERISA. Specifically, as to the 2012 Stock Purchase, Plaintiffs allege that the ESOP paid significantly more than fair market value for the stock, which was the ESOP's only asset. Plaintiffs maintain that the price the ESOP paid for the CQH stock was dramatically inflated based on financial projections of Casino Queen's future profitability. They further contend that the Board of Directors knew or should have known this price was unrealistic because the Selling Shareholders had tried unsuccessfully for years to sell Casino Queen, and because Defendants knew

5

that Casino Queen's revenue had dropped significantly due to the decreasing market share it held as more competitors grew in the area (Doc. 144, ¶¶ 108-111).

Further, as to the 2013 Asset Sale, Plaintiff claims the sale was based on unfavorable financial terms for the ESOP and the company because it requires the Company to pay $14 million annually in rent, in addition to all property expenses, when the real property is only valued at $12.1 million (Doc. 144, ¶ 133). Plaintiffs thus maintain that the Asset Sale "left Casino Queen as a shell of a company that did not own any real property assets and which did not have sufficient cash flow to service its remaining debts." (Doc. 144, ¶ 144). Plaintiffs contend that the purpose for the Asset Sale was to refinance the ESOP's debt and expedite the repayment of the Selling Shareholders' loans (Doc. 144, ¶ 145), which were fully repaid in 2014 (Doc. 144, ¶¶ 145-46). Shortly after the loans were repaid, Defendants Bidwill, Rand, and Koman relinquished their CQH Board memberships (Doc. 144, ¶¶ 145-46).

Plaintiffs also allege that they exercised due diligence in reviewing their annual account balances and attending employee meetings concerning the ESOP, but that Defendants actively concealed their ERISA violations by misrepresenting the terms of the transactions or the effects of the transactions on the value of the stock. Plaintiffs provide three examples of these misrepresentations. First, at various mandatory employee meetings, the Co-Trustees told employees, including Plaintiffs, that the ESOP would provide significant retirement saving and wealth for participants (Doc. 144, ¶¶ 148-150). Second, Defendants misreported the price of the CQH stock and the amount of debt the ESOP acquired to complete the 2012 Transaction in the ESOP's required annual filings

6

with the Department of Labor (the "Form 5500s") (Doc. 144, ¶¶ 152-170).  Third, Defendants misrepresented the growth of Casino Queen's value to the ESOP participants in annual reports produced by Defendants and distributed to the ESOP participants (Doc. 144, ¶¶ 171-175).  Because of Defendants' efforts to conceal material facts, Plaintiffs did not learn of Defendants' breaches of fiduciary duty until 2019 (Doc. 144, ¶ 181).

## Legal Standards

### Fed. R. Civ. P. 12(b)(1)

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction, the Court should generally accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See, e.g. St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).  On such a motion, the Court is not bound to accept the truth of the complaint's allegations but may look beyond the complaint and the pleadings to evidence that calls the Court's jurisdiction into doubt. *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000).

### Fed. R. Civ. P. 12(c)

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The pleadings for purposes of a Fed. R. Civ. P. 12(c) motion include the complaint, the answer, and any written instruments attached to the pleadings as exhibits. *See N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The main difference between a Fed. R. Civ. P. 12(c) motion and a motion to dismiss for failure to state a claim under

Fed. R. Civ. P. 12(b)(6) is that the latter may be filed before an answer to a complaint is filed, whereas a Fed. R. Civ. P. 12(c) motion may be filed "after the pleadings are closed but within such time as not to delay the trial." *Id*. at 452 n.3 (quoting Fed. R. Civ. P. 12(c)). Otherwise, however, a Fed. R. Civ. P. 12(c) motion is evaluated "under the same standard as a motion to dismiss under [Rule 12(b)(6)]." *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995).

Thus, in ruling on a motion for judgment on the pleadings, the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). Likewise, the court must "view the facts in the complaint in the light most favorable to the nonmoving party." *GATX Leasing Corp.*, 64 F.3d at 1114. A court may "grant a Fed. R. Civ. P. 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *N. Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452 (quoting *Craigs, Inc. v. Gen. Elec. Cap. Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)).

## I. **Bidwill and Rand's Motion to Dismiss (Doc. 155)**

Defendants Bidwill and Rand argue that 29 U.S.C. § 1113 bars Plaintiffs' lawsuit as untimely. Section 1113 is a statute of repose requiring that ERISA actions be brought within six years of the last alleged breach or violation. The statute provides an exception for cases of fraud or concealment when an action must be brought within six years "after the date of *discovery* of such breach or violation." 29 U.S.C. § 1113 (emphasis added). Bidwill and Rand—along with Defendant Koman—have already attacked Plaintiffs' complaint on this basis in a Fed. R. Civ. P. 12(b)(6) motion that the Court denied. (Docs.

8

48, 118). They now raise the statute again in a factual attack under Rule 12(b)(1), arguing that the statute of repose is a jurisdictional matter.

Were § 1113 a matter of jurisdiction, Bidwill and Rand's procedural posture would be proper. Bidwill and Rand may have already raised (and lost) an argument under § 1113 in their Rule 12(b)(6) motion, but the prior motion does not bar their Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. "Subject-matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself." *Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008). And a party making a Fed. R. Civ. P. 12(b)(1) motion may make a factual challenge to jurisdiction, unlike a Fed. R. Civ. P. 12(b)(6) motion which permits only a facial challenge to the sufficiency of the complaint. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). When a party brings a factual challenge to jurisdiction under Rule 12(b)(1), the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* at 444 (quoting *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008)).

But, as Plaintiffs argue, § 1113 is not jurisdictional. "The Seventh Circuit has clearly held that 'limitations statutes setting deadlines for bringing suit in federal court are not jurisdictional.'" *Perez v. PBI Bank, Inc.*, 69 F. Supp. 3d 906, 909 (N.D. Ind. 2014) (quoting *Miller v. F.D.I.C.*, 738 F.3d 836, 843 (7th Cir. 2013)). "So when a case is dismissed based on a statute of limitations, that is a dismissal on the merits under Rule 12(b)(6)." *Id.* (citing *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005)). And the same is true of statutes of repose.

9

*See Doss v. Clearwater Title Co.*, 551 F.3d 634, 638 (7th Cir. 2008) (in a case brought under the Truth in Lending Act, holding that dismissal based on a statute of repose is dismissal on the merits, not dismissal for lack of jurisdiction).

As Plaintiffs point out, Defendants only cite to two cases for the proposition that the § 1113 statute of repose is jurisdictional. The first case, *Perez v. Preston*, No. 1:14-CV-4122-WBH, 2016 WL 10537020 (N.D. Ga. May 2, 2016), found that the statute of repose is jurisdictional but was later corrected by the Eleventh Circuit, which expressly held that "29 U.S.C. § 1113(1)'s limitations period is not jurisdictional." *Sec'y, U.S. Dep't of Lab. v. Preston*, 873 F.3d 877, 881 (11th Cir. 2017). In the second case, *Harris v. Bruister*, No. 4:10CV77-DPJ-FKB, 2013 WL 6805155, at *6 (S.D. Miss. Dec. 20, 2013), the court found that the § 1113 statute of repose is jurisdictional. But *Harris* is a non-binding opinion that runs contrary to the principles articulated by the Seventh Circuit and by the two Courts of Appeals that have directly addressed this specific issue. *See, e.g., Secretary, U.S. Department of Labor*, 873 F.3d at 881; *Browe v. CTC Corp.*, 15 F.4th 175, 191 (2d Cir. 2021) (citing *Secretary, U.S. Department of Labor*, 873 F.3d at 883–88) (holding that "statutes of limitations and repose are both non-jurisdictional claims-processing rules"). For these reasons, the Court finds that § 1113 is not a limitation on subject-matter jurisdiction.

Because § 1113 is not jurisdictional, it is not an appropriate basis for a motion under Rule 12(b)(1). Instead, it is an argument that should be made in a motion to dismiss under Rule 12(b)(6), as Bidwill and Rand already have. Anticipating this possible ruling, Bidwill and Rand have asked the Court to treat their motion as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), if the Court should find that § 1113 is not

jurisdictional. A Fed. R. Civ. P. 12(b)(1) motion that raises a nonjurisdictional issue can be construed as having been brought under Rule 12(b)(6). *See Miller v. Herman*, 600 F.3d 726, 732–33 (7th Cir. 2010). Rule 12(d) permits a court to convert a Fed. R. Civ. P. 12(b)(6) motion into a motion for summary judgment if the motion presents—and the court does not exclude—material outside the pleadings. Here, Bidwill and Rand's motion references evidence attached to their answer and to the motion itself in support of their arguments. They further ask the Court to consider additional documents attached to their Motion to Supplement (Doc. 393).

Plaintiffs do not address Bidwill and Rand's Rule 12(d) request directly, but they do argue that they are entitled to additional discovery before the Court rules on this motion. Plaintiffs argue that there is significant overlap between discovery related to § 1113's "fraud or concealment" provision and the merits discovery. The Court agrees that Plaintiffs should have additional time to complete discovery before considering summary judgment arguments.  For this reason, the Court declines to consider the materials referenced in and attached to Bidwill and Rand's motion and will not convert the motion to a motion for summary judgment under Rule 12(d).  Likewise, the Court declines to consider the additional evidence supplied in Bidwill and Rand's motion to supplement (Doc. 393).  For these reasons, Bidwill and Rand's Motion to Dismiss (Doc. 155) and Motion to Supplement (Doc. 393) are **DENIED**.

      II.     <u>**Koman's Motion for Judgment on the Pleadings (Doc. 159)**</u>

Koman makes three general arguments in favor of judgment on the pleadings (Doc. 160).  First, he argues that he was not a fiduciary of the ESOP and lacked any

11

authority to cause the transactions at issue in this case. Second, he argues that he did not participate in any of the alleged concealment efforts and had no authority to cause the CQH Board to take any of the actions which allegedly concealed the ERISA violations. Finally, Koman argues that the non-fiduciary claims against him must fail because they are derivative of the fiduciary claims.

Koman's arguments rely heavily on exhibits attached to his answer (Doc. 157). Normally, when a Fed. R. Civ. P. 12(b)(6) or 12(c) motion presents "matters outside the pleadings" and the court does not exclude them, the motion must be treated as a Rule 56 motion for summary judgment. Fed. R. Civ. P. 12(d). But, "when a complaint refers to and rests on a contract or other document that is not attached to the complaint, a court might be within its rights to consider that document in ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss the complaint without converting the motion into one for summary judgment, so long as the authenticity of the document is unquestioned." *Minch v. City of Chicago*, 486 F.3d 294, 300 n.3 (7th Cir. 2007) (citing *Tierney v. Vahle*, 304 F.3d 734, 738–39 (7th Cir. 2002)). The Seventh Circuit has taken a "relatively liberal" approach to this exception. *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

The documents attached to Koman's answer and referenced throughout his Rule 12(c) motion are corporate documents of CQI and CQH, including:

| Doc. No. | Document Title |
|---|---|
| 157-1 | Declaration of Attorney Andrew D. Salek-Raham declaring that Exhibits A-Z are true and correct copies of the corporate documents |
| 157-2 | **Exhibit A:** Unanimous Written Consent of the Board of Directors of CQI dated October 2, 2012 |

| 157-3 | **Exhibit B**: Certificate of Incorporation of CQH dated September 26, 2012 |
|---|---|
| 157-4 | **Exhibit C**: Certificate of Amendment of CQH Certificate of Incorporation dated November 29, 2012 |
| 157-5 | **Exhibit D**: CQH Action of Sole Incorporator by Written Consent, dated November 29, 2012 |
| 157-6 | **Exhibit E**: Unanimous Written Consent of the Board of Directors of CQH in Lieu of Organizational Meeting, dated November 29, 2012 |
| 157-7 | **Exhibit F**: Unanimous Written Consent of the Board of Directors of CQH, dated December 26, 2012 |
| 157-8 | **Exhibit G**: Trust Agreement for the Casino Queen ESOP, effective as of December 1, 2012 |
| 157-9 | **Exhibit H**: Correspondence appointing Jeffrey Watson as Co-Trustee of the ESOP dated December 26, 2012 |
| 157-10 | **Exhibit I**: Correspondence appointing Robert Barrows as Co-Trustee of the ESOP dated December 26, 2012 |
| 157-11 | **Exhibit J**: Fiduciary Engagement Agreement between CQI and Greatbanc Trust Company dated July 20, 2012 |
| 157-12 | **Exhibit K**: Casino Queen Employee Stock Ownership Plan effective as of December 1, 2012 |
| 157-13 | **Exhibit L**: Stock Purchase Agreement between Watson, Barrows, and CQH, dated December 26th [year not specified] |
| 157-14 | **Exhibit M**: Direction of Greatbanc Trust Company dated December 26, 2012 |
| 157-15 | **Exhibit N**: Written Consent of Sole Stockholder of CQH dated December 26, 2012 |
| 157-16 | **Exhibit O**: Amendment of Certification of Incorporation of CQH dated December 26, 2012 |
| 157-17 | **Exhibit P**: Letter of Resignation of Timothy Rand from CQI dated December 26, 2012 |
| 157-18 | **Exhibit Q**: Written Consent of Sole Stockholder of CQH dated December 26, 2012 |
| 157-19 | **Exhibit R**: Written Consent of Sole Stockholder of CQH dated December 26, 2012 |
| 157-20 | **Exhibit S**: US SEC Form D dated January 8, 2013 |
| 157-21 | **Exhibit T**: Letter of Resignation of James G. Koman from CQH dated January 23, 2014 |
| 157-22 | **Exhibit U:** Letter of Resignation of Timothy J. Rand from CQH dated January 23, 2014 |
| 157-23 | **Exhibit V**: Letter of Resignation of Charles W. Bidwill III from CQH dated January 23, 2014 |

| 157-24 | **Exhibit W:** IRS Form 5500 dated October 14, 2013 |
| --- | --- |
| 157-25 | **Exhibit X:** Correspondence from Enterprise Services, Inc. to CQH dated March 15, 2014 |
| 157-26 | **Exhibit Y:** Unanimous Written Consent of the Board of Directors of CQI dated December 6, 2013 |
| 157-27 | **Exhibit Z:** Unanimous Written Consent of the Board of Directors of CQH dated December 6, 2013 |

Koman argues that the Court may consider these documents under Rule 12(d) as documents referenced in the pleadings or central to Plaintiffs' claims (Doc. 160). Plaintiffs disagree, arguing that the documents do not fall within the narrow exception because they have not been "concededly authenticated" and are not central to Plaintiffs' claims. As to authentication, Plaintiffs argue that these documents have not been concededly authenticated by a fact witness with personal knowledge about the documents' authenticity (Doc. 216). Indeed, the documents are all authenticated by one of Koman's attorneys (Doc. 157-1). Plaintiffs also argue that these documents are not central to their claims.

Plaintiffs' concerns here are not unjustified. "While documents attached to a motion to dismiss are considered party of the pleadings if they are referred to in the plaintiff's compliant and are *central* to his claim, this is a narrow exception aimed at cases interpreting, for example, a contract. It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment …" *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (internal citation omitted) (emphasis in original). This is not a case revolving around a single, or single set of, governing document(s), such as a case involving a classic contract dispute. Such cases make the

14

exception appropriate because it is clear from the face of the complaint that the contract will play an essential role in the litigation. Whereas, here, Plaintiffs' allegations in their amended complaint raise questions concerning Defendants' ERISA liability which may not be resolved by corporate documents alone. Indeed, in evaluating fiduciary liability, "there are situations where the particular circumstances involved causes a fiduciary's liability to extend further than it might appear to extend on paper." *Keach v. U.S. Tr. Co.*, 234 F. Supp. 2d 872, 881 (C.D. Ill. 2002). In their amended complaint, Plaintiffs suggest that the alleged wrongful behavior here may not be captured by typical corporate formalities and written actions, such that these documents may not play an essential role in this litigation.

Further, Koman has not yet met the procedural requirements for authentication. While Plaintiffs admit that the documents could likely be authenticated by other means – indeed, some of the public records may be self-authenticating under Fed. R. Evid. 902 – the authenticity of all these documents is certainly not unquestioned, as required by the Seventh Circuit. While Koman tries to rectify this error in his reply brief by supplying a nearly identical declaration from Bill Vandersand, the general counsel and secretary of CQI and CQH, the Court need not consider this new declaration here. *See, e.g.*, *Brennan v. AT & T Corp.*, No. 04-CV-433-DRH, 2006 WL 306755, at *8 (S.D. Ill. Feb. 8, 2006) (declining to consider new declarations and evidence attached in Defendant's reply brief when Defendant offered "no good reason or exceptional circumstance that prevented it from filing these materials with its original motion."); *in accord*, *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 636 (7th Cir. 2020) ("[T]he reply brief is an opportunity to reply,

not to say what should have been said in the opening brief.").

For these reasons, the Court will not consider these documents under the exception to Rule 12(d). Moreover, the Court declines to convert this motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Hecker*, 556 F.3d at 582–83 (district court has discretion to convert a motion to dismiss into a motion for summary judgment). Nevertheless, even if the Court considered the documents, Koman has not conclusively shown that he is entitled to judgment here. To do so, he "must demonstrate that there are no material issues of fact to be resolved." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312–13 (7th Cir. 2020). Further, it must appear "beyond doubt" that Plaintiffs cannot prove facts sufficient to support their position. *Id.* Koman has not met this standard.

Koman argues that he was not a fiduciary of the ESOP and lacked any authority to cause the transactions at issue in this case. Instead, Koman maintains that the CQH board of directors appointed a third-party, GreatBanc, to be an independent named fiduciary of the ESOP such that GreatBanc (and not Koman) was solely responsible for determining the prudence of the 2012 Stock Purchase (Doc. 160). He also argues that he was not a board member until after the stock-purchase transaction, and even then, he was only a note-holder director with limited authority such that he was not able to act on behalf of any Casino Queen entity with respect to the asset sale. Similarly, Koman argues that as a note-holder director, he did not have the authority to take any of the alleged actions Plaintiffs claim concealed the alleged ERSIA breaches.

Plaintiffs' Amended Complaint does not contain any allegations suggesting a

tiered membership for CQH board members or any alleged distinctions between "noteholders" and other board members. Nor does the Amended Complaint refer to the alleged third-party fiduciary GreatBanc (Doc. 144). Instead, Koman inserts these arguments throughout his Answer (Doc. 157), relying on his unauthenticated exhibits. Nevertheless, the parties present conflicting interpretations of some of these documents. For example, Koman argues that these documents reveal that the CQH board appointed GreatBanc as an independent, named fiduciary of the ESOP (Doc. 160). However, Plaintiffs reasonably proffer that the GreatBanc was not properly appointed as a directing trustee under the same documents. Accordingly, Plaintiffs suggest that the Court will be required to resolve this issue, and other disputed facts, based on credibility findings after discovery is completed.

Moreover, even if these documents do show a proper delegation of certain decision-making authority, Plaintiffs argue that the documents do not conclusively exclude Koman's liability as a "functional" fiduciary. The Seventh Circuit recognizes that fiduciary status does not depend on formal titles, but on "*functional* terms of control and authority over the plan. *See Burke v. Boeing Company*, 42 F.4th 716, 725 (7th Cir. 2022) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)) (emphasis in original). Thus, although functional fiduciaries "might not be named in the plan document" they "still exercise 'discretionary control or authority over the plan's management, administration, or assets.'" *Burke*, 42 F.4th at 725; *in accord Keach*, 234 F. Supp. 2d at 881 ("[T]here are situations where the particular circumstances involved causes a fiduciary's liability to extend further than it might appear to extend on paper").

17

Plaintiffs argue that Koman, regardless of his status as a named or functional fiduciary, orchestrated the ESOP transactions, including setting the above market rate price the ESOP would pay for his CQI shares. Indeed, in their complaint, Plaintiffs allege that Koman served as a CQH Board member around the time of its creation and until 2014 (Doc. 144, ¶¶ 41-42). Plaintiffs further allege that the ESOP's plan documents vested the Administrative Committee with the powers of administrating the Plan, preparing, and distributing account statements to the ESOP participants and filing reports with the Department of Labor (Doc. 144, ¶ 48). However, because the Board did not appoint any members to the Administrative Committee, Plaintiffs allege that Koman, and the other Board Members, held those powers, thus permitting them to approve the alleged prohibited transactions (Doc. 144, ¶¶ 47-49). While Koman disagrees, at this stage of the litigation, it is not beyond doubt that Koman was not a fiduciary of the ESOP.

Similarly, there are unresolved disputes of facts concerning Koman's participation in the alleged fraudulent concealment efforts. The Court previously held that the amended complaint sufficiently alleged Koman's acts to conceal the ERISA violations (Doc. 118), and Plaintiffs request additional discovery on this issue. Likewise, Plaintiffs are entitled to additional discovery on Koman's allegations of his note-holder role and their nonfiduciary claims. Finally, while Koman argues that Plaintiffs have improperly "jettison[ed]" one theory of liability for another when comparing the allegations in their Amended Complaint to the arguments in their opposition brief (Doc. 240), the Court disagrees. Here, the Court reviews the complaint not for specific legal theories but to determine if there are any facts, which if proven, are sufficient to support their position.

*See, e.g.*, *Federated Mutual Insurance Company*, 983 F.3d at 312–13; *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999) ("Because complaints need not articulate legal theories, and because the skeletal presentation in a notice pleading may be fleshed out later, a decision without giving the plaintiff the opportunity to argue or augment his position is premature."); *Muir v. United States Transportation Sec. Admin.*, No. 1:20-CV-01280, 2021 WL 231733, at *1 (C.D. Ill. Jan. 22, 2021) ("A plaintiff is not required to anticipate defenses or plead extensive facts or legal theories; rather the complaint need only contain enough facts to present a story that holds together.").

As it is not "beyond doubt" that Plaintiffs cannot prove any facts to support their position, Koman's Motion must be denied. For these reasons, Koman's Motion for Judgment on the Pleadings (Doc. 159) is **DENIED**. Plaintiffs' Motion to Defer Briefing (Doc. 217) is also **DENIED**.

### III.     Other Pending Matters

As the Court has now resolved the Motions at Doc. 155 and Doc. 159, the Court hereby **LIFTS** all previously imposed stays on briefing (*See, e.g.*, Docs. 279, 321, 346, 369). Nevertheless, the Court observes that Bidwill and Rand have subsequently moved to dismiss Plaintiffs' Complaint for a lack of standing (Doc. 402). Briefing on that Motion has not yet been completed. Thus, in light of the above rulings, and for the purposes of docket control, the Court finds it appropriate to direct the following third parties to refile the following Motions directed at the third-party complaints:

> **Doc. 307**: Motion to Dismiss *Third-Party Complaint* filed by Third-Party Defendant Phillip B. Kenny;

**Doc. 310**: Motion to Dismiss *Third-Party Complaint* filed by Third-Party Defendants Joan Kenny Rose, James C. Kenny, John E. Kenny, Jr., and Patrick B. Kenny; and

**Doc. 354**: Motion to Dismiss *Third-Party Complaints* filed by Third-Party Defendants Michael Gaughan and Franklin Toti.
Consistent with this instruction, these Motions (Doc. 307, 310, 354) are **DENIED, without prejudice**. The parties are granted leave to refile the motions by **March 27, 2023**.

Responses are due by **April 27, 2023**.

Further, any outstanding answers or responses are due by **March 27, 2023**.

## Disposition

For these reasons, the Motion to Dismiss (Doc. 155) and Motion to Supplement (Doc. 393) filed by Defendants Bidwill and Rand are **DENIED**. Defendant Koman's Motion for Judgment on the Pleadings (Doc. 159) is also **DENIED**.

The Motions to Dismiss (Docs. 307, 310, 354) filed by Third-Party Defendants Phillip B. Kenny, Joan Kenny Rose, James C. Kenny, John E. Kenny, Jr., Patrick B. Kenny; Michael Gaughan and Franklin Toti are **DENIED, without prejudice, and with leave to refile by March 27, 2023**.

**SO ORDERED.**

Dated: March 6, 2023

_____
DAVID W. DUGAN
United States District Judge