# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

TOM HENSIEK, *et al.*,
       Plaintiffs,

vs.

BD. OF DIRECTORS OF CASINO QUEEN
HOLDING CO., INC., *et al*.,
       Defendants.

BD. OF DIRECTORS OF CASINO QUEEN
HOLDING CO., INC., *et al*.,
       Crossclaim/Third-Party Plaintiffs,

vs.

CHARLES BIDWILL, III, *et al.*,
       Crossclaim/Third-Party Defendants.

CHARLES BIDWILL, III,
TIMOTHY J. RAND,
       Defendants/Counterclaimants,
       Crossclaim/Third-Party Plaintiffs,

vs.

TOM HENSIEK*, et al.*,
       Counterclaim/Crossclaim/Third-Party
       Defendants.

JAMES G. KOMAN,
       Crossclaim Plaintiff,

vs.

BD. OF DIRECTORS OF CASINO QUEEN
HOLDING CO., INC., *et al*.
       Crossclaim Defendants.

Case No. 3:20-cv-00377-DWD

## PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR FINAL APPROVAL OF SETTLEMENT

# TABLE OF CONTENTS

I.        INTRODUCTION. ............................................................................................... 1

II.       FACTUAL AND PROCEDURAL BACKGROUND............................................ 2

   A.      Background. .................................................................................................. 2

   B.      Motion Practice............................................................................................. 4

   C.      Discovery and the Parties' Settlement Efforts. ............................................ 5

III.      THE PROPOSED SETTLEMENT. .................................................................... 6

   A.      Benefits to the Settlement Class. ................................................................. 6

   B.      Settlement Funding and Disbursements........................................................ 7

   C.      Release of Claims. ....................................................................................... 8

   D.      Independent Fiduciary Determination. ....................................................... 8

   E.      Notice and Response of Class Members....................................................... 9

IV.       THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE. ................................... 10

   A.      Class Representatives and Their Counsel Have Adequately Represented the Class……………….... ........................................................................................... 10

   B.      The Proposed Settlement Is the Product of Arm's-Length Negotiations. ............ 11

   C.      The Relief Provided Is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal................................................................................... 11

   D.      The Remaining Rule 23(e)(2) Factors Support Final Approval. ......................... 14

V.        THE COURT SHOULD CERTIFY THE CLASS FOR FINAL APPROVAL. ... 16

VI.       CONCLUSION................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. GreatBanc Tr. Co.*,
   No. 1:15-cv-03053 (N.D. Ill. May 6, 2019), ECF 108 ..........................................11

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010)...........................................................................13

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*,
   2017 WL 5724208 (S.D. Ill. Apr. 26, 2017), *aff'd*, 897 F.3d 825 (7th Cir.
   2018) ...................................................................................................................14

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) .....................................................................14

*Chambers v. Together Credit Union*,
   2021 WL 1948452 (S.D. Ill. May 14, 2021) .........................................................15

*Chesemore v. All. Holdings, Inc.*,
   2014 WL 4415919 (W.D. Wis. Sept. 5, 2014), *aff'd sub nom. Chesemore v.
   Fenkell*, 829 F.3d 803 (7th Cir. 2016) ..................................................................16

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) ................................................................................13

*Foster v. Adams & Assocs., Inc.*,
   No. 3:18-cv-02723 (N.D. Cal. Feb. 11, 2022), ECF 244......................................11

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) ................................................................................15

*In re GEICO Gen. Ins. Co.*,
   2023 WL 2530931 (N.D. Cal. Mar. 15, 2023).........................................................9

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ................................................................................10

*Kaplan v. Houlihan Smith & Co., Inc.*,
   2014 WL 2808801 (N.D. Ill. June 20, 2014) ........................................................16

*Kleen Prods. LLC v. Int'l Paper Co.*,
   2017 WL 5247928 (N.D. Ill. Oct. 17, 2017)..........................................................10

*Mezyk v. U.S. Bank Pension Plan*,
   2012 WL 13028659 (S.D. Ill. Nov. 5, 2012) ........................................................15

*Neil v. Zell,*
    767 F. Supp. 2d 933 (N.D. Ill. 2011) ...................................................................12

*Nistra v. Reliance Tr. Co.,*
    2020 WL 13645290 (N.D. Ill. Mar. 12, 2020) ......................................................10

*Perez v. Bruister,*
    823 F.3d 250 (5th Cir. 2016) ................................................................................12

*In re Rite Aid Corp. Sec. Litig.,*
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................13

*Scalia v. Pro. Fiduciary Servs.,*
    No. 7:19-cv-07874 (S.D.N.Y. Jan 12, 2021), ECF 30 .........................................11

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ..............................................................12, 13

*Snyder v. Ocwen Loan Servicing, LLC,*
    2019 WL 2103379 (N.D. Ill. May 14, 2019) .......................................................11

*Trustees of Chi. Plastering Inst. Pension Fund v. R.G. Constr. Servs., Inc.,*
    2009 WL 1733036 (N.D. Ill. June 16, 2009) ......................................................13

*Walsh v. Saakvitne,*
    No. 1:18-cv-00155 (D. Haw. Apr. 22, 2021), ECF 453 ......................................11

*Wong v. Accretive Health, Inc.,*
    773 F.3d 859 (7th Cir. 2014) ...............................................................................11

**Statutes**

29 U.S.C. § 1104(a)(1) ..................................................................................................3

29 U.S.C. § 1104(a)(1)(A) ............................................................................................3

29 U.S.C. § 1104(a)(1)(B) ............................................................................................3

29 U.S.C. § 1105(a)(1) ..................................................................................................3

29 U.S.C. § 1106(a) ......................................................................................................3

29 U.S.C. § 1106(b) ......................................................................................................3

29 U.S.C. § 1113(2) ....................................................................................................12

**Other Authorities**

4 Newberg and Rubenstein on Class Actions § 13:14 (6th ed.) .................................11

4 Newberg and Rubenstein on Class Actions § 13:45 (6th ed.) ....................................................10

Fed R. Civ. P. 23 ..............................................................................................................................14

Fed R. Civ. P. 23(a) .........................................................................................................................11

Fed. R. Civ. P. 23(a)(4) ....................................................................................................................10

Fed. R. Civ. P. 23(b)(1)(A) ..............................................................................................................16

Fed. R. Civ. P. 23(b)(1)(B) ..............................................................................................................16

Fed R. Civ. P. 23(e) ..........................................................................................................................10

Fed. R. Civ. P. 23(e)(2) ...............................................................................................................10, 14

Fed. R. Civ. P. 23(e)(2)(A) ..............................................................................................................11

Fed. R. Civ. P. 23(e)(2)(B) ..............................................................................................................11

Fed. R. Civ. P. 23(e)(2)(C) ..............................................................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(ii) .........................................................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................................................................15

Fed. R. Civ. P. 23(e)(2)(C)(iv) ........................................................................................................15

Fed. R. Civ. P. 23(e)(2)(D) .........................................................................................................14, 15

Fed. R. Civ. P. 23(e)(3) ....................................................................................................................14

Fed. R. Civ. P. 23(f) ...........................................................................................................................5

Plaintiffs Tom Hensiek, Jason Gill, and Lillian Wrobel (collectively, "Plaintiffs"), individually and as class representatives,[1] move for an order finally certifying the class for Settlement purposes and finally approving the class action settlement agreement ("Settlement Agreement") among Plaintiffs, Defendants,[2] Cross-Defendants,[3] and Third-Party Defendants.[4] For the reasons stated below, the Settlement is a fair and reasonable resolution of this case and should be finally approved.

## I.    INTRODUCTION.

Subject to the Court's approval, the Parties have settled this class action (the "Lawsuit") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for a payment of $7,100,000. Of the approximately 1,126 Class Members who are not deceased,[5]

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

[2] The Defendants include the Board of Directors of CQ Holding Company, Inc.; Administrative Committee of the Casino Queen Employee Stock Ownership Plan; Charles Bidwill, III; Timothy J. Rand; James G. Koman; Jeffrey Watson; Robert Barrows; Co-Trustees of the Casino Queen Employee Stock Ownership Plan; Mary C. Bidwill; Brian R. Bidwill; Patricia M. Bidwill; Shauna Bidwill Valenzuela; Karen L. Hamilton Irrevocable Trust; its Trustee; and any beneficiaries of said Trust; William J. Koman, Jr. Irrevocable Trust, its Trustee, and any beneficiaries of said Trust; William J. Koman, Sr. Living Trust, its Trustee, and any beneficiaries of said Trust; Elizabeth S. Koman Irrevocable Trustee, its Trustee, and any beneficiaries of said Trust; Janis A. Koman Irrevocable Trust, its Trustee, and any beneficiaries of said Trust; James G. Koman Irrevocable Trust, its Trustee, and any beneficiaries of said Trust, the Family Trust, its Trustee, and any beneficiaries of said Trust; the Generation Skipping Marital Trust, its Trustee, and the beneficiaries of said Trust; the Residuary Marital Trust, its Trustee, and the beneficiaries of said Trust; and CQ Holding Company, Inc.

[3] The Third-Party Defendants include Timothy J. Rand, Charles Bidwill, III, James G. Koman, Board of Directors of CQ Holding, Inc., Administrative Committee of the Casino Queen Employees Stock Option Plan, Jeffrey Watson, and Robert Barrows.

[4] Michael Gaughan, Franklin Toti, Philip B. Kenny, James C. Kenny, John E. Kenny, Patrick B. Kenny, Joan Kenny Rose, Mary Ann Kenny Smith (and any beneficiaries of her Estate), Casino Queen, Inc., CQ Holding Co., Inc., and GreatBanc Trust Company.

[5] There are 1,133 Class Members in total, including participants who are deceased as well as their beneficiaries. For the handful of Class Members who are known to be deceased, their distribution will go to their designated beneficiaries, if any.

1

approximately 334 will receive a flat $50 payment; approximately 160 will receive a flat $500 payment; and the remaining approximately 632 Class Members will receive a pro rata share of the remaining settlement, which results in an average recovery of approximately $11,081 for Class Members receiving the pro rata distribution, before the deduction of any court-approved fees and expenses. *See* Declaration of Michelle C. Yau ("Yau Decl.") ¶¶ 8-9. The Court granted preliminary approval on November 14, 2024. *See* ECF 541. Since then, Class Members' response has been overwhelmingly supportive of the Settlement. As of the date of this filing, no Class Member has objected to the Settlement, the Plan of Allocation, or Class Counsel's and Plaintiffs' request for fees, expenses, and service awards. Yau Decl. ¶ 6; Declaration of Jeff Mitchell ("Mitchell Decl.") ¶ 13. Should the Court grant final approval, every eligible Class Member will receive their portion of the Net Proceeds according to the Plan of Allocation that this Court preliminarily approved. ECF 539-4.

The Settlement Agreement satisfies all the criteria for final approval, providing an excellent result for the Settlement Class. Accordingly, the Settlement should be finally approved, and the class should be finally certified for Settlement purposes.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

### A.  Background.

This class action is brought on behalf of participants and beneficiaries of the Casino Queen Employee Stock Ownership Plan ("Casino Queen ESOP," "the ESOP," or "the Plan"). First Amended Complaint, ECF 144 ("FAC") ¶ 1. The FAC alleged that Defendants violated ERISA in connection with the formation of the ESOP and the ESOP's subsequent purchase of 100% of then-outstanding shares of CQ Holding Company, Inc. ("the Company" or "CQH") stock on December 26, 2012 (the "2012 Transaction"). *Id.* ¶¶ 2, 6, 9-14, 81, 91-123, 198-258. The FAC also alleged that Defendants continued to violate ERISA in a 2013 sale of all of the

2

Casino Queen's assets to a third-party (the "Asset Sale"). *See id.* ¶¶ 15-16, 49, 56, 59, 128-29, 135-44, 231-58.

In Count I of the FAC, pursuant to ERISA § 406(a), 29 U.S.C. § 1106(a), Plaintiffs alleged that all Defendants engaged in various prohibited transactions when they caused the ESOP to purchase CQH stock in December 2012. FAC ¶¶ 198-12. In Count II, Plaintiffs alleged that James G. Koman, Charles Bidwill, III, and Timothy Rand engaged in self-dealing through the 2012 Transaction in violation of ERISA § 406(b), 29 U.S.C. § 1106(b). *Id.* ¶¶ 213-18. In Count III, Plaintiffs alleged that, in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), James G. Koman, Charles Bidwill, III, and Timothy J. Rand (collectively, the "CQH Board Defendants"), along with Jeffrey Watson and Robert Barrows, breached their fiduciary duty to the Plan by allowing and subsequently "failing to restore the losses caused" by the 2012 Transaction. *Id.* ¶¶ 203, 219-230. In Count IV, Plaintiffs alleged that the CQH Board Defendants, Jeffrey Watson, and Robert Barrows violated ERISA §§ 404(a)(1) and 406(a)(1)(A), 29 U.S.C. §§ 1104(a)(1) and 1106(a) by, among other things, facilitating and/or approving the Asset Sale. *Id.* ¶¶ 231-239. In Count V, Plaintiffs alleged that the CQH Board Defendants violated ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B) through a failure to monitor the ESOP's appointed fiduciaries. *Id.* ¶¶ 240-245. In Count VI, Plaintiffs alleged that, if the Court were to find the CQH Board Defendants not liable for Count V, the CQH Board Defendants would instead be liable as co-fiduciaries pursuant to ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1). *Id.* ¶¶ 246-258. Defendants deny these allegations, deny any wrongdoing or liability, and have defended themselves in this Action. Defendants do not admit wrongdoing of any kind regarding the 2012 Transaction, the Asset Sale, or this Action.

3

**B. Motion Practice.**

This case has seen extensive litigation over the course of more than four years. Plaintiffs Tom Hensiek and Jason Gill filed their original Complaint on April 27, 2020. ECF 1. On August 24, 2020, Defendants filed a Motion to Compel Arbitration, ECFs 45, 47, and the CQH Board Defendants filed a Motion to Dismiss, ECF 48. The Parties participated in a hearing before the Court regarding these motions on December 17, 2020. ECF 78. On January 25, 2021, the Court denied the Motion to Compel Arbitration. ECF 84. Defendants appealed this decision to the Seventh Circuit. ECFs 85-87. After the Seventh Circuit ruled in Plaintiffs' favor on the same legal issue in another case, Defendants voluntarily moved for dismissal of their appeals, which the Seventh Circuit granted. ECF 109. The Court also denied the CQH Board Defendants' Motion to Dismiss. ECF 118.

On April 14, 2022, Plaintiffs filed the First Amended Complaint ("FAC"), which, among other things, named additional Defendants to the action. ECF 144. On May 19, 2022, the original Defendants filed answers to the FAC, some of which included crossclaims, counterclaims, and third-party complaints. ECFs 153-54, 157. Plaintiffs filed an answer to the crossclaims on June 10, 2022. ECF 193. Charles Bidwill, III and Timothy J. Rand filed two Motions to Dismiss the FAC, ECFs 155, 402, and the Court denied both motions, ECFs 426, 510. The newly named Defendants filed seven Motions to Dismiss the FAC between June and October 2022, ECFs 231, 234, 252, 267, 319, 327, 362, and the Court denied all of them, ECF 427. James G. Koman also filed a Motion for Judgment on the Pleadings, ECF 159, which the Court also denied, ECF 426.

On December 16, 2022, Charles Bidwill, III and Timothy J. Rand moved to certify a class of Counterclaim Defendants, and Plaintiffs moved for Class Certification, ECFs 389, 391. The Court denied both Motions on February 26, 2024. ECF 510. Plaintiffs petitioned for

4

permission to appeal the denial of class certification to the Seventh Circuit under Federal Rule of Civil Procedure 23(f) on March 11, 2024, ECFs 512-514, which the Seventh Circuit granted on April 8, 2024, ECF 516. The Parties then renewed settlement negotiations. ECF 539-1, ¶ 29.

### C.  Discovery and the Parties' Settlement Efforts.

The Parties mediated formally on three occasions and reached this settlement through informal negotiation, building on progress made in prior formal mediations. In 2021, the Parties engaged in the Seventh Circuit's mandatory mediation program. *Id.* ¶ 26. In 2022, JAMS mediator Robert A. Meyer facilitated an in-person mediation between the Parties. *Id.* ¶ 27. In 2023, the Hon. Michael J. Reagan facilitated another in-person mediation between the Parties. *Id.* ¶ 28. After the mediation, Judge Reagan facilitated over two months of further negotiations to reach resolution, but those negotiations concluded without success in November 2023. *Id.* After the Seventh Circuit granted Plaintiffs' Petition for Permission to Appeal Under Rule 23(f), the Parties re-engaged in settlement discussions. *Id.* ¶ 29.

These settlement negotiations have been extremely well-informed given the extent of discovery conducted to date. Plaintiffs took or defended a total of fifteen depositions (eight defense witness depositions, four third-party depositions, and the depositions of all three named plaintiffs) and issued multiple rounds of Requests for Production of Documents, Requests for Admissions, and Interrogatories. *Id.* ¶¶ 20-23. Plaintiffs also issued numerous document subpoenas to numerous individuals and entities involved in the ESOP Transaction. *Id.* ¶ 21. Plaintiffs received over 500,000 pages in discovery. *Id.*

Through this discovery process, Plaintiffs obtained and reviewed discovery to fully evaluate the merits and risks of the claims asserted, including: insurance policies; the Casino Queen ESOP Plan Document and trust agreement; the ESOP Transaction documents; documents

related to the Illinois Gaming Board's approval of the ESOP Transaction; the valuation report for CQH stock prepared in connection with the Transaction; agendas and minutes for CQH and CQI Board meetings and ESOP related meetings; engagement letters for Casino Queen's advisors; financial projections; communications from third parties expressing interest in buying Casino Queen; tens of thousands of emails with CQH's senior executives and third parties; communications with ESOP participants; and information related to the valuation of CQH stock from 2012 until 2020.

## III.    THE PROPOSED SETTLEMENT.

### A.  Benefits to the Settlement Class.

Under the Settlement, which is attached as Exhibit 1 to the Declaration of Michelle Yau dated November 12, 2024, *see* ECF 539-2, Defendants will cause $7,100,000 ("Settlement Amount") to be deposited into a Settlement Fund Account, which shall be considered a common fund, *id.* §§ 1.12, 2.4, 6. The Settlement Amount covers any and all claims for expenses and attorneys' fees by Plaintiffs, and any Service Awards to the Named Plaintiffs, as well as any expenses associated with Class Notice and Settlement Administration. *Id.* §§ 7, 8.1. Class Counsel has sought attorneys' fees of $2,366,666.67 (one-third of the Settlement Amount) and expenses of 184,232.59. ECF 543.

Under the preliminarily approved Plan of Allocation, *see* ECFs 539-4, 541, Class Counsel estimates that the approximately 632 Class Members whose vested stock was held or sold at $20 per share or less will receive a pro rata share of the Net Proceeds, the approximately 160 Class Members who cashed out their Casino Queen stock at more than $20 per share price will receive a flat amount of $500 each; and the approximately 334 Class Members who had zero

vested shares will receive a flat amount of $50 each.[6] *See* Yau Decl. ¶ 8; ECF 539-4, ¶ 9. Before subtracting expenses and attorneys' fees, each of the approximately 632 Class Members whose vested stock was held or sold for less than $20 per share—the Class Members whom Class Counsel have identified as suffering the most damage due to the alleged conduct in the First Amended Complaint—will receive approximately $11,081 on average. Yau Decl. ¶¶ 8-9.

**B. Settlement Funding and Disbursements.**

If the Settlement is finally approved, the Settlement Administrator (with the assistance of Class Counsel) will determine the amounts allocable to each Class Member. ECF 539-2, § 7.2.3. The net of disbursements called for in Sections 7.1, 7.2.1, and 7.2.2 of the Settlement Agreement ("Net Proceeds") will be distributed according to the Plan of Allocation. *Id*. § 7.2.3. The Settlement Administrator will also process distribution and rollover payment elections by Class Members. Class Counsel may direct the Settlement Administrator in writing to disburse from the Settlement Fund (1) any taxes owed by the Settlement Fund Account and (2) reasonable expenses of administering the Settlement Fund Account. *Id*. § 7.1.

After the Court entered the Preliminary Approval Order, CQH deposited $100,000 into the Settlement Fund Account. Mitchell Decl. ¶ 14. If the Court finally approves the Settlement, on or before the earlier of six (6) months after the entry of the Final Order by the Court or June 30, 2025, CQH shall deposit $3,500,000 into the Settlement Fund Account. ECF 539-2, § 6.6. On or before the earlier of nine (9) months after the entry of the Final Order by the Court or September 30, 2025, CQH shall deposit the remaining $3,500,000 into the Settlement Fund Account, at which point the total amount will collectively comprise the "Settlement Amount." *Id.*

---

[6] Any Class Members who redeemed their Casino Queen stock at more than $20 per share but still held or redeemed shares at or less than $20 per share will receive the greater of either $500 or their pro rata share of the Net Proceeds. Yau Decl. ¶¶ 8-9; ECF 539-4, ¶ 9.d n.2.

§§ 1.12, 6.7. Class Counsel will then direct the Settlement Administrator to disburse Class Members' payments from the Settlement Fund Account. *Id.* § 7. Class Members will receive a payment directly from the Settlement Fund, either as a rollover to a qualified retirement account or in the form of a check. *Id.*

### C.  Release of Claims.

In exchange for payment of the Settlement Amount by CQH and satisfaction of the conditions required by the Settlement Agreement, Plaintiffs and the Settlement Class will release any claims which were or could have been asserted in the Lawsuit that arise from the facts and claims alleged in the FAC and the proposed Second Amended Complaint ("SAC"). *Id.* § 3.2. Defendants will similarly release any claims which were or could have been asserted in the Lawsuit that arise from the facts and claims alleged in the FAC and the proposed SAC and will dismiss with prejudice any Counterclaims, Crossclaims, or Third-Party Claims filed in the Lawsuit. *Id.* § 3.3. The Released Claims and the covenant not to sue are set forth in full in the Settlement Agreement. *Id.* § 3.

### D.  Independent Fiduciary Determination.

The Settlement was subject to a written determination by an Independent Fiduciary that the terms in the Settlement Agreement are fair and reasonable to the Plan and its participants. *Id.* §§ 2.3, 9. Defendants selected Fiduciary Counselors Inc. ("FCI") to serve as the independent fiduciary in this matter to review the Settlement. Yau Decl. ¶ 7. FCI is a well-respected independent fiduciary with significant experience reviewing ERISA class action settlements. *Id.* FCI issued a report on January 21, 2025, approving and authorizing the Settlement on behalf of the Plan in accordance with PTE 2003-39. *Id.* A copy of FCI's report is attached as Exhibit 1 to

the Declaration of Michelle C. Yau submitted in support of this motion. FCI provided a release

in its capacity as a fiduciary of the Plan, for and on behalf of the Plan. *See* Yau Decl. Ex. 1.

### E. Notice and Response of Class Members.

Pursuant to the preliminary approval order, the Settlement Administrator created a

website, which went live on December 13, 2024 and which contains important information for

Class Members, at www.cqesopsettlement.com. Mitchell Decl. ¶ 11. Within the time denoted in

the Settlement Agreement, on December 27, 2024, the Settlement Administrator mailed the

Class Notice to Class Members. *Id.* ¶ 8. The Class Notice was also posted to the settlement

website. *Id.* ¶ 11. After identifying new addresses for certain Class Members through

commercially available means and remailing Class Notices that were returned undeliverable,

ultimately over 98% of the Class Notices were successfully delivered. *Id.* ¶¶ 6-10; *see also In re*

*GEICO Gen. Ins. Co.*, 2023 WL 2530931, at *5 (N.D. Cal. Mar. 15, 2023) (finding "successful

delivery rates" where 86% to 90% of direct mail class notices were ultimately deliverable).

The Class Notice provided all the information necessary to inform Class Members about

the nature of the Lawsuit, the terms of the Settlement, and the procedures for objecting to the

Settlement or entering an appearance to be heard at the final fairness hearing. Mitchell Decl. Ex.

1. The Settlement Administrator also established a toll-free phone number and an email address

where Class Members could reach out with any questions about the Settlement. Mitchell Decl.

¶¶ 11-12. To date, there have been ***no objections*** received from any Class Members. *Id.* ¶ 13;

Yau Decl. ¶ 6.

In addition, defense counsel has confirmed that the CAFA notices were timely sent out

on November 22, 2024. Yau Decl. ¶ 4.

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE.

There is an overriding public interest in the settlement of labor-intensive litigation; this is particularly true in complex class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation." (citations omitted)). Moreover, there is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *See* 4 Newberg and Rubenstein on Class Actions § 13:45 (6th ed.); *Kleen Prods. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *3 (N.D. Ill. Oct. 17, 2017). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between experienced counsel advance the fairness concerns embodied in Rule 23(e). In 2018, Rule 23(e) was amended to make express the relevant factors for the determination of whether a proposed class action settlement is fair and reasonable: (A) class representatives and counsel adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided is adequate; and (D) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2); *see also Nistra v. Reliance Tr. Co.*, 2020 WL 13645290, at *1 (N.D. Ill. Mar. 12, 2020).

### A.    Class Representatives and Their Counsel Have Adequately Represented the Class.

Consistent with Fed. R. Civ. P. 23(a)(4), the Settlement Class was adequately represented in this case. Named Plaintiffs Hensiek, Wrobel, and Gill took their roles very seriously. They reviewed the relevant pleadings and directly participated in the discovery process by turning over their own documents and sitting for depositions. *See* ECF 543-3, ¶¶ 2-3; ECF 543-4, ¶¶ 2-3; ECF 543-5, ¶¶ 2-3. Class Counsel also vigorously represented the Settlement Class throughout the litigation and is well respected for its ERISA class action expertise. ECF 539-1, ¶¶ 1-24. Finally, as discussed in detail in Plaintiffs' motion for preliminary approval, Named Plaintiffs and their

10

Counsel readily meet the adequacy requirements of Rule 23(a). *See* ECF 539, at 13. Where, as
here, "[t]he named plaintiffs participate[] in the case diligently, including being subjected to
discovery," and class counsel engaged in hard-fought litigation, Rule 23(e)(2)(A) is satisfied.
*Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

### B. The Proposed Settlement Is the Product of Arm's-Length Negotiations.

Rule 23(e)(2)(B) requires that the Settlement is borne of an arm's-length and non-
collusive process. This Settlement was reached after prolonged and adversarial litigation among
sophisticated counsel. *Supra* at 4-5. Class Counsel is fully aware of the strengths and weaknesses
of the case after completing fact discovery and testing Defendants' legal positions. *Supra* at 5-6;
*infra* at 12-13. Moreover, the Parties engaged—for years—in multiple rounds of mediation
facilitated by a Seventh Circuit mediator, a JAMS neutral, and Retired Judge Reagan. ECF
539-1, ¶¶ 25-28. These are all the hallmarks of arm's-length negotiations. 4 Newberg and
Rubenstein on Class Actions § 13:14 (6th ed.); *Wong v. Accretive Health, Inc.*, 773 F.3d 859,
864 (7th Cir. 2014). The Settlement therefore satisfies Rule 23(e)(2)(B).

### C. The Relief Provided Is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal.

The $7.1 million recovery for the class as a whole is a favorable outcome for the
Settlement Class when compared to the value of other ESOP settlements inside and outside this
Circuit. *See, e.g.*, *Allen v. GreatBanc Tr. Co.*, No. 1:15-cv-03053 (N.D. Ill. May 6, 2019), ECF
108 (final approval of $2.25 million ESOP settlement); *Foster v. Adams & Assocs., Inc.*, No.
3:18-cv-02723 (N.D. Cal. Feb. 11, 2022), ECF 244 (final approval of $3.0 million ESOP
settlement), *Scalia v. Pro. Fiduciary Servs.*, No. 7:19-cv-07874 (S.D.N.Y. Jan 12, 2021), ECF 30
(entry of DOL consent order/settlement providing for $750,000 in cash to ESOP); *Walsh v.*

*Saakvitne*, No. 1:18-cv-00155 (D. Haw. Apr. 22, 2021), ECF 453 (entry of DOL settlement for approximately $1.46 million to ESOP).

Plaintiffs' valuation expert estimated a range of overpayment amounts, and the bottom of that range was approximately $35 million without prejudgment interest; thus, the $7.1 million Settlement Fund reflects 20% of the most conservative estimate of losses. ECF 539-1, ¶ 35; Yau Decl. ¶ 10. In ERISA cases challenging an ESOP's purchase of privately held stock, the measure of loss is the difference between what the ESOP paid for the stock and the stock's true fair market value. *See Perez v. Bruister*, 823 F.3d 250, 270-72 (5th Cir. 2016); *Neil v. Zell*, 767 F. Supp. 2d 933, 944-45 (N.D. Ill. 2011). However, the true fair market value of privately held stock is always a hotly contested issue that turns on a battle of the experts and the Court's findings of facts and conclusions of law.

This case also presented other significant hurdles to a victory at trial for the class, given that Defendants argued Plaintiffs' claims were time-barred, as this lawsuit was filed more than six years after the challenged transactions. Under ERISA's statute of repose, the class would have been required to prove that Defendants engaged in "fraud or concealment." 29 U.S.C. § 1113(2). Defendants strenuously believed that Plaintiffs could not make that showing. Indeed, Defendants vigorously denied all of Plaintiffs' allegations, asserted affirmative defenses, and otherwise defended their actions with respect to the transactions. Absent settlement, "protracted litigation would likely ensue," leading to greater expenses for the Parties as "[t]he costs associated with discovery in complex class actions can be significant." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted). Here, both sides would have needed to complete costly expert discovery and, given the factual issues, likely proceed to trial. Any monetary recovery would be uncertain and would require a battle of experts where no party

12

could be certain that its expert would carry the day. *See Trustees of Chi. Plastering Inst. Pension Fund v. R.G. Constr. Servs., Inc.*, 2009 WL 1733036, at \*17-19 (N.D. Ill. June 16, 2009) (damages depend on expert calculations). Regardless of the outcome, there likely would have been appeals that followed, causing even more delay and expense.

A settlement avoids the risks and delays attendant with continued litigation and ensures that the Settlement Class will receive a substantial recovery. As courts in this Circuit have noted, "[w]hen analyzing whether a proposed settlement is fair, reasonable, and adequate, courts 'should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)). Indeed, even recoveries representing a very small percentage of the defendant's maximum exposure can be fair, adequate, and reasonable. *See, e.g.*, *Schulte*, 805 F. Supp. 2d at 583-84 (explaining that numerous courts have approved class settlements with recoveries around or below approximately 10% of the class's potential recovery and citing cases); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that, since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses" (citation omitted)). Here, the average gross recovery for each Class Member is about $6,306. Yau Decl. ¶ 9. The average gross recovery for each Class Member who was not able to sell their CQH stock at the allegedly inflated values is approximately $11,081. *Id.* This is an excellent recovery in light of the potential time-bar risks and the uncertainty of ongoing litigation and trial.

Finally, Named Plaintiffs and their experienced Class Counsel have endorsed the Settlement and believe that it is fair, reasonable, and adequate. *Id.* ¶ 11; ECF 543-3, ¶ 8; ECF

13

543-4, ¶ 8; ECF 543-5, ¶ 8. Class Members, who received direct mail notice of the Settlement, have also responded favorably to the Settlement and, as of the date of this filing, have submitted no objections to the Settlement. Yau Decl. ¶¶ 5-6; Mitchell Decl. ¶¶ 10, 13. Given that Plaintiffs, Class Counsel, and Class Members all view the Settlement favorably, it should be approved. *See Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 2017 WL 5724208, at *2 (S.D. Ill. Apr. 26, 2017), *aff'd*, 897 F.3d 825 (7th Cir. 2018) ("The lack of opposition from any settlement class member also militates in favor of settlement."); *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015) ("[T]he opinion of competent counsel is relevant to determining whether a class action settlement is fair, reasonable, and adequate under Rule 23." (citation omitted)).

### D.  The Remaining Rule 23(e)(2) Factors Support Final Approval.

In addition to the above, Rule 23(e)(2)(C) requires consideration of the adequacy of the relief provided for the Settlement Class, taking into account (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Finally, Rule 23(e)(2)(D) requires that courts consider whether the proposal treats class members equitably relative to each other.

First, the proposed method of distributing relief to the Settlement Class is effective. Rule 23(e)(2)(C)(ii) examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing any class member claims. Here, the Settlement Agreement provides that Class Members will receive their recovery either as a rollover to a qualified retirement account or as a check. ECF 539-2, § 7.2.3; ECF 539-4, at 3-4. No claim

forms are required. Because all Class Members automatically receive the benefit of the Settlement, the 23(e)(2)(C)(ii) factor weighs strongly in favor of approval.

Second, the proposed award of attorneys' fees is reasonable. Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. For the reasons explained in Plaintiffs' Motion for Attorneys' Fees, Expense Reimbursement, and Service Awards, the requested attorneys' fees are eminently reasonable in light of the relevant factors considered in the Seventh Circuit. *See* ECF 543. The attorneys' fees will (if approved by the Court) represent one-third of the total Settlement value. Courts in this Circuit "commonly award attorney fees 'equal to approximately one-third or more of the recovery.'" *Mezyk v. U.S. Bank Pension Plan*, 2012 WL 13028659, at *2 (S.D. Ill. Nov. 5, 2012) (citation omitted); *see also Chambers v. Together Credit Union*, 2021 WL 1948452, at *2 (S.D. Ill. May 14, 2021) ("[A] one-third fee is common throughout district courts in the Seventh Circuit."). The Seventh Circuit itself has specifically noted that "[t]he typical contingent fee is between 33 and 40 percent." *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998). Any attorneys' fees will be paid to Class Counsel from the Settlement Account only after the Court approves them, after the Court finally approves the Settlement, and after the Settlement account is sufficiently funded. *See* ECF 539-2, § 8.1. Because the proposed award of attorneys' fees and timing of payment is reasonable, Rule 23(e)(2)(C)(iii) weighs in favor of approval.

Third, there are no side agreements. Because no side agreements exist, Rule 23(e)(2)(C)(iv) also weighs strongly in favor of approval.

Finally, under Rule 23(e)(2)(D), the Court must consider whether Class Members will be treated equitably relative to each other. Here, the Settlement treats Class Members equitably based on the price at which they cashed out their shares and the extent they were damaged by the

15

conduct alleged in the First Amended Complaint. The Settlement payments will be based on the

number of shares each participant held and whether they cashed out any of their shares before the

stock value collapsed. As a result, this allocation method ensures that Class Members' recoveries

are proportional to their exposure to the challenged transactions and is therefore fair. *Kaplan v.

Houlihan Smith & Co., Inc.*, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014) (approving ESOP

settlement where recovery was "based on the number of shares each class member held");

*Chesemore v. All. Holdings, Inc.*, 2014 WL 4415919, at *1 (W.D. Wis. Sept. 5, 2014) (similar),

*aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016). The Settlement is a fair

compromise of the claims asserted in this case.

## V.      THE COURT SHOULD CERTIFY THE CLASS FOR FINAL APPROVAL.

In its Order Granting Preliminary Approval of Class Action Settlement, the Court

preliminarily certified the following Settlement Class:

> All participants in the Casino Queen ESOP, whether or not such participant had a
> vested account in the ESOP, and those participants' beneficiaries, excluding:
> Defendants and their immediate family members; any ESOP Trustee, ESOP
> Administrative Committee members serving in such capacity on or before
> December 31, 2019; the officers and directors of CQH or Casino Queen, Inc.
> ("CQI") serving in such capacity on or before December 31, 2019; or the officers
> or directors or of any other entity in which a Defendant (other than CQH or CQI)
> has a controlling interest; and legal representatives, successors, and assigns of any
> such excluded persons.

In support of preliminary approval, Plaintiffs established that: (1) the class was

sufficiently numerous; (2) Plaintiffs raised common issues in the operative Complaint; (3)

Plaintiffs' claims are typical of other class members' claims; (4) Plaintiffs are adequate class

representatives; (5) Class Counsel is experienced and competent; (6) class certification is

appropriate under Fed. R. Civ. P. 23(b)(1)(A) due to the risk of inconsistent adjudications; and

(7) class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(B) because any individual

adjudication would be dispositive of the interests of other class members. ECF 539, at 9-15. Nothing has changed since the Court preliminarily certified the class for preliminary approval. Accordingly, for the reasons stated in Plaintiffs' motion for preliminary approval of the Settlement, *see id.*, the Court should reaffirm its certification of the Settlement Class for purposes of final approval.

## VI.    CONCLUSION.

Plaintiffs respectfully request that the Court enter the Proposed Order finally approving the Settlement and finally certifying the Settlement Class for settlement purposes.

Dated: January 28, 2024                    Respectfully submitted,

*/s/ Michelle C. Yau*
Michelle C. Yau
Ryan A. Wheeler
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave. NW ● Suite 800
Washington, DC 20005
(202) 408-4600
myau@cohenmilstein.com
rwheeler@cohenmilstein.com

Shaun P. Martin
5998 Alcala Park, Warren Hall
San Diego, CA 92110
(619) 260-4600
smartin@sandiego.edu

*Counsel for Plaintiffs*